No. 26-50345

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

CHARLES TERRENCE BRUFF,
Plaintiff-Appellant,

v.

USAA EDUCATIONAL ASSISTANCE PLAN, et al.,
Defendants-Appellees.

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division
Case No. 5:26-CV-01720-XR
**PLAINTIFF-APPELLANT'S MOTION FOR WAIVER OF PACER
ACCESS FEES**

Plaintiff-Appellant Charles Terrence Bruff, appearing pro se, respectfully moves this Court pursuant to Federal Rule of Appellate Procedure 24 and this Court's inherent authority to ensure meaningful access to the judicial process for a waiver of PACER access fees for the duration of Appeal No. 26-50345. In support, Plaintiff states as follows:

## I. INTRODUCTION

Plaintiff-Appellant is a pro se litigant with Autism Spectrum Disorder, Cerebral Palsy, and Post-Traumatic Stress Disorder — all three conditions found disabling by both Lincoln National Life Insurance Company and the Social Security Administration. He is a student. He receives long-term disability benefits as his sole income. He is litigating an eight-claim ERISA complaint against a fully insured group disability plan, represented by counsel at an established Dallas-area law firm with institutional access to Westlaw and the complete PACER federal filing system.

PACER charges ten cents per page for document retrieval, with a cap of three dollars per document. Searches carry no cap at all — a user is charged for every search result page generated, even when the search returns no matches. The Judicial Conference's quarterly fee waiver, raised from $15 to $30 in January 2020, is the only existing relief mechanism. In complex ERISA litigation, a single meaningful research session — reviewing relevant district court filings, tracing opposing counsel's citation pattern, reviewing comparable cases in this circuit — can exhaust that quarterly allowance in minutes. The $30 waiver is not calibrated to the research demands of appellate litigation. It is calibrated to casual public record lookups.

Plaintiff does not have the ability to pay potentially unlimited research fees. This motion explains why the PACER fee structure imposes a structural barrier to his participation in this appeal, why all practical alternatives have been exhausted, and why waiver is necessary to ensure that this proceeding is constitutionally adequate.

## II. THE RESEARCH BURDEN IN ERISA LTD LITIGATION IS UNIQUELY HEAVY

ERISA is "an enormously complex and detailed statute." Conkright v. Frommert, 559 U.S. 506, 517 (2010) (Roberts, C.J.) (quoting Mertens v. Hewitt Associates, 508 U.S. 248 (1993)). This appeal raises four independent grounds for reversal, each requiring engagement with Fifth Circuit and Supreme Court precedent, DOL regulatory history, and the current state of district court practice across this circuit.

The volume of relevant caselaw is substantial. The ERISA Advisory Council on Employee Welfare and Pension Benefit Plans, in its December 2023 report to the Acting Secretary of Labor, Long-Term Disability Benefits and Mental Health

Disparity, documented the extensive and growing body of litigation concerning LTD benefit limitations, claims administration standards, and judicial review standards across the federal courts, and noted that despite covering only approximately 35% of private-sector workers, LTD coverage is the most frequently litigated ERISA benefit plan issue. Advisory Council on Employee Welfare and Pension Benefit Plans, Long-Term Disability Benefits and Mental Health Disparity, at 51 (Dec. 2023), available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/about-us/erisa-advisory-council/2023-long-term-disability-benefits-and-mental-health-disparity.pdf. That body of caselaw is what any litigant — represented or pro se — must navigate to participate meaningfully in an ERISA appellate proceeding.

Plaintiff anticipates arguing, among other things, that Lincoln National's counsel has systematically cited Cusson v. Liberty Life Assurance Co. of Boston, 592 F.3d 215 (1st Cir. 2010) — a pre-2016 First Circuit decision superseded in this jurisdiction by Ariana M. v. Humana Health Plan of Texas, Inc., 884 F.3d 246 (5th Cir. 2018) (en banc) — across multiple filings after being notified of the governing framework four times, and that this constitutes bad-faith litigation conduct warranting attorney fees under ERISA § 502(g)(1). Counsel for Lincoln has over twenty years of experience litigating ERISA disability cases across multiple federal circuits. To understand the full body of law that Plaintiff's brief must engage — including the pattern of how Lincoln's counsel has litigated comparable cases — Plaintiff needs access to a significant volume of PACER filings. Processing that body of law requires research tools, including AI-assisted analysis, that Plaintiff uses in part because of his disabilities. The courthouse terminal does not support that workflow. At ten cents

per page across potentially hundreds of relevant filings, the cost to Plaintiff would reach thousands of dollars. Opposing counsel absorbs equivalent research as institutional overhead.

