**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

CHARLES TERRENCE BRUFF,
Plaintiff-Appellant,

USAA HEALTH AND WELFARE BENEFITS PLAN,
USAA EDUCATIONAL ASSISTANCE PLAN,
UNITED STATES AUTOMOBILE ASSOCIATION,
AND LINCOLN NATIONAL LIFE INSURANCE COMPANY,
Defendants-Appellees.

Appeal No. 26-50345
D.C. Docket No. 5:26-CV-01720-XR (W.D. Tex.)

**PLAINTIFF-APPELLANT'S EMERGENCY MOTION FOR INJUNCTION
PENDING APPEAL PURSUANT TO FRAP 8(a)(2)**

Plaintiff-Appellant Charles Terrence Bruff, appearing pro se, respectfully moves this Court pursuant to Federal Rule of Appellate Procedure 8(a)(2) for an injunction pending appeal requiring Defendant-Appellee Lincoln National Life Insurance Company ("Lincoln") to maintain the status quo — specifically, to continue paying Plaintiff's long-term disability benefits at the current monthly rate and to provide written confirmation of benefit status — pending resolution of Appeal No. 26-50345.

The district court presentation requirement of FRAP 8(a)(1) is satisfied. Plaintiff presented this relief in ECF No. 27 (Motion for Preliminary Injunction Pending Appeal, April 24, 2026), fully briefed through ECF No. 31 (Reply, May 3, 2026), and renewed it as an explicit carve-out in ECF No. 41 (May 23, 2026). The district court denied ECF No. 27 in ECF No. 45, entered June 2, 2026.

## I. FRAP 8(a)(1) DISTRICT COURT PRESENTATION REQUIREMENT SATISFIED.

ECF No. 27, filed April 24, 2026, presented this Court's requested relief to the district court under Federal Rule of Civil Procedure 62(d) and FRAP 8(a)(1). The motion was fully briefed: Lincoln responded on May 2, 2026 (ECF No. 30), and Plaintiff replied on May 3, 2026 (ECF No. 31). Plaintiff renewed the request as an explicit carve-out in the motion to stay (ECF No. 41, May 23, 2026), specifying that ECF No. 27 should be excepted from any stay and ruled upon on the merits. The district court denied ECF No. 27 by text order entered June 2, 2026 (ECF No. 45). The presentation requirement is satisfied.

## II. BACKGROUND.

Plaintiff filed this action on March 16, 2026, asserting eight claims under ERISA arising from Lincoln's administration of his long-term disability benefits under a USAA group plan. The administrative record Lincoln certified as complete and produced in this litigation exceeds 2,500 pages. That record reveals: approval of Plaintiff's LTD benefits through September 2027 on the claims file cover sheet; two Special Investigations Unit referrals — one for social media surveillance in August 2025 yielding zero fraud indicators (Bates 0203–0204), and one to CoventBridge on March 20, 2026, four days after Plaintiff filed suit — with neither referral's results included in the certified production; a Bates gap of pages 0001–0052 with no explanation; no identified medical professional responsible for any clinical determination; no results of any periodic review; and eight pages of a

different USAA employee's protected health information commingled in Plaintiff's file.

Lincoln has provided no written communication to Plaintiff regarding his benefit status since September 2025. The results of a review conducted in March 2026 — now more than three and a half months ago — have never been communicated to Plaintiff through any channel. As of July 6, 2026, the date of this refiling, that silence remains unbroken: no communication, no determination letter, and no confirmation of benefit status has been provided by Lincoln. Lincoln's claimant portal displays an approved-through date of September 2027 but actively instructs Plaintiff not to rely on that date. The only confirmation that benefits are currently being paid came from opposing counsel's representation in a litigation filing — not from Lincoln directly.

The Social Security Administration found Plaintiff disabled under the most demanding federal standard and approved SSDI benefits. Lincoln directed that application, coordinated with Brown & Brown (Plaintiff's SSA-authorized representative) under SSA-1696, and collects Plaintiff's SSDI back pay directly. Lincoln has not provided Brown & Brown with the complete claims file despite Plaintiff's signed release authorizing full disclosure. The expedited SSDI reinstatement application cannot be completed without it.

