# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**CHARLES TERRENCE BRUFF,**

Plaintiff-Appellant,

v.

**USAA HEALTH AND WELFARE BENEFITS PLAN,**
**USAA EDUCATIONAL ASSISTANCE PLAN,**
**UNITED STATES AUTOMOBILE ASSOCIATION,**
**AND LINCOLN NATIONAL LIFE INSURANCE COMPANY,**

Defendants-Appellees.

**Appeal No. 26-50345**
D.C. Docket No. 5:26-CV-01720-XR (W.D. Tex.)

### PLAINTIFF-APPELLANT'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL PURSUANT TO FRAP 8(a)(2)

Plaintiff files herewith Exhibit E (District Court Record, ECF No. 6, April 6, 2026), Exhibit F (District Court Record, ECF No. 6, April 6, 2026), and Exhibit EBSA-1. These documents are part of the district court record or post-date it and are included because they directly contradict factual representations in Lincoln's response and were omitted from Lincoln's appellate submission.

### CERTIFICATE OF INTERESTED PERSONS

The undersigned certifies that the following persons and entities have an interest in the outcome of this case: (1) Charles Terrence Bruff, Plaintiff-Appellant; (2) USAA Health and Welfare Benefits Plan, Defendant-Appellee; (3) USAA Educational Assistance Plan, Defendant-Appellee; (4) United States Automobile Association, Defendant-Appellee; (5) Lincoln National Life Insurance Company, Defendant-Appellee; (6) Lincoln National Corporation, parent of Lincoln National Life Insurance Company; (7) Law Offices of Iwana Rademaekers, P.C., counsel for Lincoln.

Charles Terrence Bruff
Plaintiff-Appellant, Pro Se

## PRELIMINARY MATTERS

### A. Lincoln's FRAP 27.3 Argument Misidentifies the Emergency and Mischaracterizes the Record

Lincoln argues that no emergency exists because its monthly benefit payments have continued and no adverse determination has been issued. That argument fails on three independent grounds.

**First,** Lincoln conflates FRAP 27.3's administrative standard with the substantive FRAP 8(a)(2) standard. FRAP 27.3 governs the procedural handling of emergency filings. It does not establish a substantive requirement that harm be complete before injunctive relief may be sought. A preliminary injunction exists precisely to prevent irreparable harm before it occurs — not to remedy it after the fact. Lincoln's position, taken to its logical conclusion, would eliminate injunctive relief: if a party must wait until harm is complete before an emergency exists, an injunction can never prevent that harm.

**Second,** Lincoln mischaracterizes the nature of the emergency. This is not a request for reassurance. It is a demand for information Lincoln is legally required to provide and has refused to produce. The policy defines "Proof" as evidence "in a form or format satisfactory to Lincoln" — with no published criteria for what satisfies that standard. Lincoln confirmed in writing on March 23, 2026 that there are no guidelines governing review frequency, no published criteria for the Non-Verifiable Symptoms classification, and no defined procedure for applying for the Rehabilitation Incentive Benefit. Lincoln's September 17, 2025 letter confirmed there is "no set frequency for disability reviews." Lincoln's own claimant portal instructs Plaintiff not to rely on the approved-through date it displays. A medical review was initiated March 20, 2026. Its outcome has never been communicated. The result is that Plaintiff has no definition of proof, no knowledge of when his next review will occur, no information about the outcome of a review that has been running for four months, and no basis for understanding his ongoing entitlement to benefits or health coverage at any given moment. That is not anxiety. That is the specific information blackout 29 C.F.R. § 2560.503-1 was enacted to prohibit.

**Third,** Lincoln's framework presupposes a claimant who can absorb the gap between an unannounced adverse determination and the discovery that benefits have stopped. The Social Security Administration — the federal program Lincoln simultaneously directed Plaintiff to use — publishes its review schedule, its evidentiary standards, its evaluation criteria, and its

benefit continuation rules in the Code of Federal Regulations. Lincoln administers the same claimant under no published standards, on an undisclosed schedule, with no communicated outcomes. That disparity is not incidental. The DOL promulgated 29 C.F.R. § 2560.503-1 specifically because plan administrators with financial incentives to deny benefits cannot be trusted to voluntarily disclose the criteria governing those decisions. Lincoln's information blackout is not a gap in standard operating procedure. It is the conduct the regulation was enacted to address.

