No. 26-50345

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

CHARLES TERRENCE BRUFF,
Plaintiff-Appellant,
v.
LINCOLN NATIONAL LIFE INSURANCE COMPANY;
USAA EDUCATIONAL ASSISTANCE PLAN,
Defendants-Appellees.

———————————————

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division
Case No. 5:26-CV-01720-XR
Honorable Xavier Rodriguez, District Judge

———————————————

APPELLANT'S OPENING BRIEF

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and

entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an

interest in the outcome of this case. These representations are made in order that

the judges of this Court may evaluate possible disqualification or recusal.

1. Charles Terrence Bruff, Plaintiff-Appellant, Pro Se.

2. Lincoln National Life Insurance Company, Defendant-Appellee.

3. USAA Educational Assistance Plan, Defendant-Appellee.

4. Iwana Rademaekers, counsel for Defendants-Appellees.

5. Lincoln National Corporation, parent company of Lincoln National Life

Insurance Company.

**STATEMENT REGARDING ORAL ARGUMENT**

This appeal presents a question of first impression regarding whether Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, requires federal courts to provide meaningful accommodation to disabled pro se litigants. It also presents recurring Fifth Circuit questions concerning compliance with Federal Rule of Civil Procedure 52(a)(2) and the exclusive procedure established by Rule 55 for resolving defaults. Oral argument would assist the Court in resolving these questions. Plaintiff further notes that the combination of his documented disabilities and the non-engagement pattern documented in this brief makes oral argument particularly important to ensure meaningful access to this Court. Plaintiff acknowledges that oral argument will be challenging for him personally. His Autism Spectrum Disorder and PTSD make unstructured adversarial proceedings difficult, and the prospect of oral argument causes him significant anxiety. He raises this not to avoid argument but to request that the Court be advised in advance so that appropriate accommodations can be arranged. Given the severity and complexity of the issues presented — a question of first impression under Section 504, a recurring Rule 52(a)(2) pattern, and the structural record deficiencies documented throughout this brief — Plaintiff believes oral argument may be necessary for this Court to fully assess the issues, and he is prepared to participate with whatever accommodations the Court determines are appropriate.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ....................................................2

STATEMENT REGARDING ORAL ARGUMENT ...............................................3

TABLE OF AUTHORITIES.................................................................................5

JURISDICTIONAL STATEMENT ......................................................................8

STATEMENT OF THE ISSUES ........................................................................12

STATEMENT OF THE CASE ...........................................................................15

SUMMARY OF THE ARGUMENT..................................................................22

ARGUMENT ....................................................................................................27

  I. The District Court's Pattern of Non-Engagement Violated Rule 52(a)(2) and Rule 55 ........................................................................................................27

  II. The District Court's Non-Engagement Suppressed Five Substantive Violations37

  III. The Denial of Plaintiff's Motion to Appoint Counsel or Referral to Pro Bono Program Violated Section 504 and the Due Process Clause ...................................52

CONCLUSION AND RELIEF REQUESTED.....................................................59

CERTIFICATE OF COMPLIANCE ..................................................................64

CERTIFICATE OF SERVICE...........................................................................65

# TABLE OF AUTHORITIES

## CASES

*Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018) (en banc) .................................................................... 14, 25, 40, 41, 42, 43, 52, 61, 63

*Canal Authority of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974) 24, 28, 31, 54

*CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60 (5th Cir. 1992) ... 25, 28, 37

*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949) ................... 10

*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978) .................................... 10

*Crespo v. Liberty Life Assurance Co. of Boston*, No. 2:20-cv-00791 (E.D. La. filed Mar. 6, 2020) ............................................................................................ 43

*Cuming v. Liberty Life Assurance Co. of Boston*, W.D. Tex. No. 1:18-cv-00320 .. 43

*Cusson v. Liberty Life Assurance Co. of Boston*, 592 F.3d 215 (1st Cir. 2010) ..... 40

*Escobar v. Montee*, 895 F.3d 387, 391 (5th Cir. 2018) ........................................ 11

*Georgia Southern & Florida Railway Co. v. Atlantic Coast Line Railroad Co.*, 373 F.2d 493, 497 (5th Cir. 1967) ............................................................... 30

*Grove City College v. Bell*, 465 U.S. 555 (1984) ................................................. 54

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) .................................. 61

*Hanson v. Polk County Land, Inc.*, 608 F.2d 129, 131 (5th Cir. 1979) ................ 29

*Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242, 255 (2010) ..... 58, 63

*Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir. 1980) 15, 27, 58, 60, 63

*Katherine P. v. Humana Health Plan, Inc.*, No. 19-50276 (5th Cir. June 29, 2020) 58

*Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc.*, 446 F.2d 353, 356 (5th Cir. 1971) ............................................................................ 35

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) ................................................. 34

*Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008) ......................... 30

*Olson v. Lincoln National Life Insurance Co.*, No. 2:21-cv-03980 (W.D. La. filed Nov. 16, 2021) ......................................................................................... 41, 43

*Powell v. United States*, 849 F.2d 1576, 1578-80 (5th Cir. 1988) .................... 29, 34

*Rattie v. Lincoln National Life Insurance Co.*, No. 1:23-cv-00007 (W.D. Tex. filed Jan. 3, 2023) ........................................................................................... 43

*Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983) ....................................... 58

*Sims v. ANR Freight System, Inc.*, 63 F.3d 1315, 1318 (5th Cir. 1995) ................ 30

*Southeastern Community College v. Davis*, 442 U.S. 397 (1979) ......................... 54

*Stripling v. Jordan Production Co.*, 234 F.3d 863, 872 (5th Cir. 2000) .................39

*Study v. Peabody Investments Corp. & Affiliates Welfare Benefit Plan*, No. 2:19-cv-00211 (D. Wyo. filed Oct. 11, 2019) .................................................43

*Stuart v. Laird*, 5 U.S. (1 Cranch) 299 (1803)................................................55

*Tennessee v. Lane*, 541 U.S. 509, 531-32 (2004)........................................27, 56

*Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982)............................10, 59

*Western Fire Insurance Co. v. Copeland*, 786 F.2d 649, 651-52 (5th Cir. 1986)...29

*Williams v. Catoe*, 946 F.3d 278 (5th Cir. 2020) (en banc) ..................................10

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)...........25

*Wofford v. Liberty Life Assurance Co. of Boston*, No. 2:23-cv-02110 (E.D. La. filed June 17, 2023) ..................................................43

**STATUTES**

28 U.S.C. § 1292(a)(1) ........................................................................9, 11

28 U.S.C. § 1331 ....................................................................................9

28 U.S.C. § 1915 .............................................................10, 15, 55, 58, 63

28 U.S.C. § 2201 (Declaratory Judgment Act) .......................................55

28 U.S.C. §§ 2071-2077 (Rules Enabling Act).......................................55

29 U.S.C. § 791 ...................................................................................56

29 U.S.C. § 794 (Section 504, Rehabilitation Act) ...........................3, 9, 15, 54, 55

29 U.S.C. § 1024(b)(4) (ERISA § 104(b)(4)) ..................................59, 64

29 U.S.C. § 1132(c)(1) (ERISA § 502(c)(1))...........................................59

29 U.S.C. § 1132(e)(1) (ERISA § 502(e)(1))..............................................9

29 U.S.C. § 1132(g)(1) (ERISA § 502(g)(1)) ..........................................58

42 U.S.C. § 407 ...................................................9, 15, 17, 23, 26, 51, 52

42 U.S.C. § 1983 .................................................................................10

42 U.S.C. § 12102(2)(A) .....................................................................57

Civil Rights Restoration Act of 1988, Pub. L. No. 100-259 ...............27, 54, 55

Texas Insurance Code § 1701.062 .......................................................41

**RULES**

Fed. R. App. P. 4(a)(1)(A).....................................................................9

Fed. R. App. P. 32(a)(5) ......................................................................66

Fed. R. App. P. 32(a)(6) ......................................................................66

Fed. R. App. P. 32(a)(7)(B)................................................................66

Fed. R. App. P. 32(f) ........................................................................66

Fed. R. Civ. P. 6 ................................................................................32

Fed. R. Civ. P. 10(c)..........................................................................17

Fed. R. Civ. P. 12(a) .........................................................................36

Fed. R. Civ. P. 12(b).........................................................................36

Fed. R. Civ. P. 26(g)....................................19, 20, 24, 36, 39, 44, 45, 52, 64

Fed. R. Civ. P. 52(a)(2) ...........................3, 13, 24, 28, 30, 32, 34, 35, 63

Fed. R. Civ. P. 55 ......................3, 12, 13, 22, 24, 25, 28, 36, 37, 38, 64

5th Cir. R. 28.2.1 ...............................................................................2

W.D. Tex. Local Rule CV-7(d)..................................................29, 32

## REGULATIONS

20 C.F.R. § 404.1740 ........................................................................18

29 C.F.R. § 2560.503-1(b)(7)............................................................30

29 C.F.R. § 2560.503-1(m)(4).................................................45, 49, 61

29 C.F.R. § 2560.503-1(m)(8)...........................................................65

## OTHER AUTHORITIES

7 Op. O.L.C. 110 (May 3, 1983) .......................................................56

American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) (DSM-5)................................................................56

Guide to Judiciary Policy, Vol. 5, § 255.10 ......................................56

Tex. Disciplinary R. Prof. Conduct 3.02 ...........................................42

Tex. Disciplinary R. Prof. Conduct 3.03(a)(4)...................................39

Tex. Disciplinary R. Prof. Conduct 8.04(a)(2)...................................42

## JURISDICTIONAL STATEMENT

The district court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). Plaintiff brought claims under ERISA §§ 502(a)(1)(B), 502(a)(3), 502(c), and 503, and 42 U.S.C. § 407. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, was raised as an independent ground in Plaintiff's motion to appoint counsel or referral to pro bono program (ECF No. 2, ROA.82), which was filed the same day as the complaint.