## III. ALL PRACTICAL ALTERNATIVES HAVE BEEN EXHAUSTED

Courts considering fee waiver requests sometimes assume that pro se litigants in major metropolitan areas have access to free legal research through law school libraries, public law libraries, or federal courthouse terminals. In San Antonio and the surrounding South Texas region, those assumptions are factually incorrect.

**St. Mary's University School of Law** does not provide public access to Westlaw. Plaintiff verified this directly.

**The Bexar County Law Library** has Westlaw access but does not provide access to federal court filings — the category of documents most critical to this research.

**LexisUni**, available through Plaintiff's enrollment, provides published case law access but does not provide access to complaints, briefs, or other court filings. It does not replicate PACER's function for purposes of reviewing actual litigation conduct in comparable cases.

**The Texas State Law Library** in Austin confirmed by telephone that it does not provide remote access and that use of its resources requires travel to Austin. The Texas State Law Library also confirmed that it is not aware of a single law library in the South Texas region that provides Westlaw or LexisNexis Plus access to the public.

That is a remarkable gap. San Antonio is a city of approximately two million people and the seventh-largest city in the United States. The absence of any public legal

research access — Westlaw, LexisNexis, or equivalent — in the entire South Texas region means that access to the body of law that governs federal litigation in this region is effectively unavailable to unrepresented litigants without institutional affiliations or personal wealth. The law is, in practical terms, gatekept.

Each alternative was pursued and found inadequate. The assumption that free research infrastructure exists is not accurate in this jurisdiction.

During the period in which Plaintiff believed his filings had been received and were pending before this Court, Plaintiff began attempting to identify research resources adequate to support preparation of the appellate brief. That inquiry confirmed that no viable alternative to PACER access exists in the South Texas region. It was not until June 15, 2026 — upon calling the Fifth Circuit clerk's office directly — that Plaintiff learned his prior transmissions had not been received due to a speech dictation error in the recipient email address. The research access problem Plaintiff encountered during that period is not hypothetical. It is the documented result of attempting to find alternatives and finding none.

## IV. THE FEDERAL COURTHOUSE TERMINAL IS NOT A FUNCTIONAL ALTERNATIVE

The Western District of Texas federal courthouse in San Antonio provides nominal free public PACER access through courthouse terminals. That access is not functional for Plaintiff's research needs for the following documented reasons.

The courthouse does not permit visitors to bring smartphones inside unless they are licensed attorneys. The courthouse does not permit external storage media of any kind. The courthouse does not permit access to cloud storage services including

Google Drive or Dropbox. The courthouse does not provide word processing software.

The combined effect is that a researcher at the courthouse terminal may read documents but cannot retain, integrate, or act on what they read. They cannot save a case to a flash drive. They cannot upload it to a cloud folder for later use. They cannot draft or revise a brief at the terminal because there is no word processor. The terminal technically exists. For any litigant who needs to incorporate research into a brief being prepared elsewhere, it does not function as a research tool.

For Plaintiff specifically, these restrictions are not merely inconvenient. Plaintiff has Cerebral Palsy affecting fine motor function and difficulty with handwriting. He cannot take handwritten notes at a courthouse terminal. He cannot bring his phone. He cannot save to external media. He cannot upload to cloud storage.

Plaintiff is granted a scribe accommodation at the University of Texas at San Antonio for examinations because his Cerebral Palsy prevents him from writing by hand. That accommodation exists because UTSA is bound by Section 504 of the Rehabilitation Act and engages in an interactive accommodation process. The federal courthouse makes no equivalent accommodation available. Even if smartphones were permitted at the terminal — which they are not — Plaintiff relies on speech dictation to compensate for his physical writing limitations. Dictating into a phone in a public courthouse terminal is not a realistic option. And because the Judicial Conference takes the position that it is not bound by Section 504, Plaintiff has no formal pathway to request that the terminal environment be modified to accommodate his actual working needs. He cannot report the barrier through any

accommodation process because no such process exists for him in the federal courthouse. The terminal is inaccessible to him, and there is no mechanism to say so.