Plaintiff has Autism Spectrum Disorder, Cerebral Palsy, and Post-Traumatic Stress Disorder — all three found disabling by Lincoln and the SSA. Plaintiff's brother died by self-inflicted gunshot wound on May 27, 2026. Plaintiff attended the funeral on June 3, 2026. Plaintiff is currently in active grief counseling. That counseling is dependent on health coverage Lincoln controls.

### III. THE PATTERN OF DISTRICT COURT NON-ENGAGEMENT.

Every contested motion in this case was denied before the briefing cycle closed, without findings of fact or conclusions of law, by text order. The following documents the pattern:

- **ECF No. 2 (March 16) — Motion to Appoint Attorney:** Raised Ulmer factors, Section 504, documented disabilities. Denied April 13 — before Lincoln responded. No findings. No Ulmer analysis. No Section 504 engagement.

- **ECF No. 25 (April 20) — Preliminary Injunction:** Three independent grounds; §2560.503-1(b)(7) independence violation; contaminated Administrative Record; SSA coordination conflict; Glenn structural conflict. Denied April 22 with statement "Unclear how allegations bear on the merits." Zero exhibits cited. Zero regulatory argument addressed. Glenn not mentioned.

- **ECF No. 27 (April 24) — PI Pending Appeal:** Rule 62(d); four Winters factors; §2560.503-1(b)(7); Glenn; Bates gap; clinical pathway destroyed; Section 504. Denied June 2 — wrong standard applied (Hilton, not Winter). Circular merits analysis. Glenn ignored. Section 510 theory mischaracterized. USAA service error in same order.

- **ECF No. 28 (April 26) — Motion for Corrective Action Regarding Contaminated Administrative Record:** Structural independence; Glenn conflict; PHI contamination. Denied May 4 — Lujan standing framework applied. "Allegedly" used to describe contamination visible on the face of Lincoln's own certified production.

- **ECF No. 32 (May 2) — Motion to File Under Seal:** In camera review of contaminated pages; false certification; third-party PHI. Denied June 2 — public records sealing doctrine applied to an in camera review request. Standing analysis wrong. Lincoln's false certification never examined.

- **ECF No. 34 (May 19) — Rule 55(a) Default Application:** Lincoln missed May 18 deadline. Mooted same day Lincoln filed MTD. No authority cited. No Rule 55(c) good cause analysis. Lincoln permitted to litigate while in default.

- **ECF No. 39 (May 19) — Motion for Reconsideration:** Documented pattern; new evidence from AR; Ariana M. controlling standard. Denied May 20 in two sentences. No engagement with regulatory argument. No engagement with AR evidence.

- **ECF No. 41 (May 23) — Motion to Stay with Carve-Outs:** Stay requested with explicit carve-outs for ECF Nos. 27 and 32. Stay granted June 2 — carve-outs denied. Lincoln's non-opposition reframed as consent to 'all proceedings.' USAA service error entered in same order.

Across all eight contested motions, the court cited zero plaintiff exhibits. Lincoln's motion to dismiss, filed May 19, 2026, while Lincoln was in default, cites zero plaintiff exhibits across a 75-page, 8-claim complaint and does not map a single legal argument to a specific claim.

## IV. THE DISTRICT COURT APPLIED THE WRONG LEGAL STANDARD AND MISCHARACTERIZED THE GOVERNING THEORY.

ECF No. 45 rests on three independent legal errors, each of which independently requires this Court's intervention:

**First,** the court applied *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) to govern the analysis. Hilton addresses stays of judgments pending appeal — specifically, whether to stay a district court order granting habeas corpus relief while the state appeals. The applicable standard for a preliminary injunction pending appeal is

*Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008). Although both frameworks state four factors, they are distinct in framing, burden allocation, and the presumptions that attach. Hilton's stay framework carries presumptions developed in the habeas context that have no analog in a civil ERISA benefits dispute. The district court's own order reflects this confusion: it cited Hilton for the governing framework but then cited *Trump v. CASA, Inc.*, 606 U.S. 831, 859 (2025) — a preliminary injunction case — for the irreparable harm requirement. Applying a stay-of-judgment standard to an injunction-pending-appeal motion, then supplementing it with injunction authority for one factor without acknowledging the inconsistency, is not a coherent application of either framework. The result is an order that applies no single legal standard correctly.