That framework fails on two additional independent grounds for any claimant managing complex, lifelong disabilities. Medical care cannot be scheduled retroactively. Botulinum toxin injections, specialist appointments, and ongoing treatment protocols must be arranged weeks or months in advance. A treatment cycle missed because coverage lapsed without warning cannot be restored by a damages award issued years later. Lincoln's own review process also requires Plaintiff's active medical participation — physician attestations, clinical updates, functional assessments — all of which must be scheduled in advance. Plaintiff cannot schedule the medical appointments necessary to support Lincoln's own review process because Lincoln will not disclose when that process will occur. If this Court adopts Lincoln's framework, it establishes that ERISA claimants with serious disabilities are entitled to no notice of impending adverse action, no reasonable expectation that benefits will continue, and no ability to prepare the medical documentation Lincoln's own review requires.

## B. Lincoln's "Same Relief Previously Denied" Argument Misapprehends FRAP 8(a)(2)

Lincoln argues this Court should deny the motion because the district court denied the same relief. This Court applies the four-factor standard independently and de novo. The district court's denial is a jurisdictional predicate under FRAP 8(a)(1)(A)(ii) — it establishes that Plaintiff first sought relief below as the rule requires. It is not a merits determination to which this Court defers. Lincoln cannot bootstrap a district court ruling that is itself under appeal to defeat the appellate motion challenging that ruling. That is circular reasoning — and it is the same circularity that infects the district court's June 2 order, which evaluated likelihood of appellate success by examining the original motions whose denial is the subject of the appeal.

## INTRODUCTION

Lincoln's appellate response offers this Court one legal argument on irreparable harm, one citation for the governing standard, and a conclusion internally contradicted by Lincoln's own conduct, Lincoln's own documents, and Lincoln's own employees. It does not engage the three independent legal errors the district court committed. It does not address the contaminated administrative record. It does not mention the dual-track SSDI collection apparatus Lincoln is actively operating. And it does not explain why an entity that directed Plaintiff's Social Security application, funded his federal representation, and is monitoring his July 21, 2026 expedited reinstatement appointment would resist a court order merely requiring it to maintain the status quo its own records show is approved through September 2027.

Lincoln's brief does not attach, reference, or acknowledge Exhibit E and Exhibit F, filed as ECF No. 6 on April 6, 2026: the January 9, 2026 Corporan email captioned "Vocational Rehab and Rehabilitation Benefit" and the January 27 referral letter and January 28 closure correspondence from Lincoln's Vocational Rehabilitation Counselor Aleysia Chambers. Those documents directly contradict the central factual premise of Lincoln's position on the vocational rehabilitation claim. Lincoln made the same omission when it responded to the Employee Benefits Security Administration on July 9, 2026. Exhibit EBSA-1 is that response. The Court is being asked to evaluate Lincoln's characterization of events without the documents that refute it.

Lincoln is not resisting this injunction because it disputes Plaintiff's disability. It has not disputed disability since December 2025. Lincoln is resisting because the injunction forecloses the gap — the window between an imminent Social Security award and whatever Lincoln's collection infrastructure decides to do with it. Lincoln's collection function is monitoring Plaintiff's July 21 appointment in real time. Lincoln's claims administration function has issued no benefit communication of any kind in nearly four months. That asymmetry is the conduct that makes the injunction necessary.

## I. THE GOVERNING STANDARD: LINCOLN'S OWN CITATION CONFIRMS THE DISTRICT COURT'S ERROR

Lincoln cites *Whole Woman's Health v. Jackson,* 13 F.4th 434, 441 (5th Cir. 2021), for the FRAP 8(a)(2) standard. That citation is correct. But Lincoln then defends the district court's June 2, 2026 denial, which applied *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987) — the standard for staying a money judgment after trial, not the standard for a preliminary injunction pending appeal. By citing *Jackson* as the governing rule and endorsing a ruling that

applied *Hilton,* Lincoln has confirmed the error rather than defended it. This Court reviews the choice of legal standard de novo. *Winter v. Natural Resources Defense Council,* 555 U.S. 7, 20 (2008), and its appellate application through FRAP 8(a)(2) govern. The district court applied *Hilton.* Lincoln's brief cites *Jackson.* Lincoln offers no defense of the *Hilton* application because none is available.