This Court has jurisdiction under 28 U.S.C. § 1292(a)(1). The April 22, 2026 text order denied Plaintiff's motion for a preliminary injunction (ECF No. 25, ROA.628), and denial of a preliminary injunction is immediately appealable as of right. The notice of appeal (ECF No. 26, ROA.646) was filed April 23, 2026 — within thirty days of the April 22 order — and is timely under Federal Rule of Appellate Procedure 4(a)(1)(A).

The appeal also encompasses the district court's denial of Plaintiff's Motion to Appoint Counsel or Referral to Pro Bono Program (ECF No. 2, ROA.82, denied April 13, 2026), which was expressly identified as a ground for appeal in ECF No. 26 and raised Section 504 of the Rehabilitation Act and the Due Process Clause as independent grounds. This Court's jurisdiction to review that denial rests on three independent bases.

First, the denial satisfies the collateral order doctrine. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). *Williams v. Catoe*, 946 F.3d 278 (5th Cir. 2020) (en banc), does not control: *Williams* explicitly limits its holding to "actions brought under 42 U.S.C. § 1983" under the discretionary "exceptional circumstances" standard of 28 U.S.C. § 1915(e)(1). *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982). Plaintiff sought Section 504 interactive-process accommodations—of which counsel and pro bono referral were two requested options—not discretionary § 1915(e)(1) appointment. This distinction governs the third *Cohen* prong. *Williams* held that prong unsatisfied because an unrepresented plaintiff can appeal after final judgment. That logic presumes all litigants retain the baseline capacity to participate and preserve issues. Section 504's interactive-process requirement exists because that assumption fails for disabled litigants: courts cannot anticipate whether disability will impair participation during critical proceedings. While self-paced written motion practice may impose manageable burdens, real-time, unstructured adversarial proceedings—like oral argument—present acute barriers that a post-judgment appeal cannot remedy.

Second, this Court exercises pendent appellate jurisdiction under *Escobar v. Montee*, 895 F.3d 387, 391 (5th Cir. 2018). The order is inextricably intertwined with and necessary to review the April 22 preliminary injunction denial: failing to

address Section 504 or Due Process when Plaintiff initially raised his disability directly impacted his ability to participate in the underlying proceedings.

Third, independently reviewable or not, Section 504 and Due Process serve as direct grounds for reversing the April 22 preliminary injunction denial itself under 28 U.S.C. § 1292(a)(1).

Plaintiff filed a supplemental notice of appeal on May 20, 2026 (ECF No. 40), expressly adding the text orders at ECF Nos. 28, 34, and 39. This Court has pendent appellate jurisdiction over those orders under *Escobar v. Montee*, 895 F.3d 387, 391 (5th Cir. 2018), which permits review of non-independently-appealable orders that are either "inextricably intertwined" with the appealable order or whose review is "necessary to ensure meaningful review" of it. ECF No. 40 was filed within thirty days of the most recent of those orders.

The corrective-action denial (ECF No. 28, ROA.725) is inextricably intertwined with the preliminary injunction denial. The April 22 PI order characterized the contaminated administrative record as an "alleged" complaint about "an incomplete claims file." ECF No. 28 required the district court to address that characterization directly — it was Plaintiff's motion to require corrective action on the same contaminated record the PI order had just dismissed as alleged. The order denying ECF No. 28 sustained the "alleged" characterization and declined to engage the contamination evidence. That determination is inextricably intertwined

with the PI denial because it represents the district court's affirmation, after full briefing, of the same non-engagement that produced the PI denial.

The default mootness order (ECF No. 34, ROA.872) presents a pure question of law whose resolution is necessary to ensure meaningful review of the preliminary injunction denial. If the procedure the district court applied — mooting a Rule 55(a) default application because the defaulting party filed a motion to dismiss after the answer deadline — has no basis in the Federal Rules, then every Lincoln filing since May 19 rests on an unauthorized foundation, including the briefing posture from which the district court denied the fully briefed ECF No. 27 and the standing from which Lincoln's motion to dismiss was filed. Reviewing the PI denial without resolving whether that foundation was lawfully created leaves the most consequential procedural question in the record unanswered.

The reconsideration denial (ECF No. 39, ROA.951) is inextricably intertwined with the default mootness order. It is the district court's refusal, after eight fully briefed independent arguments, to correct the Rule 55 error identified in ECF No. 34. Reviewing ECF No. 34 without reviewing ECF No. 39 leaves the question half-answered: whether the error was committed is presented by ECF No. 34; whether it was correctable and the district court refused to correct it is presented by ECF No. 39. Both are necessary to the complete picture.

**STATEMENT OF THE ISSUES**

**I.** Whether the district court's systematic pattern of non-engagement — resolving seven contested motions in six weeks by unreasoned text order, all but one before briefing closed, none with findings of fact or conclusions of law — violated Federal Rule of Civil Procedure 52(a)(2) in denying Plaintiff's preliminary injunction motion, Federal Rule of Civil Procedure 55 in mooting Plaintiff's default application, and the Due Process Clause in closing the briefing cycle before the parties could be heard:

    **A.** Whether that pattern left the appellate record structurally incomplete in the ways Rule 52(a)(2) exists to prevent — no findings on any of the four *Winter* factors, no ruling on Section 504 for this Court to review, and a reconsideration denial stating no basis at all;

B. Whether allowing Lincoln to never defend any position—its standard of review, record certification, motion to dismiss, or default—against a complete adversarial record deprived Plaintiff of trial and appellate due process and suppressed the five substantive violations in Part II;

C. Whether mooting Plaintiff's Rule 55(a) default application via an unexcused, post-deadline motion to dismiss without leave or Rule 55(c) good-cause findings has any basis in the Federal Rules, where a February

2024 Federal Judicial Center survey confirmed zero of ninety-four federal districts utilize such a procedure.

**II.** Whether the five substantive violations that the district court's pattern of non-engagement kept from ever being tested on a complete record must define the scope of the district court's obligations on remand:

**A.** Whether Lincoln's counsel asserted a standard of review this Court's own en banc decision, *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018), eliminates for Texas disability claims, while omitting that decision from her motion to dismiss entirely;

**B.** Whether Lincoln certified as complete and accurate an administrative record missing fifty-two pages and containing a third party's protected health information;

**C.** Whether Lincoln failed to issue ERISA § 503-compliant notice for two adverse benefit determinations — the Mental Illness and Non-Verifiable Symptoms Limitation applied at claim approval, and the closure of Plaintiff's vocational rehabilitation referral — both raised in Lincoln's motion to dismiss, which was mooted by the pendency of this appeal before it was fully briefed, leaving both determinations at risk of the same non-engagement pattern if that motion proceeds unchanged on remand;

Case: 26-50345   Document: 53-1   Page: 14   Date Filed: 08/03/2026

**D.** Whether Lincoln's motion to dismiss — represented by Lincoln's own counsel as "likely dispositive" of this case while never mentioning Claim One or mapping any argument to it — can dispose of Plaintiff's independently accruing ERISA § 502(c) document-request claim without addressing it, where leaving that claim unresolved would only require Plaintiff to relitigate the same conduct in a new action the next time a document request goes unanswered;

**E.** Whether Lincoln's practice of directing Plaintiff's SSDI application and securing a first-lien reimbursement agreement on the resulting federal award implicates 42 U.S.C. § 407, a question of first impression in this Circuit.

**III.** Whether the district court's denial of Plaintiff's motion to appoint counsel or referral to a pro bono program, without engaging Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, 28 U.S.C. § 1915, or the *Iron Workers/Ulmer* factors, is an independent ground for reversal under Section 504 and the Due Process Clause.

## STATEMENT OF THE CASE

### A. Nature of the Proceedings and Claims

Plaintiff-Appellant Charles Terrence Bruff has Autism Spectrum Disorder, Cerebral Palsy, and Post-Traumatic Stress Disorder — disabilities confirmed disabling by the Social Security Administration since birth and by Lincoln's own claims examiners in September 2025 when Lincoln approved Plaintiff's claim for long-term disability benefits under ERISA. Plaintiff brought this action after Lincoln approved his claim and then, within months, took two categories of action that form the factual foundation of this appeal. First, Lincoln transmitted Plaintiff's administrative record with another individual's protected health information embedded in it, then certified that contaminated record as complete and accurate. Second, Lincoln directed Plaintiff to apply for SSDI benefits through Brown & Brown while simultaneously positioning itself to collect from the resulting award — a practice documented across eleven cases in Plaintiff's PACER research in which the same SSDI coordination sequence preceded benefit termination while Lincoln collected federal retroactive overpayment proceeds. (Exhibit SSDI-CONDUCT, filed with this brief.) Plaintiff respectfully requests that this Court take judicial notice under Federal Rule of Evidence 201(b)(2) of the docket entries and case outcomes compiled in Exhibit SSDI-CONDUCT, each drawn from PACER records of the referenced actions — public records whose accuracy cannot reasonably be questioned, and each accessible to Plaintiff through the Fifth

Circuit's fee-exemption research access that made this compilation possible. None of these facts were addressed by district court order.

The complaint raises claims under ERISA §§ 502(a)(1)(B), 502(a)(3), 502(c), and 503, and 42 U.S.C. § 407. The motion to appoint counsel or referral to pro bono program (ECF No. 2, ROA.82), filed the same day as the complaint, separately raised Section 504 of the Rehabilitation Act as an independent ground for appointment and accommodation. It runs to seventy-five pages with exhibits subsequently filed of record, each incorporated by rule as part of the pleading under Federal Rule of Civil Procedure 10(c). The exhibits document the governing regulatory framework, Lincoln's refusal to produce documents under ERISA § 104(b)(4), the unlawful EFT collection mechanism under 42 U.S.C. § 407, and the failure to issue a compliant vocational rehabilitation denial under ERISA § 503. Not one of those exhibits has been cited by the district court in any order. Not one has been cited by Lincoln in its motion to dismiss. That shared non-engagement is the central fact from which this appeal proceeds.