Printing from the terminal does not solve the problem. Printing carries the same ten-cent-per-page fee as online access — it provides no cost relief. And even if printing were free, Plaintiff's Cerebral Palsy makes physically carrying large volumes of unbound paper impractical. The courthouse's nominal free access is, for him, no access at all. The combination of restrictions is itself an accommodation failure — one that reinforces the Section 504 arguments already pending before this Court in the underlying appeal.

## V. THE $30 QUARTERLY WAIVER IS NOT ADEQUATE FOR APPELLATE LITIGATION

The Judicial Conference's quarterly fee waiver — $30 per quarter as of January 2020 — provides no meaningful relief in complex appellate litigation. Thirty dollars at ten cents per page covers three hundred pages of documents per quarter. In an ERISA case with a multi-thousand-page administrative record, multiple rounds of district court briefing, and a body of circuit-level precedent that must be traced across dozens of decisions, three hundred pages of quarterly access is not a research budget. It is a rounding error.

A single meaningful research session — pulling the relevant district court docket, reviewing key filings, identifying comparable cases, and downloading the opinions necessary to verify citations — can exhaust the quarterly allowance before the session is complete. The $30 waiver was not designed for appellate litigation. It was

designed to ensure that members of the public can look up a case number without being charged. Plaintiff's research needs are categorically different from casual public record access.

## VI. PACER FEES CREATE THE DEFICIENCIES FOR WHICH PRO SE LITIGANTS ARE CRITICIZED — AND THE FEE STRUCTURE ITSELF HAS BEEN FOUND EXCESSIVE

Pro se litigants are routinely criticized — by courts, by opposing counsel, and in published decisions — for procedural deficiencies, citation errors, failure to engage with controlling authority, and lack of legal sophistication. PACER fees are a structural cause of precisely those deficiencies.

A litigant who cannot afford to read cases cannot know which cases control. A litigant who cannot review opposing counsel's prior filings cannot identify systematic citation errors. A litigant who cannot read initial complaints cannot fully understand the factual context that shapes the opinions available for free on public databases. Opinions alone, without the complaints, briefs, and filings that give them context, are insufficient for technically demanding appellate work. If Plaintiff mischaracterizes a case because he could not afford to read the underlying complaint — only the opinion — he will be held responsible for that mischaracterization. He cannot afford to prevent it.

This dynamic is not unique to Plaintiff's case. The fee structure imposes research costs that are unpredictable in advance and unlimited in practice. A law firm with a Westlaw or LexisNexis subscription pays a predictable flat fee for unlimited access. An individual litigant pays per page, per search, with no cap on search costs and no way to know the total before committing to it. Even a middle-class individual — not

indigent, but without institutional research resources — can face thousands of dollars in PACER fees in a single complex case. The fee structure does not distinguish between the Department of Justice and an unrepresented disabled plaintiff on disability income.

The judiciary's PACER fee structure has been recognized as excessive by a federal court. In National Veterans Legal Services Program v. United States, a class action brought by nonprofit organizations including the National Veterans Legal Services Program, the National Consumer Law Center, and the Alliance for Justice, the Federal Circuit ruled in 2020 that the judiciary had charged more than what the governing statute permitted — using PACER fees to fund programs unrelated to electronic public access. See Gov't charges too much for PACER access, Fed. Cir. says, Bloomberg Law (Aug. 6, 2020). The case settled in 2023 for $125 million. $125 Million Settlement Approved in Class Action Over Excessive PACER Fees, Courthouse News Service (Mar. 21, 2024). PACER revenue grew from approximately $20 million annually in 2001 to over $146 million annually in 2016, during a period when digital storage costs fell by more than 99.9 percent. Fix the Court, It Costs More Than Zero Dollars to Access Court Documents, Which Is Wrong on Several Levels, https://fixthecourt.com/freepacer/. The fees as charged are not tethered to actual system costs. They function as a revenue mechanism — one that falls disproportionately on individuals who cannot absorb research costs as institutional overhead.