**Second,** the court's merits analysis evaluated the original underlying motions rather than the appellate arguments. ECF No. 45 at 2. The question on a FRAP 8(a)(2) motion is whether the appeal of the procedural errors has merit. The court never addressed the Rule 52(a)(2) argument, never addressed the default mootness argument, and never addressed *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567 (5th Cir. 1974). Its analysis is circular: it evaluated likelihood of appellate success by examining the original motions whose denial is itself the subject of the appeal.

Within this circular analysis, the court compounded the error by misreading a request for expedited ruling as a waiver of the briefing cycle. ECF No. 45 at 2. The court noted that ECF No. 25 included a "request for expedited ruling" and used that request to justify denying ECF No. 25 within 48 hours, before Lincoln had responded. That is not what a request for expedited ruling means. A request for expedited ruling asks the court to compress the briefing schedule and move faster — it does not ask the court to rule before the opposing party has an opportunity to respond. Standard practice on expedited motions is a shortened response deadline, not unilateral disposition. The court treated Plaintiff's request for speed as consent to a procedure that eliminates the opposing record entirely. That is a misreading of the request and a misapplication of the court's own docket management authority. And even if Plaintiff had waived briefing entirely — which he did not — Federal Rule of Civil Procedure 52(a)(2) does not have a waiver exception. The obligation to issue findings of fact and conclusions of law on a contested injunction motion is the court's obligation, not the parties' to waive. *Canal Authority*, 489 F.2d at 576.

**Third,** the court mischaracterized the governing legal theory on structural independence. The court stated that Lincoln has "litigation awareness because Plaintiff sued it" and that it is "unclear how the Court could eliminate this awareness without dismissing Plaintiff's case." ECF No. 45 at 2. That statement responds to a request Plaintiff never made. Plaintiff did not ask the court to

eliminate Lincoln's litigation awareness. Plaintiff asked the court to enforce the structural independence requirement that 29 C.F.R. § 2560.503-1(b)(7) and *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), already mandate. Glenn appears in Plaintiff's briefing. The court never mentioned it. That is a *Haines v. Kerner*, 404 U.S. 519, 520 (1972), violation on a specific and documented legal theory.

ECF No. 45 is itself a Rule 52(a)(2) violation in order format. The court declared that the remaining Winters factors weigh against an injunction without explaining why the balance of hardships favors Lincoln, without substantively addressing the public interest factor, and without engaging Glenn or §2560.503-1(b)(7). A four-page order that declares conclusions without walking through the applicable framework does not satisfy Rule 52(a)(2).

## V. THE WINTERS FACTORS SUPPORT THE INJUNCTION.
### A. Likelihood of Success on the Merits.
Four independently cognizable appellate errors each support likelihood of success:

**Rule 52(a)(2):** Every contested motion was denied without findings, before briefing closed, by text order. *Canal Authority* requires written findings on every contested injunction motion. The April 22 order states only that it is "unclear how" Plaintiff's allegations bear on the merits — one sentence, addressing one of four required Winter factors, characterizing a motion it does not accurately describe. This is reversible error on its face.