## II. LIKELIHOOD OF SUCCESS: THREE INDEPENDENT APPELLATE ERRORS AND THREE CLAIMS LINCOLN NEVER ADDRESSES

### A. Rule 52(a)(2): No Findings, Nothing to Affirm

*Canal Authority of Florida v. Callaway,* 489 F.2d 567, 576 (5th Cir. 1974), makes Rule 52(a)(2) mandatory and reviews compliance de novo. The June 2 order announces four conclusions with no reasoning, no regulatory analysis, no engagement with *Metropolitan Life Insurance Co. v. Glenn,* 554 U.S. 105 (2008), and no engagement with 29 C.F.R. § 2560.503-1(b)(7). The Fifth Circuit cannot defer to reasoning that does not appear in the record. Vacatur and remand is the only legally available outcome. Lincoln does not address this argument.

### B. Governing Regulatory Framework Ignored Across Six Filings

The DOL 2016 Final Rule, 81 Fed. Reg. 92316 (Dec. 19, 2016); *Ariana M. v. Humana Health Plan of Texas, Inc.,* 884 F.3d 246 (5th Cir. 2018) (en banc); and Tex. Ins. Code § 1701.062 were placed before the district court six times without acknowledgment. Lincoln's motion to dismiss cites *Cusson v. Liberty Life Assurance Co.,* 592 F.3d 215 (1st Cir. 2010) — a pre-2016 First Circuit case inapplicable in Texas since April 1, 2018. De novo review is the governing standard.

### C. Lincoln's Own Filing Admits Its Record Violates the 2018 Regulation

Lincoln's ECF No. 30, page 7, states its internal guidelines "are not part of the administrative record." That simultaneously confirms the guidelines exist and confirms they are absent. 29 C.F.R. § 2560.503-1(m)(8)(iv), effective April 1, 2018, requires the record to include policy guidance "without regard to whether such advice or statement was relied upon." Rademaekers' April 27, 2026 certification used the pre-2018 "reviewed to issue its decision" formulation — the precise language the 2018 rule was enacted to prohibit. Under *Ariana M.,* de novo review applies. A record stripped of Lincoln's own

decision-making framework is not a complete record subject to meaningful review.

**D. Three Claims Lincoln Does Not Address**

**The § 104(b)(4) claim requires no exhaustion.** It seeks penalties under § 502(c) for Lincoln's failure to produce documents upon written request. No administrative appeal required. Plaintiff made multiple written requests across multiple categories. Multiple 30-day deadlines expired. Lincoln confirmed guidelines exist in ECF No. 30 while confirming they are not in the record — a self-proving violation. Likelihood of success depends on a calendar. Lincoln makes no response.

**The mental illness limitation applied to a claimant whose primary diagnosis is Cerebral Palsy.** Lincoln/Bruff 0053 — the Claim Coversheet Report — lists Diagnosis 1 as G80 Cerebral Palsy. The DOL 2016 Final Rule requires that limitation-based adverse determinations include specific criteria relied upon, and that information "may not be withheld on grounds of confidentiality." 81 Fed. Reg. 92316. Lincoln applied a mental illness limitation to a claimant whose own file designates a congenital neurological disorder as the primary diagnosis, issued no compliant notice, and refused to disclose classification criteria. *Lynd v. Reliance Standard Life Ins. Co.,* 94 F.3d 979 (5th Cir. 1996), and *George v. Reliance Standard Life Ins. Co.,* 776 F.3d 349 (5th Cir. 2015), hold that mental illness limitations are inapplicable where physical conditions independently support a disability finding. Lincoln's brief does not acknowledge the limitation exists.

**The corrective action posture and the "alleged" problem.** Rademaekers confirmed in writing on May 1, 2026: "Those documents were erroneously placed in your STD claim file and will be removed. You should delete those from your system." Three days later the district court denied the corrective action motion, characterizing the contamination as "allegedly" disclosed. The word "alleged" appears because Rademaekers had not disclosed her own written admission. She read the May 4 order. She said nothing. Eighteen days later she filed the motion to dismiss relying on the same certified record. ECF No. 32 was denied.