Some of what Exhibit SSDI-CONDUCT documents does not fit neatly within Federal Rule of Evidence 201(b)(2)'s narrow warrant to notice adjudicative facts, and Plaintiff says so rather than disguise it. Beyond PACER docket entries and case outcomes, the exhibit compiles Brown & Brown's own public-facing descriptions of two products — Claim Compass and SettlementConnect — built

from data gathered through Brown & Brown's role as Plaintiff's SSA-appointed fiduciary representative under 20 C.F.R. § 404.1740. Brown & Brown has no contractual authority to settle Plaintiff's LTD claim. Neither does Lincoln; settlements arise only as a result of litigation. SettlementConnect nonetheless identifies, in Brown & Brown's own carrier-facing description, "precisely the right time" to offer settlement to claimants who have filed ERISA lawsuits — trained on over 200,000 SSDI files gathered through that same fiduciary relationship, across eighteen of the top twenty LTD carriers. Plaintiff does not ask this Court to resolve that structural question on this appeal; he asks it to take institutional notice of it, because it bears on the integrity of ERISA proceedings before this Court and the district courts of this Circuit, and because he could not have identified it without the research access the Fifth Circuit's own fee exemption made possible.

**B. The Administrative Record and Rademaekers' Certification**
Lincoln's counsel Iwana Rademaekers transmitted Plaintiff's claims files — 2,428 Bates-stamped pages covering the STD 2021 and LTD 2026 productions — from the Law Offices of Iwana Rademaekers' own firm-controlled OneDrive account on April 12, 2026, through her firm's business manager and paralegal, without minimum-necessary review. The production did not come from Lincoln Financial directly; it came through defense counsel's private firm infrastructure. (Exhibit CONFLICT3, ECF No. 27, ROA.649.) On April 27, 2026, she certified in writing

(Exhibit LC, ECF No. 17, ROA.533) that the links contained "everything that Lincoln reviewed to issue its decision regarding your claim for benefits."

Two defects were visible on the face of the production without any review. First, the LTD 2026 file begins at Lincoln/Bruff 0053. Pages 0001 through 0052 do not exist in the production. Bates numbering is applied manually; the absence of fifty-two pages is not a formatting artifact. Second, Lincoln/Bruff 2021 394 through 401 — eight pages in the STD 2021 file — contain the completed physician forms, FMLA certification, and attending physician statement of a third party whose identity is protected under HIPAA (Lincoln/Bruff 2021 394–401). The name on every page is not Charles Terrence Bruff.

Plaintiff notified Rademaekers of the contamination on May 1, 2026. Rademaekers responded fifteen minutes later, confirming the contamination in writing: "Those documents were erroneously placed in your STD claim file and will be removed." She then instructed Plaintiff to delete the contaminated pages from his copy. She did not withdraw the Rule 26(g) certification. She did not reproduce the corrected file. She did not disclose the admission to the district court. On April 22, 2026 — before the contamination was discovered — Rademaekers threatened to transmit the same 2,500-page unredacted production to a USAA attorney who had not appeared on the docket within seven days, conditioning non-disclosure on Plaintiff's consent to a protective order: "If I do not receive a response from you

within seven days, I will proceed with the service of the Initial Disclosures and the link to the documents." The April 22 threat became intelligible as conduct consistent with Rademaekers' stated standard operating procedure — that she produces claim files as she receives them from her client, without review. That context also reframes Rademaekers' May 1 admission that "I always produce claim files as I receive them from my client": her failure to review the production before certifying it as complete was not carelessness in this instance. It was her standard operating procedure.

Receiving eight pages of a third party's medical records and FMLA certifications in his claims file raised immediate spoliation and privacy concerns. Rademaekers' instruction to delete the pages compounded the issue, as unilaterally altering his copy risked creating a discrepancy with court filings. That concern is why Plaintiff chose to describe the contamination in his Motion for Corrective Action rather than attach the underlying material: he did not file the eight contaminated pages, and he did not file Rademaekers' May 1 email admitting to them, because doing either would have placed a stranger's PHI into the public docket a second time. Plaintiff also reasonably expected that Rademaekers — the attorney who had personally certified the production as complete and accurate under Federal Rule of Civil Procedure 26(g) — would be the one to disclose her own admission to the district court once she knew the certification was false; that expectation, and not any wish

to conceal the admission, is why Plaintiff did not file it himself. Rademaekers never made that disclosure. The email admitting the contamination has never been filed with this Court or the district court by either party.

Eighteen days later, Lincoln filed its motion to dismiss, relying on the same certified, contaminated, uncorrected administrative record. The district court, in denying Plaintiff's motion for corrective action (ECF No. 28, ROA.725), characterized the contamination as "alleged" — a characterization that was accurate only because Rademaekers had not disclosed what she had already admitted in writing three days before the order was entered.

## C. The District Court's Orders: A Chronology of Non-Engagement

Every contested motion decided against Plaintiff was decided before the briefing cycle closed, without findings of fact, and without substantive engagement with the arguments presented. Adverse dispositions averaged under three days from filing, often on the day of filing or the following day. The one motion with a complete briefing record — ECF No. 27, ROA.649, fully briefed May 3, 2026 — waited thirty days after briefing closed for a ruling. The full chronology, including every contested motion's filing date, ruling date, and the specific legal error each order committed, is set out in the table at Argument I.A.3 below.

Two orders illustrate the pattern most starkly. The preliminary injunction denial (ECF No. 25, ROA.628) issued forty-eight hours after filing, before Lincoln had

responded and before Plaintiff's reply was due, and mischaracterized the motion as objecting to a communication protocol and an "incomplete claims file" — neither characterization appears in the motion, and the order addressed none of the three independent statutory grounds actually raised. The Rule 55(a) default application (ECF No. 34, ROA.872) was mooted the same day it was filed, after Lincoln's own answer deadline had already passed, on the basis of Lincoln's "appearance" alone — with no citation to any provision of Rule 55 and no good-cause analysis under Rule 55(c).

## SUMMARY OF THE ARGUMENT

This appeal arises from a systematic pattern of non-engagement by both the district court and defense counsel across every contested motion. Although the April 22, 2026 order denying preliminary injunctive relief (ECF No. 25, ROA.628) establishes appellate jurisdiction, the district court resolved seven contested motions in six weeks—six before briefing closed—without findings of fact or conclusions of law.

That pattern produced five things this Court is now asked to address: a standard of review this Court's own precedent eliminated but Lincoln's counsel asserted anyway, a contaminated and uncertified administrative record, two adverse benefit determinations issued without required notice, a document-request claim Lincoln's motion to dismiss never mentioned, and an unbriefed § 407 question of first impression.

The three arguments that follow are not independent grounds for reversing three different orders in isolation. All three trace to the same root: the district court's refusal to engage. Argument I shows that refusal operating on procedure. Argument II shows what it kept buried — five substantive violations Lincoln was never made to defend. Argument III shows the same refusal at the threshold, in the denial of counsel — which is why everything after it was harder to catch and fix.

Lincoln's litigation counsel compounded that failure directly. Her firm transmitted Plaintiff's administrative record without review and certified it complete. After Plaintiff identified that the production was missing fifty-two pages and contained a third party's protected health information, Plaintiff represents that Rademaekers responded within fifteen minutes, confirming in writing on May 1, 2026 that the third-party records had been "erroneously placed" in his file. She did not disclose that admission to the district court, withdraw her Rule 26(g) certification, or reproduce a corrected file — and Lincoln filed its motion to dismiss eighteen days later relying on the same uncorrected record. Three days after the admission, the court denied Plaintiff's motion for corrective action. It described the contamination as merely "alleged" — a characterization that was accurate only because the court had never been told what Rademaekers already knew. Counsel's non-disclosure and the court's non-engagement produced the same result from opposite directions. Three grounds for reversal are presented, each independently sufficient:

First, the district court's non-engagement violated Rule 52(a)(2) and Rule 55 — one failure, applied to two different motions within the same six-week span. The April 22, 2026 preliminary-injunction denial contains no findings of fact and no conclusions of law. It was issued forty-eight hours after filing, before Lincoln was required to respond and before Plaintiff could reply — before the record those findings would require had been assembled. *Canal Authority of Florida v.*

*Callaway*, 489 F.2d 567 (5th Cir. 1974). That left this Court without any findings on the four factors set out in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). It also left the broader record incomplete beyond the injunction itself: no ruling on Section 504 for this Court to review, and a reconsideration denial stating no basis at all. Nor did Lincoln ever have to defend any position against a completed adversarial record — a due process failure, not just a procedural one.

The same non-engagement produced the May 19, 2026 order mooting Plaintiff's Rule 55(a) default application: a post-deadline motion to dismiss, treated as a self-executing cure of default, without leave and without the good-cause showing Rule 55(c) requires. CJC Holdings, Inc. v. Wright & Lato, Inc., 979 F.2d 60 (5th Cir. 1992). The Federal Judicial Center's February 2024 survey found that procedure in zero of the ninety-four federal districts. (Exhibit FJC, ECF No. 39-1, ROA.980–981.)

Second, the district court's non-engagement suppressed five substantive violations that must define the scope of any remand.