Courts are creatures of precedent. When the precedent itself is gatekept behind a fee structure that charges individuals for every search and every page, the courts'

reliance on that precedent operates as a barrier to self-representation. The barrier is not limited to the indigent. It falls on any individual who cannot predict or absorb uncapped per-page research fees in technically demanding litigation — which is most people.

## VII. THE STRUCTURAL ASYMMETRY IS DIRECTLY RELEVANT TO THE ARGUMENTS IN THIS APPEAL

Plaintiff anticipates arguing that Lincoln's counsel engaged in bad-faith litigation conduct by systematically applying a superseded regulatory framework across this litigation after multiple notices of the governing law, and that attorney fees are warranted under ERISA § 502(g)(1). Documenting and contextualizing that pattern within the broader body of ERISA litigation in this circuit requires PACER access that Plaintiff cannot afford. Counsel can.

Plaintiff also anticipates arguing that the absence of counsel — itself the result of an attorney appointment denial that this Court is being asked to reverse — made every subsequent error worse. PACER fees compound that absence: they deny Plaintiff the research infrastructure that counsel would supply as a matter of course. A complete appellate record requires research Plaintiff cannot conduct without the waiver he seeks here.

## VIII. CONCLUSION

Plaintiff does not bring this motion as a claim of indigence. He brings it as a recognition that PACER fees, as currently structured, impose uncapped and unpredictable costs that fall disproportionately on individuals without institutional research resources — and that in complex appellate litigation, those costs can reach levels that no middle-class individual without law firm backing can reasonably

absorb. The $30 quarterly waiver does not address that problem. The courthouse terminal does not address that problem. The absence of public legal research infrastructure in the South Texas region does not address that problem.

The courthouse terminal problem is not merely a logistical inconvenience. Plaintiff receives a scribe accommodation at UTSA because his Cerebral Palsy prevents handwriting. That accommodation is available because UTSA complies with Section 504 of the Rehabilitation Act and conducts an interactive process. The Judicial Conference takes the position that the federal judiciary is not bound by Section 504. As a result, Plaintiff has no pathway to request that the courthouse terminal be modified to accommodate his working needs — no interactive process, no accommodation coordinator with authority to act, no mechanism to even report the barrier. The terminal is inaccessible to him. There is no way to say so officially. That closed loop is not a peripheral issue. It is the Section 504 structural problem this appeal already raises, applied directly to the research access question this motion presents.

The spirit of Haines v. Kerner, 404 U.S. 519 (1972) — that the courthouse must be accessible to unrepresented litigants as a matter of justice, not merely as a formal matter — applies to the research infrastructure that makes meaningful appellate participation possible. This Court has the authority to ensure that a pro se litigant before it has access to the tools necessary to participate meaningfully. That is what this motion asks.

Plaintiff respectfully requests that this Court:

1.    Waive PACER access fees for Plaintiff-Appellant Charles Terrence Bruff for the duration of Appeal No. 26-50345, including fees for document retrieval and docket searches; or

2.    In the alternative, authorize a monthly PACER research allowance sufficient to conduct reasonably necessary research for this appeal, with leave to apply for additional authorization upon a showing of specific research necessity; and

3.    Direct the PACER Service Center to implement the waiver or allowance promptly upon entry of this Court's order.

Respectfully submitted,


/s/ Charles T. Bruff
Charles Terrence Bruff
Plaintiff-Appellant, Pro Se
4835 Medical Drive #29643
San Antonio, Texas 78229
(318) 452-8978
cbruff13@outlook.com

Date: June 15, 2026

# CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2026, a true and correct copy of the foregoing Motion was served upon counsel of record for all Defendants-Appellees by email at the following addresses:

Counsel for Lincoln National Life Insurance Company:

Iwana Rademaekers, Esq. | iwana@rademaekerslaw.com

Sandy Acker | sandy@rademaekerslaw.com

Sandy Acker | sandy.acker@sprouselaw.com

Counsel and Docketing Staff for USAA Defendants:

Brian Aslin, Esq. | brian.aslin@jacksonlewis.com

Ana Sanchez | ana.sanchez@jacksonlewis.com

Crystal Aranda-Alvidrez | Crystal.Aranda-Alvidrez@jacksonlewis.com

Austin Docketing | Austindocketing@jacksonlewis.com

/s/ Charles T. Bruff

Charles Terrence Bruff