**Default Mootness:** ECF Nos. 24 and 33–34 establish that Lincoln and USAA received waiver requests simultaneously at the same registered agent, same address, same date (March 26, 2026). ECF No. 33 confirms USAA's April 15, 2026 waiver execution and May 18, 2026 answer deadline. The court granted ECF No. 33 on May 13. Lincoln's MTD was filed May 19 — one day after the deadline the court had just confirmed for the parallel defendant — while Lincoln was in default. The court mooted the default application the same day Lincoln filed the MTD, with no authority cited and no Rule 55(c) good cause analysis. No published decision in any circuit permits a defendant to dissolve default by filing a motion to dismiss. The rule the court applied would eliminate Rule 55(c) as a functional protection.

**Section 510 / Rule 15(d):** The court stated that the complaint does not allege Section 510 retaliation. The court evaluated a static complaint against a dynamic record. Section 510 was not in the original complaint because the evidence — the CoventBridge SIU referral on March 20, 2026, four days after filing — came from Lincoln's post-filing certified production. Rule 15(d) governs supplemental pleadings based on post-filing events. The court neither engaged on the merits nor directed Plaintiff to the procedural vehicle available to him.

**ECF No. 32 Dual Errors:** The court applied public records sealing doctrine to a motion requesting in camera review of contaminated pages from Lincoln's own

certified production. These are categorically different requests. A party requesting in camera review of its own litigation record does not bear the third-party standing burden the court applied. Lincoln's false certification — that a production containing a third party's protected health information is complete — was never examined.

**B. Irreparable Harm.**
The irreparable harm here is not the risk that benefits will stop. It is the present, ongoing, and documented absence of any information environment from which Plaintiff can determine whether they will.

Plaintiff has received no written communication from Lincoln regarding his benefit status since September 2025. The results of a review conducted in March 2026 — now more than three and a half months ago — have never been communicated to Plaintiff through any channel. As of July 6, 2026, the date of this refiling, no determination, no status update, and no communication of any kind has been received from Lincoln regarding that review. Lincoln's claimant portal displays an approved-through date of September 2027 but actively instructs Plaintiff not to rely on that date. The only information Plaintiff has received about his current benefit status came from opposing counsel's representation in a litigation filing.

The claims file Lincoln certified as complete and produced in this litigation reveals behavior that, combined with the communication blackout, Plaintiff cannot interpret as reassuring. Lincoln conducted two Special Investigations Unit referrals

during the period it was simultaneously directing Plaintiff to apply for SSDI: a social media surveillance referral in August 2025 yielding zero fraud indicators, and a CoventBridge field investigation referral on March 20, 2026 — four days after Plaintiff filed this lawsuit. Neither referral's results appear in the certified production. Lincoln referred Plaintiff for fraud investigation without disclosing this to SSA. Lincoln directed Plaintiff's SSDI application without disclosing the fraud referrals to Plaintiff.

Lincoln has also declined to provide Brown & Brown — Plaintiff's SSA-authorized representative under SSA-1696, a relationship Lincoln established and funds — with the complete claims file despite Plaintiff's signed release. The expedited SSDI reinstatement application cannot be completed without it. The stall is not administrative. Lincoln controls the document. Lincoln has not produced it.

Unlike Social Security, which publishes its Program Operations Manual System and administers benefits under documented internal procedures, Lincoln operates under no publicly disclosed internal policies for periodic review, benefit continuation, or adverse determination. Neither Plaintiff nor his providers can look up the rules because there are no published or provided rules. He cannot predict what is coming because Lincoln has disclosed nothing about its current review status, its next review schedule, or the criteria it will apply.

The practical consequence is that Plaintiff cannot plan for future medical treatment because he does not know whether he will have coverage to pay for it. He cannot make decisions about counseling continuity, specialist appointments, or medication management because every one of those decisions depends on insurance coverage Lincoln controls and has declined to confirm. His brother died by self-inflicted gunshot wound on May 27, 2026. He attended the funeral on June 3, 2026. He is currently in active grief counseling. That counseling depends on coverage Lincoln has not confirmed and has not communicated about in more than nine months.