### III. IRREPARABLE HARM: FOUR INDEPENDENT GROUNDS AGAINST ONE INAPPLICABLE CITATION

*Spiegel v. City of Houston,* 636 F.2d 997 (5th Cir. 1981), says injury is irreparable only if monetary remedies cannot undo it. *Spiegel* involved

municipal ordinance enforcement against a business. Its monetary-remedy logic presupposes bilateral, discrete, reversible harm between parties with equivalent resources. None of those premises apply here.

## A. Structural Administrative Record Contamination — Irreversible

Litigation-aware claims personnel cannot produce an independent review under 29 C.F.R. § 2560.503-1(b)(7). Once an adverse determination is embedded in a contaminated administrative record, that contamination cannot be retroactively removed. Under ERISA's administrative record rule, any future adverse determination Lincoln issues will be evaluated by a court against the record Lincoln built while contaminated. *Spiegel* does not reach structural, permanent harm to an administrative record. Lincoln has not responded to this theory at any level.

## B. Lincoln's Dual-Track Conduct, Estoppel, and the Glenn Conflict

Lincoln built complete infrastructure for financial coordination with the Social Security Administration and no infrastructure for clinical coordination with Plaintiff. Faith Cole, Lincoln's Social Security Specialist, emailed Plaintiff on July 1, 2026 about his expedited reinstatement status. Brown and Brown — Lincoln's externally funded SSDI advocacy vendor — called three consecutive Mondays in July 2026; each call's sole inquiry was whether SSA had processed the application. Outside of litigation counsel, the only Lincoln-affiliated personnel who have contacted Plaintiff since April 22, 2026 are those whose institutional function is to collect federal benefits on Lincoln's behalf. The function responsible for evaluating whether Plaintiff remains disabled has communicated nothing in nearly four months. One track runs. One track is silent. The injunction forecloses the gap between an imminent SSA award and whatever Lincoln's collection infrastructure decides to do with it.

Lincoln directed Plaintiff's expedited reinstatement application under 42 U.S.C. § 1310 — the most demanding disability standard in federal law. Lincoln funded Brown and Brown's SSA representation. Lincoln's administrative records show approval through September 17, 2027. SSA has found Plaintiff disabled since birth — an earnings-based suspension during USAA employment, not a clinical reversal. Lincoln cannot simultaneously pursue federal collection of an SSDI-derived offset and resist court oversight of the private benefit that offset is contractually designed to reduce. If Lincoln intends to terminate benefits during the pendency of this appeal such that its recovery exposure is at risk, the appropriate course is to withdraw the

expedited reinstatement application and instruct Brown and Brown to stand down. It has done neither.

Under *Metropolitan Life Insurance Co. v. Glenn,* 554 U.S. 105, 108 (2008), courts must weigh a conflict of interest when an ERISA administrator both evaluates and pays claims. Lincoln funded Brown and Brown's SSA representation because an SSDI award generates an offset reducing Lincoln's payment obligation — then initiated a medical review eleven days after Plaintiff filed for expedited reinstatement at Lincoln's direction. The only coherent explanation for reviewing a claimant Lincoln has simultaneously represented to a federal agency is totally disabled is to build an adverse record while the SSDI offset accrues. *Glenn* requires this Court to weigh that conflict.

## C. Health Coverage Loss and the Medicaid Cascade

Lincoln's appellate response argues that continued receipt of monthly benefit deposits constitutes adequate notice of benefit status and that this is Lincoln's standard practice across its claimant population. That position is not workable for any claimant managing complex, lifelong disabilities requiring medical care scheduled weeks or months in advance. Plaintiff's annual health care expenses under the USAA plan exceed $100,000, reflecting continuous management of Spastic Hemiplegic Cerebral Palsy, which requires Botulinum toxin injections approximately every three months to manage spasticity and maintain ambulation. Lincoln's own administrative file documents at Lincoln/Bruff 2021 039: "EE CF WILL BE ONGOING THRU ADULT LIFE AS CP DX WILL NEED ONGOING PT." Lincoln approved Plaintiff's benefits with that document in its possession. By the time a monthly deposit stops and Plaintiff discovers the adverse determination, the treatment window has already closed. Money paid years later does not restore the physical function lost during a coverage gap. Plaintiff is also currently receiving grief counseling following the death of his brother by self-inflicted gunshot wound on May 27, 2026, with a documented PTSD profile including suicide-related triggers. Loss of coverage at the moment of greatest documented acute need is harm no retroactive award repairs.