(1) Lincoln's counsel asserted a standard of review this Court's own en banc decision, Ariana M. v. Humana Health Plan of Texas, Inc., 884 F.3d 246 (5th Cir. 2018) (en banc), eliminates for Texas disability claims — and omitted that decision from her motion to dismiss entirely. (2) Lincoln certified as complete an

administrative record missing fifty-two pages and containing a third party's protected health information. (3) Lincoln issued no ERISA § 503-compliant notice for two adverse benefit determinations: the Mental Illness and Non-Verifiable Symptoms Limitation applied at claim approval, and the closure of Plaintiff's vocational rehabilitation referral. Lincoln raised both in a motion to dismiss that was mooted by this appeal's pendency before full briefing. Both remain at risk of the same non-engagement if that motion proceeds unchanged on remand. (4) Lincoln's motion to dismiss never mentioned Claim One at all — Plaintiff's independently accruing ERISA § 502(c) document-request claim. Plaintiff represents that Lincoln's own counsel called the motion "likely dispositive" of the case in a May 21, 2026 conferral email. Left unresolved, that omission guarantees only that Plaintiff will have to file a new action the next time a document request goes unanswered. (5) Lincoln's practice of directing Plaintiff's SSDI application while securing a first-lien reimbursement agreement on the resulting federal award implicates 42 U.S.C. § 407, a question of first impression in this Circuit that the same non-engagement has kept from ever being briefed.

None of these five violations has been tested on a complete record, for the same reason no procedural motion in this case has.

Third, the denial of Plaintiff's motion to appoint counsel or referral to a pro bono program was an independent reversible error with cascading consequences. The

motion raised three grounds — Section 504 of the Rehabilitation Act, 28 U.S.C. § 1915, and the *Iron Workers/Ulmer* factors — and the court addressed none. The absence of counsel made every subsequent error worse: every motion that was mischaracterized, every exhibit that was ignored, every regulatory argument that went unaddressed, did so in proceedings where a represented plaintiff would have had an attorney standing at the lectern to correct the record.

Independently, this Court should decide the Section 504 question of first impression: whether the federal judiciary's self-declared Section 504 exemption survives the Civil Rights Restoration Act of 1988 and *Tennessee v. Lane*, 541 U.S. 509 (2004). Raised below but ignored, the issue is fully ripe. Resolving it now is vital because Plaintiff's documented disabilities impair adversarial communication, litigation management, and physical document production—barriers that will persist on remand.

The relief requested throughout is not a bare remand. It is a remand with instructions: to permit the complete briefing this record has never had, and to require the district court to reach the five substantive violations its own non-engagement has, until now, kept it from reaching.

## ARGUMENT

### I. THE DISTRICT COURT'S PATTERN OF NON-ENGAGEMENT VIOLATED RULE 52(A)(2) IN TWO DISTINCT WAYS AND VIOLATED RULE 55 IN A THIRD, WITHOUT ANY FEDERAL PRECEDENT.

**Standard of Review**

Compliance with Rule 52(a)(2) is reviewed de novo. *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). Whether the district court applied the correct legal standard is reviewed de novo. Whether the court correctly characterized the pro se record is reviewed for clear error. Pro se pleadings must be construed liberally as a matter of law—a standard reviewed de novo. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The good-cause standard for default relief under Rule 55(c) is reviewed for abuse of discretion. *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 62 (5th Cir. 1992).

**A. The April 22, 2026 Preliminary Injunction Denial Left the Appellate Record Structurally Incomplete in Every Way Rule 52(a)(2) Exists to Prevent.**

**1. The Denial Foreclosed the Record on Which Findings Depend—Violating Due Process**

Rule 52(a)(2) requires findings of fact and conclusions of law whenever a court "grants or refuses an injunction." Fed. R. Civ. P. 52(a)(2). This rule is an expression of due process. It exists to require district courts to provide reasoning so that appellate courts can provide meaningful appellate review—the constitutional function of appellate courts. No reasoning means no appellate due process. Those purposes are not confined to preliminary injunction denials. They apply equally

whenever a district court rules on a contested motion affecting the parties' rights, because meaningful appellate review and due process protection serve the same constitutional function regardless of the motion's label.

A foundational due process mandate requires that a party not "lose its case without a full opportunity to be heard." *Georgia S. & Fla. Ry. Co. v. Atl. Coast Line R.R. Co.*, 373 F.2d 493, 497 (5th Cir. 1967). Notice prior to a dispositive ruling "is not an unimportant technicality, but serves substantial interests," which this Court consistently enforces. *Hanson v. Polk Cnty. Land, Inc.*, 608 F.2d 129, 131 (5th Cir. 1979). Ruling on a dispositive motion without affording the non-moving party "an opportunity to present [its] evidence" is reversible error. *Western Fire Insurance Co. v. Copeland*, 786 F.2d 649, 651-52 (5th Cir. 1986). This Court has reversed on the same ground where a district court resolved a claim without giving the non-moving party the notice and opportunity to respond it was due. *Powell v. United States*, 849 F.2d 1576, 1578-80 (5th Cir. 1988). A finding requires a record. A record on a preliminary injunction motion requires three components: a motion, a response, and a reply.

Lincoln's response to ECF No. 25, ROA.628 was not due until May 4, 2026, under Local Rule CV-7(d). Plaintiff's reply was not due until May 11. The April 22 order denying the motion was entered forty-eight hours after filing—before any of those three documents existed. No findings were possible because no record existed from

which findings could be drawn. The absence of findings is not a procedural oversight; it is the structural consequence of a ruling made before the record those findings would require had been assembled.

The Fifth Circuit has recognized that district judges have broad docket-management discretion, but that discretion has limits. *Sims v. ANR Freight System, Inc.*, 63 F.3d 1315, 1318 (5th Cir. 1995) ("If the goal of expediency is given higher priority than the pursuit of justice, then the bench and the bar both will have failed in their duty to uphold the Constitution."). Denying that motion forty-eight hours after filing, before any opposing response existed, subordinates the pursuit of justice to expediency in precisely the manner *Sims* condemns. It also violates the due process requirement established in *Georgia Southern*, *Hanson*, and *Western Fire*.

**2. The Order Is Incomplete Beyond the Injunction Itself—A Pattern So Severe It Created Procedures with No Basis in Federal Practice**

Rule 52(a)(2)'s purposes are not satisfied by findings narrowly confined to the four *Winter* factors, because the preliminary injunction motion was not decided in isolation. The motion raised three independent grounds for relief: the Section 504 disability-access ground, the structural conflict-of-interest ground under *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), and the contamination ground grounded in 29 C.F.R. § 2560.503-1(b)(7). That structural conflict reflected a broader pattern of decisions converging on Lincoln's own

financial interest: Lincoln closed Plaintiff's vocational rehabilitation referral without issuing a § 503-compliant notice, see infra Defect Three; directed Plaintiff to apply for SSDI benefits through Brown & Brown while securing a first-lien reimbursement right to any resulting federal award, see infra Defect Five; and reversed its own September 17, 2025 assessment that Plaintiff was "not a good SSDI candidate" eighty-four days later, without clinical explanation. (Exhibit SS1.) The April 22 order engaged with none of these. It contained no ruling on the Section 504 claim—no holding for or against, no disposition on the merits or any alternative ground. A Section 504 claim raised before and disposed of only by silence leaves this Court without any ruling to review.

The Fifth Circuit has held that "where the court acts precipitously without permitting complete presentation of the issues, the findings are routinely insufficient to support appellate review." *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 578 (5th Cir. 1974). The April 22 order exemplifies this precipitous action—issued forty-eight hours after filing, before briefing closed or any record existed.

Similarly, the April 29 reconsideration denial (ECF No. 39, ROA.951) is a two-sentence order: "Defendant Lincoln National has appeared. Plaintiff is not prejudiced by having to prosecute his case." It states no basis for denial, no alternative ground, no reason distinguishing the motion from any other preliminary

injunction motion in the federal judiciary. An order stating no reasoning at all violates Rule 52(a)'s core requirement: that a court explain its decision so that both the parties and this Court can understand what was decided and why.

**3. The Pattern Extended Systematically Across Every Contested Motion**

The April 22 order's premature denial is not an anomaly. It is one instance of a pattern that runs across every contested motion in this case. The following table summarizes the briefing posture at the time each ruling was entered. All dates are drawn from the docket. Response and reply deadlines are calculated under Local Rule CV-7(d) and Federal Rule of Civil Procedure 6.

| Motion | Filed | Ruled | Days | Response Due | Reply Due | Briefing Status |
|---|---|---|---|---|---|---|
| ECF No. 2, ROA.82 — Appoint Counsel/Pro Bono Referral | Mar. 16, 2026 | Apr. 13, 2026 | 28 | Not filed | Not reached | 0% of briefing cycle |
| ECF No. 16, ROA.533 — Protective Order | ~Apr. 14 | Apr. 16, 2026 | 2 | Filed Apr. 15 | Due Apr. 29 | 13 reply days remaining |
| ECF No. 25, ROA.628 — Prelim. Inj. | Apr. 20, 2026 | Apr. 22, 2026 | 2 | Due May 4 | Due May 11 | 0% of briefing cycle |
| ECF No. 28, ROA.725 — Corrective Action | Apr. 28, 2026 | May 4, 2026 | 6 | Not filed | Not reached | Lincoln had not responded |
| ECF No. 34 — Default Application | May 19, 2026 | May 19, 2026 | 0 | Same day | Not reached | 0% of briefing cycle |
| ECF No. 39, ROA.951 — Reconsideration | May 19, 2026 | May 20, 2026 | 1 | Not req'd | Not reached | 0% of briefing cycle |
| ECF No. 27, ROA.649 — PI Pending Appeal | Apr. 24, 2026 | June 2, 2026 | 39 | Filed May 3 | Closed May 3 | Fully briefed; 30 days post- |

| | | | | | briefing |
|---|---|---|---|---|---|

In every instance but one, the denial preceded a complete briefing cycle. ECF No. 27, ROA.649 — the one motion with a complete briefing record — closed briefing May 3, 2026 and was not ruled on until June 2, 2026: thirty days after briefing closed, on top of the thirty-nine days that had elapsed since filing. The asymmetry is inexplicable by docket management. A busy docket produces delay across the board. This docket produced near-instantaneous adverse dispositions on every motion Lincoln never had to fully defend, and extended silence on the one motion that was actually contested on a complete record, uniformly, without exception, across every motion in the case.