There is no confidential channel through which Plaintiff can communicate these circumstances to Lincoln. Any communication Plaintiff sends to Lincoln enters the litigation stream. He cannot tell Lincoln about his brother's death, his grief counseling, or his current mental health status without that information potentially being used against him in the litigation Lincoln is currently conducting. The structural independence violation the district court declined to address is not a procedural abstraction. It is the reason Plaintiff cannot communicate with his own insurer about his own life without legal risk.

These harms are not compensable by money damages after the fact. The inability to plan treatment is occurring now. The information blackout is present and continuous. The grief counseling dependency is immediate. The SSDI

reinstatement stall compounds financial uncertainty that exists today, not in the future.

## C. Balance of Hardships.

Lincoln approved Plaintiff's benefits through September 2027 by its own certified records. It collects Plaintiff's SSDI back pay directly under a coordination of benefits provision it established and controls. It cannot certify to SSA that Plaintiff is disabled — as it did to obtain and direct the SSDI application — and simultaneously argue that the status quo tips the balance of hardships against continuation.

The injunction requires Lincoln to do one thing: continue paying benefits it is already contractually obligated to pay, at the rate it has been paying, without taking unilateral adverse action based on a review conducted by litigation-aware personnel using a claims file it has not produced to the designated recipient of Plaintiff's release. Lincoln faces no cognizable hardship from continuing to do what it is already doing.

Plaintiff faces compounding and irreversible loss. A benefits determination made during the pendency of this appeal — by reviewers who logged this lawsuit on March 27, 2026, by the same claims department that referred Plaintiff for fraud investigation four days after filing — would embed that determination in the administrative record before this Court has had the opportunity to review whether the district court correctly applied any legal standard at all.

**D. Public Interest.**

Two independent public interests apply.

First, the structural independence requirement of 29 C.F.R. § 2560.503-1(b)(7) and

*Glenn* exists to protect all plan participants, not just Plaintiff. Permitting Lincoln to conduct medical reviews using personnel who logged this lawsuit and who conducted a fraud investigation four days after its filing — without disclosing either to Plaintiff or to SSA — sets a precedent that the structural independence requirement is optional when litigation is pending. It is not. The 2016 Final Rule codifying *Glenn*'s structural independence requirement was promulgated precisely because Congress and the DOL recognized that plan administrators with financial incentives to deny benefits cannot make independent clinical determinations without enforceable structural safeguards.

Second, the 2023 ERISA Advisory Council report documented (P.51) that LTD claims generate more ERISA litigation than any other plan administrator category despite only 35% of private sector workers being covered by private LTD plans. The structural independence violation at issue here — if permitted to operate unchecked during appeal — affects every future claimant whose insurer conducts a periodic review after a lawsuit is filed. The public interest in having that question resolved on a complete record, with findings of fact and conclusions of law, rather than by text order before the record was assembled, is substantial.

**VI. TWO INDEPENDENT PATHWAYS REQUIRE MEANINGFUL ACCESS: DUE PROCESS AND THE ADA/SECTION 504.**

The district court's denial of Plaintiff's motion to appoint counsel — in 48 hours, before Lincoln responded, with no findings and no engagement on any of the three grounds raised — was not just a statutory error. It implicated two independent legal frameworks, each of which reaches the same outcome. The district court addressed neither.

**First: The Due Process Clause.** The right of access to courts is a fundamental right protected by the Due Process Clause of the Fourteenth Amendment. Tennessee v. Lane, 541 U.S. 509, 522–23 (2004). The Supreme Court held that this right is so fundamental that its denial triggers heightened constitutional scrutiny, and that due process requires accommodation to ensure court access is not illusory for individuals with disabilities. That constitutional floor applies equally to federal proceedings. The Due Process Clause does not have a federal judiciary exception. A federal court that denies accommodation to a litigant with documented, adjudicated disabilities affecting his ability to participate in litigation may be violating the Constitution directly, independent of any statute. The Judicial Conference's position that it is not bound by Section 504 does not address this constitutional obligation. It cannot.