The consequences extend beyond Plaintiff. Health coverage termination triggers COBRA at approximately $764 per month — unaffordable without LTD income. Loss of LTD income drops Plaintiff below Medicaid income thresholds. Plaintiff has been considered disabled by Social Security since birth, satisfying Medicaid's disability prerequisite. Texas Medicaid eligibility therefore follows automatically from income loss. Texas HIPP cost-effectiveness analysis then fires under 42 U.S.C. § 1396e, as it did during

Plaintiff's first five years of USAA employment. Texas Medicaid pays USAA COBRA premiums. The USAA Summary Plan Description states under "No Coordination of Prescription Drug Benefits" that coordination does not apply to prescription drugs — a provision unchanged since Capital Rx replaced CVS Caremark on January 1, 2026. Texas Medicaid therefore also pays prescription drug costs the USAA plan is legally required to cover as primary. Government programs pay twice. Lincoln pays nothing. That harm to Texas Medicaid is not compensable in Plaintiff's ERISA damages. This documented coordination failure is the subject of a currently pending federal proceeding, *United States ex rel. Bruff v. USAA Insurance Agency, Inc., et al.,* No. 5:22-cv-593-DAE (W.D. Tex.), referenced solely to establish that the pattern is documented and reported to the Department of Justice. *Spiegel* does not address third-party governmental harm.

## D. Lincoln's Refusal to Define Its Standards Creates the TWS-VRS Catch-22

Lincoln's appellate response argues that the governing policy benefit is the Rehabilitation Incentive Benefit, which requires Lincoln's prior written approval of a Rehabilitation Program. That argument closes its own trap. Lincoln's claims administrator confirmed in writing on March 23, 2026 that there are "no guidelines or additional information to provide" governing the Rehabilitation Incentive Benefit across multiple request categories. Lincoln's ECF No. 30 confirms its internal guidelines are not in the administrative record. No submission procedure has ever been disclosed despite four written requests. Without defined submission criteria, Plaintiff cannot submit a qualifying program. Without a submitted and denied program, no § 503-compliant denial issues. Without that denial, Texas Workforce Commission Vocational Rehabilitation Services — which Lincoln's own counselor acknowledged in Exhibit F is the payer of last resort requiring documented prior private exhaustion before state funding can be accessed — cannot fund vocational rehabilitation services.

Lincoln's position, taken on its own terms, makes the prerequisite denial structurally impossible to obtain. The 24-month mental illness limitation clock runs throughout this appeal. Each week without defined submission criteria is a week in which Plaintiff cannot trigger private exhaustion, cannot access state vocational rehabilitation funding, and cannot begin participation in a program that would both satisfy the Rehabilitation Incentive Benefit's requirements and increase his monthly benefit. A damages award at the end of this litigation does not restore that time.

## IV. LINCOLN'S APPELLATE SUBMISSION OMITS THE DOCUMENTS THAT ESTABLISH THE MERITS

Lincoln's brief argues there is no adverse benefit determination on vocational rehabilitation. That argument depends entirely on the Court not seeing Exhibits E and F.

On January 9, 2026, Corporan emailed Plaintiff under the subject line "Vocational Rehab and Rehabilitation Benefit" describing Lincoln's vocational rehabilitation program — job placement assistance, training, education — as a benefit available under his LTD claim. That email is Exhibit E. On January 27, 2026, Lincoln's Vocational Rehabilitation Consultant Aleysia Chambers sent Plaintiff a formal referral letter on Lincoln Financial letterhead. The letter's first sentence states Plaintiff has been referred "to receive vocational rehabilitation services." Chambers acknowledged Texas Workforce Commission Vocational Rehabilitation Services is the "payer of last resort," outlined the four-step state qualification process requiring prior private-source denials, and simultaneously entered Plaintiff's information into the state portal. On January 28, 2026, Chambers closed the referral. Her stated reason was a transferable skills threshold — not that vocational rehabilitation is not a policy benefit. These documents are Exhibit F.

Lincoln told the EBSA on July 9, 2026 that vocational rehabilitation "is not a benefit under the Policy" and that Plaintiff "appears to have confused" the Rehabilitation Incentive Benefit with vocational services. Exhibits E and F were omitted from that submission. They are omitted from Lincoln's appellate submission. These are the same two documents omitted from two different submissions to two different tribunals. In both instances their absence eliminates the factual predicate that refutes Lincoln's position. Exhibit EBSA-1 is Lincoln's EBSA submission.