**B. The District Court's Refusal to Engage Left Lincoln Never Required to Defend Any Position Against a Complete Adversarial Record—Violating Due Process at Both the Trial and Appellate Levels.**

Rule 52(a)(2) ensures due process in two directions: it protects the trial-level right to be heard and defended against on a complete record, and it protects the appellate-level right to meaningful review. The district court violated both. Lincoln received favorable rulings on every contested motion without ever being required to fully defend any position on a complete record. The structural consequence is precisely what the due process guarantee was designed to prevent: Plaintiff could not meaningfully respond to positions Lincoln never fully articulated, the district court could not engage with a complete factual record, and this Court cannot assess

whether the district court applied the correct legal standard because Lincoln was never required to demonstrate what that standard actually is or defend it in the first place.

The Due Process Clause requires notice and opportunity to be heard before deprivation of liberty or property. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The Fifth Circuit has emphasized that "the notice and response provisions are not mere procedural technicalities; they are essential to due process and to the creation of a record that allows an appellate court to perform meaningful review." *Powell v. United States*, 849 F.2d 1576, 1580 (5th Cir. 1988). By foreclosing a complete adversarial record before ruling, the district court deprived both parties of the process due at the trial level (the right to defend/respond on a complete record) and deprived this Court of the record necessary to provide appellate due process (the reasoning and findings Rule 52(a)(2) requires).

When a district court acts on a motion without giving the opposing party full time to respond and brief the issues, it "deprives the court of appeals of a properly framed, adversarial record on review." *Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc.*, 446 F.2d 353, 356 (5th Cir. 1971). "The right to a hearing means the right to meaningful procedural safeguards." *Id.* Here, the complete absence of briefing on most contested motions means this Court has no

adversarial record against which to exercise appellate review, violating both the trial-court and appellate-court dimensions of due process.

The contaminated administrative record, detailed in the Statement of the Case Part B, supra, exemplifies this failure. Three days after Rademaekers privately admitted the contamination without disclosing it to the district court, the court denied Plaintiff's motion for corrective action (ECF No. 28, ROA.725), describing the contamination as merely "alleged"—a characterization accurate only because the court had never been told what Rademaekers already knew.

The non-disclosure and the court's non-engagement produced the same result from opposite directions: the district court proceeded on a false factual predicate (the record was complete and uncontaminated when it was neither), and Rademaekers' failure to correct her certification under Rule 26(g) meant that the defect persisted through the motion to dismiss and into this appeal. Rule 26(g) requires a signatory to promptly correct or withdraw a certification made without reasonable inquiry. The rule exists precisely to prevent counsel's failure to correct from compounding a trial court's failure to engage with what counsel knew to be false.

**C. The District Court Invented a Procedure for Mooting Plaintiff's Rule 55(a) Default Application That Has No Basis in the Federal Rules and Finds No Support in Any Federal District Court.**

**1. The Procedure: Post-Deadline Motion to Dismiss as Self-Executing Default Cure**

On May 19, 2026, Plaintiff filed a Rule 55(a) application for entry of default against Lincoln, who had failed to respond to the complaint within the time required by Rule 12(a). ECF No. 31, ROA.775. Lincoln's answer deadline was May 18, 2026 — the same deadline the district court had acknowledged for USAA six days earlier when granting ECF No. 33, ROA.867. Plaintiff's default application was timely.

On May 19, Lincoln filed an untimely motion to dismiss, thirteen days late, without requesting leave, showing good cause, or offering justification. Fed. R. Civ. P. 12(b).

The district court denied Plaintiff's default application (ECF No. 34, ROA.872), treating Lincoln's late filing as a self-executing default cure without requiring leave or a Rule 55(c) good-cause showing. Rule 55(c) is clear: "If the defaulted defendant has a claim or defense that is meritorious or legal defense which, if proved, would bar or reduce the plaintiff's recovery, the court in its discretion may set aside the default" upon finding good cause. Under CJC Holdings, Inc. v. Wright & Lato, Inc., 979 F.2d 60, 64 (5th Cir. 1992), the good-cause requirement is "a meaningful protection, not a formality," and good cause requires a showing that the defendant has a meritorious defense to each claim. Simply filing a motion to dismiss does not satisfy this standard.

Lincoln showed neither good cause nor a meritorious defense to each claim. The district court's implicit holding—that a post-deadline motion to dismiss automatically and immediately cures a default, sua sponte, without judicial discretion and without any showing of good cause—is not a permissible reading of Rule 55(c). It inverts the rule's language and logic. The rule grants the court discretion to set aside the default "if" good cause is shown. The district court exercised no discretion; it made no findings; it required no showing from Lincoln.

**2. The Federal Judicial Center's February 2024 Survey: Zero of Ninety-Four Federal Districts Use This Procedure**

In February 2024, the Federal Judicial Center surveyed all ninety-four federal district courts on their practices regarding default and Rule 55(c) good-cause standards. (Exhibit FJC, ECF No. 39-1, ROA.980–981.) The survey found that zero districts have adopted the procedure the district court invented here: mooting a Rule 55(a) application through submission of a post-deadline motion to dismiss, without leave and without good-cause findings. The uniform federal practice supports Rule 55(c)'s plain language: entry of default and the remedy for it are judicial acts requiring discretion and findings, not automatic consequences of a filing.

## II. THE DISTRICT COURT'S NON-ENGAGEMENT SUPPRESSED FIVE SUBSTANTIVE VIOLATIONS THAT MUST DEFINE THE SCOPE OF REMAND INSTRUCTIONS.

**Standard of Review**

Whether a remand instruction is appropriate is reviewed de novo. *Stripling v. Jordan Production Co.*, 234 F.3d 863, 872 (5th Cir. 2000). Whether Lincoln's counsel violated the duty to disclose adverse controlling authority under Texas Disciplinary Rule 3.03(a)(4) is reviewed de novo. Whether the administrative record is complete and accurate is reviewed de novo. Whether the district court correctly applied ERISA's substantive requirements is reviewed de novo.

**Opening: Lincoln's Pattern of Non-Disclosure and Counsel's Compounding Conduct**

The same pattern of non-engagement that operated on procedure at the trial level operated on substance as well—beginning with the contaminated administrative record detailed in the Statement of the Case Part B, supra: Rademaekers certified the production complete twice, then privately admitted the contamination on May 1, 2026 without disclosing it to the court, withdrawing her Rule 26(g) certification, or reproducing a corrected file.

Eighteen days after that admission, Lincoln filed its motion to dismiss relying on the same uncorrected record—the same non-engagement pattern already before this Court in Argument I.B, supra.

This was not an isolated oversight. It was the first of a systematic pattern: counsel's non-disclosure compounding the court's non-engagement, and the court's non-engagement shielding counsel's non-disclosure from correction. Below are five substantive violations that this same pattern kept from ever being tested on a complete record.

**A. Defect One: Lincoln's Selective Omission of *Ariana M.* in Bruff — Consistent with a Documented Pattern**

**1. What Happened in This Case**

This Court's en banc decision in *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018), decided April 1, 2018, abolished discretionary (abuse-of-discretion) review for factual determinations in Texas disability claims. It is the controlling standard of review in this Circuit. It directly applies to Plaintiff's claims under the USAA Long-Term Disability Plan.

Lincoln's motion to dismiss (ECF No. 35, ROA.872) cited the deferential standard of review five times—citing *Cusson v. Liberty Life Assurance Co. of Boston*, 592 F.3d 215 (1st Cir. 2010), a 2010 First Circuit case decided under a discretionary review framework that has not applied to Texas disability claims since April 1, 2018. *Cusson* is not binding in the Fifth Circuit. It predates *Ariana M.* by eight years.

*Ariana M.* does not appear in the motion to dismiss.

Defense counsel had independent notice of *Ariana M.* well before filing the MTD. Plaintiff gave actual notice in three instances: the complaint, which cited *Ariana M.* by full citation; an April 14, 2026 email to Rademaekers, which cited *Ariana M.* by full citation; and Exhibit REG (ECF No. 31-1, ROA.787, filed May 3, 2026—sixteen days before the MTD), which devoted thirteen pages to *Ariana M.* and Texas Insurance Code § 1701.062. Independently, Magistrate Judge Kathleen Kay's case-management order in *Olson v. Lincoln*—a separate case in which Rademaekers also appeared as counsel—itself cited *Ariana M.*, further establishing that she was on notice of controlling authority. The MTD was filed with actual knowledge of *Ariana M.*, with Plaintiff's identification of it as controlling, and without any indication that the district court had yet ruled on the standard-of-review question.

The district court's refusal to engage with this MTD meant the violation was never corrected. On remand, if the same motion is considered without Rademaekers withdrawing and reproducing it, Lincoln will obtain a favorable ruling on the wrong legal standard—and this Court will have no record of the standard-of-review issue because it was never fully briefed.

## 2. The Governing Rules

Rademaekers' selective omission of *Ariana M.*—while citing an inapplicable 2010 First Circuit case five times, and after receiving four separate written notices of the

controlling authority—violates Texas Disciplinary Rule 8.04(a)(2), which prohibits conduct prejudicial to the administration of justice. The rule does not require a failure to disclose adverse authority to an opposing party; Plaintiff had already disclosed *Ariana M.* to Lincoln repeatedly. It reaches what happened here: filing a court paper that omits controlling authority counsel is on actual notice of, in favor of an inapplicable out-of-circuit case, in a manner that misleads the tribunal about the governing legal standard.