**Second: Title II of the ADA and Section 504 of the Rehabilitation Act.** Lane independently holds that Title II of the ADA, as applied to the fundamental right of access to courts, is a valid exercise of Congress's Section 5 power under the

Fourteenth Amendment. 541 U.S. at 533–34. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, independently prohibits disability discrimination in any program or activity receiving federal financial assistance. The Judicial Conference's position that the federal judiciary is not covered rests on a narrow pre-amendment reading of "program or activity" that the Civil Rights Restoration Act of 1988, Pub. L. 100-259, was enacted to foreclose. After the 1988 amendments, "program or activity" means all operations of an entity. This is a question of first impression this Court has not resolved. The district court denied the motion raising it in 48 hours without engaging the argument. Both Lane and Section 504 reach the same result on these facts, and both were ignored. These pathways converge on the same point: the denial of Plaintiff's motion to appoint counsel was the predicate error that set up every subsequent problem. Without counsel, there was no one to ensure Plaintiff's arguments were read as filed. Without counsel, Plaintiff has no channel to communicate with Lincoln that does not enter the litigation stream. Without counsel, Plaintiff could not invoke Glenn and demand compliance, rather than filing a motion the court denied in 48 hours without mentioning Glenn. If this case is dismissed on Lincoln's structurally defective motion to dismiss — which maps no argument to any specific claim and cites no plaintiff exhibit across a 75-page, 8-claim complaint — the constitutional due process question, the first-impression Section 504 question, and the Lane

application to federal proceedings all evaporate simultaneously. The public interest in having those questions answered by this Court, rather than avoided by text order, weighs substantially in favor of injunctive relief that preserves this case for full appellate review.

## VII. WHAT MAKES THIS AN EMERGENCY.

Plaintiff does not know the current status of his benefits through any channel Lincoln has provided. He does not know whether the March 2026 review has concluded. He does not know what it found. He does not know whether another review is scheduled or when. Originally, he was having reviews every three months. It is now July. There has been no mention of a review and no communication with his claims manager. He does not know the criteria Lincoln will apply. He cannot find out, because Lincoln's internal policies are not disclosed and Lincoln has not communicated. As of July 6, 2026 — the date of this refiling — the results of the March 2026 LTD review remain unknown. Nothing has changed.

What Plaintiff does know is this: Lincoln conducted two fraud investigations during the period it was directing him to apply for SSDI. It did not disclose either investigation to SSA or to Plaintiff. The results of those investigations do not appear in the certified production. The claims file Lincoln uses to administer Plaintiff's benefits has not been provided to Plaintiff's SSA-authorized

representative despite a signed release. A periodic review was conducted in March 2026. Its results have not been communicated. The claimant portal instructs Plaintiff not to rely on the approval date it displays.

The emergency is not that an adverse determination is imminent — though it may be. The emergency is that Plaintiff cannot know. He cannot plan medical treatment because he does not know if he will have coverage. He cannot make counseling decisions because he does not know if his insurer will continue to pay for them. He cannot communicate his current circumstances — the death of his brother, his active grief counseling, his current mental health status — to Lincoln without that information entering the litigation stream Lincoln is actively pursuing against him. He has no confidential channel to his own insurer.

This uncertainty is not a background condition that Plaintiff can manage indefinitely. Plaintiff's PTSD — documented in Lincoln's own administrative record as a disabling condition — includes specific triggers related to suicide and sudden loss. Plaintiff's brother died by self-inflicted gunshot wound on May 27, 2026. Plaintiff is actively grieving. The documented risk to Plaintiff's mental health that Lincoln's own records reflect is not theoretical in this moment — it is acute. A loss of benefits in this context would not merely be a financial disruption. It would eliminate the health coverage funding the grief counseling on which Plaintiff currently depends. The harm is not limited to a future adverse

determination. The month-to-month uncertainty itself — not knowing whether support will continue, with no review schedule disclosed, no confirmation provided, and no mechanism to ask without entering the litigation stream — is not sustainable in Plaintiff's current circumstances. The court has the ability to address that uncertainty now. Lincoln does not have to terminate benefits to cause irreparable harm. It is causing it by maintaining silence.