Lincoln's EBSA submission quotes the Rehabilitation Incentive Benefit verbatim and calls it a policy benefit. That benefit explicitly contemplates participation in a Rehabilitation Program — which Lincoln's own January 9 email described as including vocational counseling, job training, and education. Lincoln cannot simultaneously represent that the Rehabilitation Incentive Benefit is a policy benefit and that vocational rehabilitation services are not. The former requires the latter.

Under 29 C.F.R. § 2560.503-1(b)(6), a claim is filed when made in accordance with the plan's reasonable claims procedures. Lincoln's own case manager initiated the vocational rehabilitation process, assigned a counselor,

conducted an evaluation, and closed the referral. That is a claims process. Under § 2560.503-1(m)(4), closing it without written notice is an adverse benefit determination. Under § 2560.503-1(l), administrative remedies are deemed exhausted when a plan fails to follow its own procedures.

Under *Haines v. Kerner,* 404 U.S. 519 (1972), this Court is required to construe pro se pleadings liberally. Lincoln's brief, its district court filings, and its EBSA submission share a consistent feature: each characterizes Plaintiff's positions as unclear or unfounded while omitting the specific documents that establish their foundation. Lincoln's EBSA submission told a federal regulatory agency Plaintiff "appears to have confused" the issue — while withholding the Corporan email demonstrating Plaintiff was responding accurately to Lincoln's own framing. Characterizing a pro se plaintiff with documented cognitive disabilities as confused rather than correct is a litigation posture, not a legal argument.

## V. THE INJUNCTION DOES NOT PREVENT PLAN ADMINISTRATION

Lincoln argues the injunction would prevent it from administering Plaintiff's claim in accordance with the terms of the relevant policy and that no legal precedent supports such preemptive intervention. That misrepresents the relief. The injunction asks Lincoln to continue paying benefits its own records show are approved through September 2027 and to seek leave of court before taking any adverse action. It does not prevent reviews, evaluations, or any administrative function. It prevents Lincoln from acting unilaterally on the product of a review conducted by litigation-aware personnel, through a compromised clinical channel, using an administrative record that begins at Bates page 0053 and contains admitted third-party PHI, without court oversight. Lincoln conflates benefit administration with adverse action. ERISA § 502(a)(3) authorizes the injunctive relief requested. *Cigna Corp. v. Amara,* 563 U.S. 421 (2011).

## VI. BALANCE OF HARDSHIPS

Lincoln argues it will be irreparably injured if required to continue paying benefits pending appeal because it cannot recover overpaid benefits once they are paid and spent, citing *Manuel v. Turner Industries Group, L.L.C.,* 905 F.3d 859 (5th Cir. 2018), and *Montanile v. Board of Trustees,* 577 U.S. 136 (2016). Lincoln also notes Plaintiff provided no bond or other security. Neither argument withstands scrutiny.

Congress exempted fully insured plans from ERISA's trust requirement. 29 U.S.C. § 1103(b)(1). Lincoln pays from its own general account under a group insurance contract, not from a pooled participant trust. *Musmeci v. Schwegmann Giant Super Markets, Inc.,* 332 F.3d 339 (5th Cir. 2003). There is no trust corpus at risk. *Montanile's* equitable lien analysis applies to self-funded plans holding participant assets in trust — not to a fully insured plan where Lincoln bears the risk from its own balance sheet. Lincoln's invocation of fiduciary duty to all plan participants misapplies the trust framework to a plan structure exempt from it. Lincoln's hardship is commercial — continuing to pay a contractual obligation its own records show is approved through September 2027. That is compliance, not hardship.

Plaintiff's hardship is concrete: income, health coverage, Botulinum toxin treatment preventing physical deterioration, grief counseling during an acute documented crisis, access to the Rehabilitation Incentive Benefit before the 24-month limitation clock expires, and SSA record integrity. The balance is not close.

## VII. PUBLIC INTEREST

Lincoln argues the injunction would prevent it from complying with its fiduciary duty under 29 U.S.C. § 1104(a)(1) to administer the plan for the benefit of all participants and that no legal precedent supports the relief requested. Both arguments fail.