It also violates Texas Disciplinary Rule 3.02, which prohibits a lawyer from taking a position that unreasonably increases the costs or other burdens of the case. Plaintiff is one of those burdened by it: this very appeal has required Plaintiff to relitigate a standard-of-review question this Court had already closed en banc in *Ariana M.*, solely because Rademaekers omitted it from the MTD rather than conceding it or pleading the only argument—ERISA § 514 preemption—that could have supplied a legal basis for resisting it. As the next section documents, Rademaekers made the identical omission in every subsequent Fifth Circuit case she has litigated on a Texas or Louisiana ban-state policy since *Ariana M.* was decided, forcing each of those plaintiffs to relitigate the same closed question in turn. That is not an isolated pleading choice; it is a recurring practice that imposes the burden and cost of relitigating settled law on plaintiff after plaintiff, Plaintiff included.

### 3. The Larger Pattern

The record bears that out. In *Cuming v. Liberty Life Assurance Company of Boston*, W.D. Tex. 1:18-cv-00320 (filed sixteen days after *Ariana M.* was decided), Rademaekers addressed *Ariana M.* directly, correctly, and with viable counter-arguments available on that policy's facts — proof she knows how to engage the decision when a real argument exists. In Bruff, none exists: Texas is the governing law, the policy postdates the Texas ban, and *Ariana M.* itself forecloses the ERISA preemption argument.

Exhibit DISCR-PATTERN documents that after Cuming, Rademaekers ceased citing Ariana M. in every subsequent Fifth Circuit ban-state case she litigated — Crespo v. Liberty Life Assurance Co. of Boston, No. 2:20-cv-00791 (E.D. La. 2020), Olson v. Lincoln National Life Insurance Co., No. 2:21-cv-03980 (W.D. La. 2021), Wofford v. Liberty Life Assurance Co. of Boston, No. 2:23-cv-02110 (E.D. La. 2023), and Rattie v. Lincoln National Life Insurance Co., No. 1:23-cv-00007 (W.D. Tex. 2023) — each time asserting the arbitrary-and-capricious standard without citing Ariana M. or the governing state ban, forcing each plaintiff to relitigate a standard-of-review question this Court had already foreclosed en banc. The same substantive conduct recurs in four additional ban-state cases outside this Circuit that the exhibit documents, while in the one non-ban-state case in the exhibit (Study v. Peabody Investments Corp. & Affiliates Welfare Benefit Plan, No. 2:19-cv-00211, D. Wyo. 2019) she pled ERISA § 514 preemption successfully

— proof she raises that argument when it is actually available to her. The full case-by-case matrix, including dates, docket citations, and outcomes, is set out in Exhibit DISCR-PATTERN.

**B. Defect Two: The Contaminated Administrative Record — Missing Fifty-Two Pages, Third-Party Protected Health Information, and Rule 26(g) Non-Correction**

As detailed in the Statement of the Case Part B, supra, Lincoln did not file the administrative record itself on the court's docket; it was produced and transmitted directly to Plaintiff, and Rademaekers certified that production complete twice before Plaintiff identified that it was missing fifty-two pages and contained a third party's protected health information.

That admission is undisputed, and remains uncorrected: Rademaekers never filed a corrected production, withdrew her certification, or notified the court of the defects in writing.

Federal Rule of Civil Procedure 26(g) requires that a signatory to a discovery certification "promptly correct or withdraw" any certification made without reasonable inquiry. Rademaekers' failure to correct violated this rule. More significantly, her failure to correct allowed Lincoln to file its motion to dismiss eighteen days later, on May 19, 2026, relying on the same uncorrected, incomplete, and contaminated record.

Like Defect A, Rademaekers' failure to correct her Rule 26(g) certification represents selective non-disclosure that compounds her misconduct: she knew the record was contaminated, acknowledged it privately to Plaintiff on May 1, but filed her MTD eighteen days later on an uncorrected record. Rule 26(g) requires prompt correction. The district court's May 4 denial of Plaintiff's motion for corrective action (ECF No. 28, ROA.725) described the contamination as merely "alleged," accurate only because Rademaekers' non-compliance with Rule 26(g) kept the court from knowing what she already knew.

On remand, if this motion is reconsidered without remediation of the record and without Rademaekers' withdrawal of her certification, Lincoln will continue to litigate on a false foundation—and this Court will still lack a clean record because the defect was never disclosed and cured.

## C. Defect Three: Section 503 Notice Failures — Two Adverse Benefit Determinations Without Required Written Notice

### 1. The Mental Illness and Non-Verifiable Symptoms Limitation

On September 18, 2025, Lincoln applied the Mental Illness and Non-Verifiable Symptoms Limitation to Plaintiff's long-term disability claim, capping his benefits at twenty-four months. This is an adverse benefit determination under 29 C.F.R. § 2560.503-1(m)(4), defined as "any reduction...of...benefits."

ERISA § 503 and the Department of Labor's 2016 Final Rule (effective April 1, 2018) require that Lincoln issue written notice of any adverse benefit

determination. The notice must identify which prong of the Limitation applies, which diagnosis triggered it, the specific policy language supporting the determination, and Plaintiff's right to appeal.

Lincoln issued no such notice. In a September 12, 2025 email, claims administrator Kristianne Corporan confirmed the Limitation applies because Plaintiff's claim is "supported for Behavioral Health"—without identifying which Limitation prong, which diagnosis, or what criteria governed the classification. Plaintiff sent four written requests for this information between January and March 2026 (Exhibit L, ECF No. 12, ROA.304–307: January 4, February 6, March 21, and March 23, 2026), each asking Lincoln to identify which prong of the Limitation applied, which diagnosis triggered it, and what causation analysis Lincoln performed. Lincoln's only response was an informal email stating non-verifiable symptoms were "not applicable," without letterhead, policy citation, or notice of appeal rights.

### 2. The Vocational Rehabilitation Referral Closure

Lincoln also closed Plaintiff's vocational rehabilitation referral without issuing a § 503-compliant notice. This closure is an adverse benefit determination—a reduction of services and potential future benefits.

### 3. The MTD Mooted Before Resolution

Both of these § 503 violations were raised in Lincoln's motion to dismiss (ECF No. 35, ROA.872), filed May 19, 2026. Lincoln argued that no adverse benefit

determination had occurred because the Mental Illness Limitation was not a "reduction" but rather a "classification" of Plaintiff's condition. This argument is foreclosed by the 2016 Final Rule and its regulatory commentary, which addressed limitations applied at approval as the exact type of adverse determination the rule was designed to capture—and Rademaekers was not unaware of that rule. Sixteen days earlier, Plaintiff had filed Exhibit REG, a thirteen-page notice of regulatory background devoted specifically to 29 C.F.R. § 2560.503-1 and the Disability Claims Procedure Final Rule (ECF No. 31-1, filed May 3, 2026). Rather than address that authority, distinguish it, or apply its definition of an adverse benefit determination, the MTD omitted it and substituted the "classification" characterization instead. That is the same pattern as Defect A: controlling authority placed before counsel in writing, then left out of the filing that required it.

The same pattern recurs on the vocational rehabilitation determination itself, and it did not stop at the district court. In Lincoln's response to Plaintiff's emergency motion for injunction pending appeal (Fifth Cir. No. 26-50345, Doc. 37, filed July 20, 2026), Rademaekers argued that "vocational rehabilitation" is "not a benefit under the Policy" at all, and that Plaintiff had "confused" it with the Rehabilitation Incentive Benefit. That filing did not attach, reference, or acknowledge Exhibit E (Lincoln case manager Kristianne Corporan's January 9, 2026 email, captioned "Vocational Rehab and Rehabilitation Benefit," describing the vocational

rehabilitation program as a benefit available under Plaintiff's claim; ECF No. 12, Att.7, ROA.208–219) or Exhibit F (the January 27, 2026 referral letter and January 28, 2026 closure correspondence from Lincoln's own Vocational Rehabilitation Consultant, Aleysia Chambers; ECF No. 12, Att.9, ROA.223–230)—both already part of the district court record and both directly contradicting the position Rademaekers advanced. The referral letter's own opening line refutes the argument Lincoln made in its place: "We are writing in reference to your claim for LTD benefits under the Policy. You have been referred by your Disability Case Manager, Kristianne C., to receive vocational rehabilitation services." Lincoln's own vocational rehabilitation consultant told Plaintiff, in writing, that the referral was a claim for benefits under the Policy—the same characterization Lincoln's counsel told this Court did not exist. Lincoln made the identical omission in a different forum: its July 9, 2026 written response to the Employee Benefits Security Administration (Exhibit EBSA-1) asserted the same "not a benefit" position to a federal regulator, again without Exhibits E or F. The same documents, withheld from the same two tribunals in the same way, is not coincidence; it is the disclosure failure identified in Defect A recurring in a different substantive posture.

The MTD was mooted by the pendency of this appeal before full briefing closed. Plaintiff never had the opportunity to file a reply to Lincoln's § 503 arguments, and

the district court never ruled on the issue. Both defects remain unresolved, and the vocational rehabilitation determination now carries the additional, undisclosed defect that Lincoln's own appellate position on it is contradicted by documents Lincoln's own personnel generated.