The combination of a communication blackout, undisclosed fraud referrals, a withheld claims file, an unconfirmed review, and an insurer that instructs its own claimant not to rely on the only approval information it provides creates a situation that cannot be characterized as the status quo functioning normally. It is the status quo having broken down — in ways documented in Lincoln's own certified production — while Plaintiff is in active grief following his brother's death and dependent on the coverage Lincoln controls for the counseling that dependency requires.

## VIII. CONCLUSION.

Plaintiff did not file this case expecting to win automatically. He filed it expecting genuine engagement with the arguments he raised — engagement with *Glenn*, with the 2016 Final Rule, with Rule 52(a)(2), with the default timeline, with the contaminated administrative record. That engagement has not occurred at the district court level. Eight motions. Zero plaintiff exhibits cited. Zero regulatory

arguments addressed. A four-page order on a fully briefed injunction motion that applies the wrong standard, mischaracterizes the governing theory, and contains no findings of fact or conclusions of law.

Plaintiff is familiar with systems that do not register his participation. He has ASD. He has spent his life navigating institutions that treat his presence as optional. He does not experience the district court's non-engagement as surprising. He experiences it as familiar. What he is asking from this Court is not special treatment. It is a fair reading of what he actually filed.

What Plaintiff finds surprising is the degree to which Lincoln ignored hundreds of requests for information. The administrative record is littered with emails to multiple Lincoln personnel requesting basic information. Lincoln created and maintains the information blackout which necessitates litigation in the first place. The Winters factors support the injunction. The district court applied the wrong standard. The irreparable harm is present and ongoing. The balance of hardships favors Plaintiff. The public interest in structural independence, administrative record integrity, and first-impression Section 504 access questions weighs in favor of relief. The emergency is real: Plaintiff does not know the status of the benefits he depends on for survival, for housing, and for the grief counseling he is currently receiving following his brother's death. As of July 6, 2026, nothing has changed.

Respectfully submitted,

/s/Charles T. Bruff

Charles Terrence Bruff
Plaintiff-Appellant, Pro Se
4835 Medical Drive #29643
San Antonio, Texas 78229
(318) 452-8978
cbruff13@outlook.com
Date: July 6, 2026

---

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2026, the foregoing Plaintiff-Appellant's Emergency Motion for Injunction Pending Appeal Pursuant to FRAP 8(a)(2) was electronically filed with the Clerk of the United States Court of Appeals for the Fifth Circuit using the Court's CM/ECF electronic filing system. A Notice of Electronic Filing was automatically generated and transmitted to all counsel of record registered with the Fifth Circuit CM/ECF system, including:

Counsel for Lincoln National Life Insurance Company:
Iwana Rademaekers, Esq. | iwana@rademaekerslaw.com
Sandy Acker | sandy@rademaekerslaw.com
Sandy Acker | sandy.acker@sprouselaw.com
Counsel for USAA Defendants:
Brian Aslin, Esq. | brian.aslin@jacksonlewis.com
Ana Sanchez | ana.sanchez@jacksonlewis.com
Crystal Aranda-Alvidrez | Crystal.Aranda-Alvidrez@jacksonlewis.com
Austin Docketing | Austindocketing@jacksonlewis.com

/s/ Charles T. Bruff
Charles Terrence Bruff

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g)(1) and 27(d)(2)(A), the undersigned certifies that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains no more than 5,200 words, excluding the parts exempted by Fed. R. App. P. 32(f). This motion complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and (6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Charles T. Bruff

Charles Terrence Bruff

**CERTIFICATE OF CONFERENCE**

Pursuant to 5th Cir. R. 27.4, Plaintiff-Appellant certifies that on July 6, 2026, he conferred with counsel for Defendants-Appellees via email regarding the relief requested in this motion. Counsel for Lincoln National Life Insurance Company responded that Defendants-Appellees oppose the motion. No reasons were given.

Charles Terrence Bruff
/s/ Charles T. Bruff