As established in Section VI, Lincoln's fiduciary duty argument misapplies the trust framework to a fully insured plan. There are no pooled participant assets at risk from continuing to pay Plaintiff's benefits. Lincoln's § 1104(a)(1) argument presupposes a self-funded plan structure that does not exist here. And as established in Section V, legal precedent for the requested relief exists under ERISA § 502(a)(3) and *Cigna Corp. v. Amara,* 563 U.S. 421 (2011). Lincoln's assertion to the contrary is incorrect.

The public interest affirmatively favors the injunction on three independent grounds. First, 29 C.F.R. § 2560.503-1(b)(7) protects every ERISA disability claimant from claims administration by litigation-aware personnel. Permitting Lincoln to conduct reviews without court oversight during this appeal establishes that the regulation is unenforceable whenever a claimant files suit. Second, the DOL's December 2023 Advisory Council Report documented that 64.5 percent of all ERISA benefits litigation involves long-term disability precisely because denial-and-litigate is economically rational when deterrence is absent. An injunction requiring court approval before adverse action during

an appeal where every motion was denied before briefing closed is the check that public interest requires. Third, the dual-track SSDI collection structure — directing federal disability applications, funding SSA representation, collecting offsets, and building adverse review records concurrently — has been documented across twelve cases in eight circuits. The public interest in courts scrutinizing rather than insulating that practice is substantial.

## CONCLUSION

Lincoln's response confirms rather than refutes each element of this motion. It cites the right standard while defending a ruling that applied the wrong one. It argues monetary remedies are available while its collection infrastructure monitors Plaintiff's SSA appointment in real time. It characterizes the emergency as a desire for reassurance while maintaining an information blackout that leaves Plaintiff with no definition of proof, no published review schedule, no communicated review outcomes, and no basis for understanding his ongoing entitlement to benefits or health coverage — and by the time that blackout ends with the absence of a monthly deposit, the treatment window for managing a lifelong neurological condition will already have closed, the Medicaid cascade will have triggered, and the TWS-VRS funding pathway will remain blocked. It argues the vocational rehabilitation claim has no merit while omitting the documents that refute that position. It argues there is no public interest while operating a dual-track structure that simultaneously argues Plaintiff's total disability to the federal government and resists court oversight of the private benefit it is contractually obligated to pay.

The injunction is narrow: continue paying benefits Lincoln's own records show are approved through September 2027 and seek leave of court before taking adverse action. That preserves the status quo, protects the appellate record, and ensures the independence question is answered before — not after — Lincoln acts on the product of a contaminated review.

For the foregoing reasons, Plaintiff-Appellant respectfully requests that this Court grant the Emergency Motion for Injunction Pending Appeal.


Respectfully submitted,


Charles Terrence Bruff
Plaintiff-Appellant, Pro Se
Dated: July 21, 2026

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that this reply has been prepared in 14-point Times New Roman font, proportionally spaced. Plaintiff has filed a contemporaneous Motion for Leave to File Overlength Reply explaining the need for additional length given the number of independent arguments left unaddressed by Lincoln's response. This reply has 4,559 words. NOTE: FRAP rules normally require double spaced briefs, Lincoln's reply was not double spaced so Plaintiff decided to err on the side of consistent formatting.

/s/ Charles Bruff
Charles Terrence Bruff
Plaintiff-Appellant, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2026, I filed the foregoing with the Clerk of the United States Court of Appeals for the Fifth Circuit and served a copy on counsel for Appellees via the Court's electronic filing system.

/s/ Charles Bruff
Charles Terrence Bruff
Plaintiff-Appellant, Pro Se

## EXHIBIT LIST

**Exhibit E** — Lincoln Financial's Initiation of Vocational Rehabilitation Process, including January 9, 2026 Corporan email captioned "Vocational Rehab and Rehabilitation Benefit" (District Court Record, ECF No. 6, April 6, 2026)

**Exhibit F** — Lincoln Financial Vocational Rehabilitation Referral and Closure Correspondence, including January 27, 2026 Chambers referral letter and January 28, 2026 closure email (District Court Record, ECF No. 6, April 6, 2026)

**Exhibit EBSA-1** — Law Offices of Iwana Rademaekers, P.C., Response to EBSA Request for Information and Documents, July 9, 2026 (EBSA File No. 202622-04268). Demonstrates that the same factual omissions made to this Court were simultaneously made to the Employee Benefits Security Administration.