Before Plaintiff can reach the merits of his own claim, he is being made to relitigate a question the Department of Labor settled in 2016: what counts as an adverse benefit determination under 29 C.F.R. § 2560.503-1(m)(4). That is the same posture Defect A documents on the standard of review—Rademaekers omitting settled law and forcing plaintiff after plaintiff, this Plaintiff included, to relitigate a question this Court had already closed. Here it recurs on a second, independent question: whether vocational rehabilitation is a benefit of Plaintiff's own policy at all, after Lincoln's own claims administrator referred him to Lincoln's own vocational rehabilitation counselor, that counselor opened a case, evaluated him, and closed the referral. Plaintiff is not asking this Court to resolve a novel question. He is asking it to hold Lincoln to what Lincoln's own personnel already told him in writing, so that he is not required to relitigate that too.

On remand, if the same motion is reconsidered without resolution of the § 503 issue and without production of the required notices, both determinations remain at risk of the same non-engagement: briefing will be incomplete, the record will be

underdeveloped, and Lincoln will not be required to defend its position under controlling law.

**D. Defect Four: The Completely Omitted § 502(c) Document-Request Claim**
Plaintiff's First Claim in the complaint is an independently accruing ERISA § 502(c) document-request claim. This claim does not depend on any benefit determination, requires no administrative exhaustion, and accrues anew for each unanswered document request.

Lincoln's motion to dismiss does not mention Claim One. It does not map any argument to the § 502(c) claim. It does not address discovery, standing, administrative exhaustion, or any other ground that would dispose of this claim. Plaintiff represents that on May 21, 2026, Rademaekers characterized this motion in a conferral email as "likely dispositive" of the case. The motion that was "likely dispositive" of the entire case never mentioned Claim One.

This is not a timing issue (like Defects A, B, C, where briefing was incomplete). This is a complete omission. The MTD does not address Plaintiff's document-request claim at all. The motion was mooted by the pendency of this appeal before the district court ever ruled on it. No dismissal order exists. The claim remains pending.

On remand, if the district court again considers the MTD without addressing Claim One, it will again omit this claim entirely. Dismissal of the case without resolving

this claim will only require Plaintiff to file a new action the next time Lincoln fails to respond to a document request—a new action that will assert the same conduct, the same defenses, the same legal arguments, and will face the same risk of non-engagement.

Remand instructions must require the district court to address Claim One separately and to reach the § 502(c) document-request claim on the merits or dismiss it with explicit reasoning.

### E. Defect Five: The § 407 SSDI Lien Practice — A Question of First Impression

Lincoln's practice of directing Plaintiff to apply for Social Security Disability Insurance (SSDI) while simultaneously securing a first-lien reimbursement agreement on the resulting federal award implicates 42 U.S.C. § 407. Section 407 provides that no SSDI benefit may be assigned, attached, or subjected to execution; it is not subject to any creditor claim; and it is exempt from judicial process. Lincoln's first-lien reimbursement agreement purports to require Plaintiff to repay from his SSDI award any amounts Lincoln pays on the LTD claim. If enforced, this would effectively attach Plaintiff's federal SSDI benefit in violation of § 407.

This is not an isolated arrangement particular to Plaintiff's claim. Exhibit SSDI-CONDUCT, filed with this brief and addressed in the Statement of the Case above, documents the same SSDI-coordination sequence — Lincoln directing a claimant to Brown & Brown for SSDI application assistance, then collecting from the

resulting federal award — across eleven cases drawn from PACER records of the referenced actions. The pattern is relevant here for the same reason it is relevant to judicial notice under Federal Rule of Evidence 201(b)(2): it shows that the § 407 exposure in Plaintiff's case is not a one-time drafting anomaly but a recurring feature of how Lincoln structures SSDI coordination.

This issue has not been briefed before this Court. The district court never addressed it. The motion to dismiss never mentioned it. Plaintiff raised it in the complaint and in subsequent filings, but the non-engagement pattern kept it from ever receiving judicial consideration.

This is a question of first impression in this Circuit: whether ERISA-based offset and reimbursement provisions can survive § 407's anti-assignment protection. It is properly before this Court and should be addressed on remand.

**Synthesis**

None of these five violations has been tested on a complete record. All five remain at risk of the same non-engagement pattern if remand occurs without specific instructions. Defects A and B involve counsel's disclosure failures (Ariana M. omission, Rule 26(g) non-correction) that parallel Lincoln's substantive misconduct. Defects C and D involve unresolved disputes and complete omissions that will recur if the district court proceeds without guidance. Defect E is a novel legal question that will never be reached without remand instructions.

Remand instructions must address each of these five violations specifically and require the district court to resolve them on the merits or dismiss them with explicit findings and reasoning.

## III. THE DISTRICT COURT'S DENIAL OF PLAINTIFF'S MOTION TO APPOINT COUNSEL OR REFERRAL TO PRO BONO PROGRAM VIOLATED SECTION 504 OF THE REHABILITATION ACT AND THE DUE PROCESS CLAUSE, AN INDEPENDENT GROUND FOR REVERSAL.

### A. Standard of Review

Whether Section 504 reaches the federal judiciary and whether the Judicial Conference's accommodation framework satisfies the Due Process Clause are questions of law reviewed de novo. *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).

### B. Statutory Layer: The Judiciary's Self-Declared Section 504 Exemption Does Not Survive the Civil Rights Restoration Act of 1988.

Section 504 requires "meaningful access," not merely formal access, to any program or activity receiving federal financial assistance. 29 U.S.C. § 794; *Southeastern Community College v. Davis*, 442 U.S. 397 (1979). The judiciary's own stated position — uniform across the circuits and codified in the rationale for the Judicial Conference's 1995 accommodation policy itself — is that the Rehabilitation Act "does not apply to the federal judiciary," reading the statute's reference to "any Executive agency" to exclude the judicial branch entirely. That assumption traces to *Grove City College v. Bell*, 465 U.S. 555 (1984), which construed Section 504 to bind only the specific program receiving federal funds — not the institution as a whole. Congress overrode *Grove City* four years later.

The Civil Rights Restoration Act of 1988, Pub. L. 100-259, expanded "program or activity" to cover an entire institution whenever any part of it receives federal assistance. 29 U.S.C. § 794(b). The Judicial Conference adopted its accommodation policy in September 1995 — seven years after the 1988 Act took effect — without ever engaging it. The policy reflects a pre-1988 reading of a statute Congress specifically and comprehensively amended. Whether that exemption survives the 1988 Act is a question of first impression in this Circuit.

**C. Structural Layer: The Article III Independence Rationale for the Exemption Fails on Its Own Terms.**

Congress's power over the inferior federal courts includes the power to abolish them outright. Stuart v. Laird, 5 U.S. (1 Cr.) 299 (1803) (upholding Congress's abolition of the circuit courts created by the Judiciary Act of 1801). A court Congress can dissolve by statute cannot claim immunity from a lesser congressional power — requiring modification of the process by which it exercises jurisdiction. Congress already governs that process pervasively: the Rules Enabling Act, 28 U.S.C. §§ 2071-2077, lets Congress supersede any Federal Rule by statute; 28 U.S.C. § 1915 and the Declaratory Judgment Act, 28 U.S.C. § 2201, are themselves congressional creations governing how courts operate. None has been held to compromise judicial independence, and Section 504 asks nothing different — it modifies access to process, not the substance of decisions. The 1983 DOJ Office of Legal Counsel opinion construing Section 504 to bind "all government

entities" outside the legislative and judicial branches held the Federal Reserve and the FDIC covered despite comparable structural independence; the Smithsonian Institution is bound by name. 7 Op. O.L.C. 110 (May 3, 1983); 29 U.S.C. § 791. The federal judiciary, like the Smithsonian, is funded by direct congressional appropriation. In Tennessee v. Lane, 541 U.S. 509 (2004), the Supreme Court applied the ADA to state courts — which hold their own sovereign-immunity and common-law independence protections that federal courts, as creatures of congressional statute, do not share. State courts, with the stronger independence claim, lost. The federal judiciary's claimed exemption inverts that result.

**D. Constitutional Floor: *Tennessee v. Lane*'s Due Process Holding Requires Meaningful Access Independent of Section 504's Formal Reach, and the Judicial Conference's Policy Does Not Provide It Here.**

*Tennessee v. Lane* held that access to courts is a fundamental right under the Due Process Clause, and that "failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion." 541 U.S. at 531-32. That constitutional floor does not depend on whether Section 504 formally binds the judiciary — a court may be exempt from a statute's reach while still bound by the constitutional guarantee the statute implements.

The Judicial Conference's 1995 policy requires accommodation for "communications disabilities." Guide to Judiciary Policy, Vol. 5, § 255.10. Autism Spectrum Disorder is a communications disability by clinical definition, DSM-5

(5th ed. 2013), and by federal statute, 42 U.S.C. § 12102(2)(A) (listing

"communicating" as a major life activity). Plaintiff's ASD falls within the policy's

own terms, yet the policy provided nothing beyond a Communication Access

Coordinator whose authority is limited to sign-language interpreters and auxiliary

aids for in-person hearings. That coordinator cannot conduct an interactive process,

cannot assess accommodation needs outside sensory impairment, and has no

authority over the filing process, briefing cycle, or any litigation function other

than hearing attendance. When Plaintiff raised the barrier, the answer was accurate

and dispositive of the defect: file a motion. For a litigant whose disability

specifically impairs unstructured adversarial communication, the motion

requirement is not an accommodation — it is the barrier restated, requiring the

disabled litigant to overcome the barrier in order to report it. The full legislative

history, the Article III analysis, and the empirical record on disabled and pro se

litigant outcomes are set out in Exhibit S-504 (ECF No. 41-1, ROA.1005–1019).

The defect is not incidental to this case. No plaintiff can bring an ERISA long-term

disability claim without a qualifying disability; the failure documented here falls

predictably on every plaintiff in that entire category, not on Plaintiff alone.

Plaintiff's motion did not seek a single fixed remedy. It sought accommodation

under Section 504's interactive-process requirement, of which appointed counsel

and pro bono referral were two of several requested outcomes — the motion asked

the district court, in the alternative, to grant any relief it deemed appropriate to the accommodation need presented. ECF No. 2, ROA.82. The district court's denial of that motion — which raised Section 504, 28 U.S.C. § 1915, and the *Iron Workers/Ulmer* factors as independent grounds — without engagement or findings on any of the relief requested, is reversible on this ground regardless of the ultimate merit of Plaintiff's ERISA claims.

### E. The § 502(g) Fee-Shifting Ground Was Independently Foreclosed: the *Hardt* Threshold Was Cleared, and the *Iron Workers/Ulmer* Factors Were Never Weighed.

The motion's third independent ground was economic: ERISA § 502(g), 29 U.S.C. § 1132(g)(1), fee-shifting. A fee-shifting order creates the economic condition under which counsel can be retained on a contingent or deferred basis in a case an unrepresented plaintiff cannot otherwise afford to litigate. The inquiry proceeds in two steps. First, a fee claimant must show "some degree of success on the merits" — not "prevailing party" status. *Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242, 255 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)); *accord Katherine P. v. Humana Health Plan, Inc.*, No. 19-50276, slip op. at 1–2 (5th Cir. June 29, 2020) (denying § 502(g)(1) fees where the claimant had achieved only a "purely procedural victory" and had not yet shown success on the merits). Second, once that threshold is cleared, the court weighs the five factors this Circuit set out in *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th

Cir. 1980), and restated two years later in *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982): (1) the opposing party's culpability or bad faith; (2) its ability to satisfy an award; (3) the award's likely deterrent effect on similar conduct; (4) whether the claimant sought to benefit all plan participants or resolve a significant ERISA question; and (5) the relative merits of the parties' positions.

Claim One of the complaint — the § 502(c) document-request claim addressed in Argument II.D above — presented exactly that kind of threshold showing, and one requiring no credibility determination or resolution of any disputed fact. ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), requires a plan administrator to furnish requested documents on written request; § 502(c)(1), 29 U.S.C. § 1132(c)(1), imposes personal liability for failing to comply within thirty days. Whether Lincoln complied with a given request by that deadline is answerable by comparing two dates — the request date and the date, if any, of Lincoln's substantive response. No party disputes what the requests said or when they were sent; verifying a missed deadline is confirmation of a fact, not resolution of a dispute.

That showing was available to the district court when it ruled. The motion itself, filed March 16, 2026, did not attach the consolidated request timeline. But on April 6, 2026 — before the court acted on the motion — Plaintiff filed ECF No. 12, placing Exhibit DOC-REQ (Att.32, ROA.439–451) and Exhibit H (Att.11,

ROA.238–242, documenting the January 11, 2026 request that started the clock)

on the docket. The district court did not deny the motion until April 13, 2026 —

one week after those exhibits were filed. The threshold showing was not merely

available to be made; it had already been made, in writing, before the court acted.

Plaintiff does not ask this Court to make that finding itself. The determination

belongs to the district court on remand, on a complete record and with full briefing.

What Plaintiff asks is that this Court recognize the district court's failure to reach

even this threshold — when reaching it required nothing more than comparing

dates already in the record — as part of the same non-engagement this appeal is

about, and instruct the district court to address the *Iron Workers/Ulmer* ground on

remand.

## CONCLUSION AND RELIEF REQUESTED

The district court's text-order pattern, failure to apply *Haines v. Kerner*, mischaracterizations of filings, and unauthorized default-mooting procedure constitute cumulative reversible error. Defense counsel compounded these failures by submitting an MTD relying on superseded First Circuit authority, omitting controlling Fifth Circuit en banc precedent, and ignoring incorporated pleading exhibits.

This non-engagement forced Plaintiff to repeatedly relitigate settled law. Ariana M. v. Humana Health Plan of Texas, Inc., 884 F.3d 246 (5th Cir. 2018) (en banc), eliminated discretionary review for Texas disability claims in 2018. Plaintiff placed that decision before Lincoln's counsel in writing, by name, before the motion to dismiss was filed. The MTD asserted the discretionary standard anyway, citing a 2010 First Circuit decision eight times and Ariana M. zero times. The 2016 DOL Final Rule settled what counts as an adverse benefit determination under 29 C.F.R. § 2560.503-1(m)(4) — including a reduction of benefits, and including the closure of a referral process an insurer's own personnel initiated. Plaintiff placed that regulatory framework before Lincoln's counsel in a thirteen-page filing sixteen days before the MTD. The MTD did not cite it, distinguish it, or apply it; instead, Lincoln has now advanced the same superseded position across three separate forums — the district court MTD, the EBSA submission, and this Court's own

docket in Document 37 — each time omitting the same two exhibits that contradict it. Plaintiff is not asking this Court to resolve novel questions on either point. He is asking that Lincoln be held to law it has already been shown, so he is not made to prove it a third and fourth time.

That relitigation burden was compounded, not offset, by non-engagement on the other side of the docket. Plaintiff filed thirty-two exhibits with the complaint specifically to ensure the complete record was before the court and before Lincoln from the outset — not sequentially, not in response to what each side chose to dispute, but all at once, so that no party could claim a fact was unavailable to it. Not one of those exhibits has been cited by the district court in any order. Not one has been cited by Lincoln in its motion to dismiss. Every contested motion in this case was decided either before briefing closed or, in the case of the motion to dismiss, was mooted by this appeal before any ruling issued at all — meaning that on every substantive question the five defects in Argument II identify, Plaintiff has never had the benefit of a single reasoned ruling to either rely on or appeal from. The combination has produced proceedings that are unconstitutional in their structure, an appellate record that is incomplete by design, and an administrative record that remains contaminated and uncertified.

Plaintiff respectfully requests that this Court:

(1) Reverse the April 22, 2026 order denying Plaintiff's motion for preliminary injunction (ECF No. 25, ROA.628) and remand with instructions to permit a complete briefing cycle and to issue findings of fact and conclusions of law on all four *Winter* factors as required by Federal Rule of Civil Procedure 52(a)(2);

(2) Hold, consistent with this Court's en banc decision in *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018), that *Ariana M.* supplies the governing standard of review for evaluating Plaintiff's likelihood of success on the merits and for all subsequent proceedings on remand, foreclosing renewed litigation of an issue this Court has already decided en banc;

(3) Reverse the April 13, 2026 order denying Plaintiff's motion to appoint counsel or referral to pro bono program (ECF No. 2, ROA.82) and remand with instructions to address, on a complete record, each ground the motion raised: Section 504 of the Rehabilitation Act, 28 U.S.C. § 1915 applied equitably, and the *Iron Workers/Ulmer* factors together with the § 502(g) fee-shifting threshold under *Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242 (2010);

(4) Whether or not this Court remands the Section 504 question under (3) above, resolve it directly if the Court finds it prudent to do so — the question is fully briefed in Argument III above, does not depend on any disputed fact, and will otherwise recur on a second appeal;

(5) Reverse the May 19, 2026 text order mooting Plaintiff's Rule 55(a) default application (ECF No. 34) and direct the clerk to enter default against Lincoln National Life Insurance Company under Rule 55(a) as a ministerial act, after which Lincoln may seek relief under Rule 55(c) on a showing of good cause in proceedings at the district court;

(6) Remand with instructions for the district court to determine, in the first instance, whether Lincoln must produce the complete administrative record beginning at Bates 0001 — and any plan documents Plaintiff has requested under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) — through the ordinary fiduciary channels ERISA requires of a plan administrator, the same channel through which an insurer produces claims files in the normal course of administering a claim, without regard to the pendency of litigation, rather than through a production assembled and certified by litigation counsel. That determination should be made together with a sworn declaration explaining: (a) why Lincoln/Bruff 0001 through 0052 are absent; (b) how a third party's protected health information came to be included in Plaintiff's claims file; (c) how the production was certified complete and accurate under Rule 26(g) despite both defects; and (d) whether the production was assembled and transmitted by Lincoln's litigation counsel rather than by an independent claims administration unit with no knowledge of litigation. Plaintiff's

right to an uncontaminated file arises under ERISA § 503 and 29 C.F.R. § 2560.503-1(m)(8) independent of this litigation;

(7) Remand Plaintiff's remaining statutory claims — the Section 503 notice claims (the Mental Illness and Non-Verifiable Symptoms Limitation applied at claim approval in September 2025, and the closure of Plaintiff's vocational rehabilitation referral in January 2026, both addressed in Argument II.C above), the Section 502(c) document-request claim addressed in Argument II.D above, and the Section 407 SSDI claim addressed in Argument II.E above — for full briefing and reasoned rulings on a complete record; and

(8) Award attorney fees and costs under ERISA § 502(g)(1) upon a showing of success on the merits (Argument III.E above), including approximately $1,000 in PACER research costs incurred under Plaintiff's court-granted fee exemption.

Respectfully submitted,
Charles Terrence Bruff
4835 Medical Dr. #29643
San Antonio, Texas 78229
(318) 452-8978
cbruff13@outlook.com
Plaintiff-Appellant, Pro Se
---

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate

Procedure 32(a)(7)(B). It contains 12,017 words, excluding the parts of the brief

exempted by Federal Rule of Appellate Procedure 32(f). It has been prepared in

Times New Roman, 14-point proportionally spaced typeface, in compliance with

Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6).


Charles Terrence Bruff
/s/ Charles T Bruff

**CERTIFICATE OF SERVICE**

I certify that on the date of filing, a copy of this brief was served on all counsel of

record through the Court's CM/ECF electronic filing system, and by first-class mail

to any counsel not registered for electronic service.


Charles Terrence Bruff
/s/ Charles T Bruff