No. 26-50345

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

CHARLES TERRENCE BRUFF,

Plaintiff-Appellant,

v.

LINCOLN NATIONAL LIFE INSURANCE COMPANY;

USAA EDUCATIONAL ASSISTANCE PLAN,

Defendants-Appellees.

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division
Case No. 5:26-CV-01720-XR
Honorable Xavier Rodriguez, District Judge

# RECORD EXCERPTS

Charles Terrence Bruff
4835 Medical Dr. #29643
San Antonio, Texas 78229
(318) 452-8978
cbruff13@outlook.com
Plaintiff-Appellant, Pro Se

# TABLE OF CONTENTS

| Document | ROA Cite |
|---|---|
| **MANDATORY CONTENTS (5th Cir. R. 30.1.4)** | |
| 1. District Court Docket Sheet | ROA.1-7 |
|   - incl. text order denying Motion to Appoint Counsel/Pro Bono Referral (ECF 2), Apr. 13, 2026 | ROA.4 |
|   - incl. text order denying Motion for Preliminary Injunction (ECF 25), Apr. 22, 2026 | ROA.5 |
|   - incl. text order denying Motion for Corrective Action (ECF 28), May 4, 2026 | ROA.5 |
|   - incl. text order mooting Rule 55(a) Application for Entry of Default (ECF 34), May 19, 2026 | ROA.6 |
|   - incl. text order denying Motion for Reconsideration (ECF 39), May 20, 2026 | ROA.7 |
| 2. Notice of Appeal (ECF 26), filed Apr. 23, 2026 | ROA.655-657 |
| 3. Supplemental Notice of Interlocutory Appeal (ECF 40), filed May 20, 2026 | ROA.983-989 |
| **OPTIONAL CONTENTS (5th Cir. R. 30.1.5) - relevant excerpts** | |
| 4. Exhibit E excerpt - Lincoln's Dec. 2025-Jan. 2026 correspondence on vocational rehabilitation as a benefit (ECF 12, Att.7) | ROA.217, 221 |
| 5. Exhibit F excerpt - Referral & closure correspondence, Voc. Rehab. Consultant A. Chambers (ECF 12, Att.9) | ROA.232, 234-236 |
| 6. Exhibit H excerpt - Jan. 11, 2026 written document request (ECF 12, Att.11) | ROA.247-248 |
| 7. Exhibit B excerpt - LTD Benefits Approval Letter, Sept. 12, 2025, showing Mental Illness/Substance Abuse/Non-Verifiable Symptoms Limitation applied with no individualized explanation (ECF 12, Att.4) | ROA.191 |
| 8. Exhibit L - Four written requests for Limitation definition, Jan.-Mar. 2026 (ECF 12, Att.16) | ROA.313-316 |
| 9. Exhibit DOC-REQ excerpt - Consolidated timeline of document requests (ECF 12, Att.32) | ROA.448-449, 458 |
| 10. Notice of Production Deficiency excerpt (ECF 28, Att.1) | ROA.739-740 |
| 11. Exhibit REG excerpt - Regulatory background re 29 C.F.R. Sec. 2560.503-1, cover and closing pages of 13 (ECF 31, Att.1) | ROA.796, 806 |
| 12. Exhibit FJC - FJC Feb. 2024 default-practices survey (ECF 39, Att.1) | ROA.981-982 |
| 13. Exhibit S-504 excerpt - Section 504/Article III legislative history and empirical record (ECF 41, Att.1) | ROA.1005-1019 |
| 14. Certificate of Service | |

*Note: Items 4-14 reproduce only the portions of each exhibit directly cited in the opening brief, per 5th Cir. R. 30.1.5(f). Full exhibits remain part of the district court record at the ROA citations shown.*

CLOSED,INTAPP,RBF

# U.S. District Court [LIVE]
# Western District of Texas (San Antonio)
# CIVIL DOCKET FOR CASE #: 5:26-cv-01720-XR

Bruff v. USAA Educational Assistance Plan et al
Assigned to: Judge Xavier Rodriguez
 Case in other court:  5CCA, 26-50345 (Doc. 26)
Cause: 29:1132 E.R.I.S.A.-Employee Benefits

Date Filed: 03/16/2026
Date Terminated: 06/02/2026
Jury Demand: None
Nature of Suit: 791 Labor: E.R.I.S.A.
Jurisdiction: Federal Question

**Plaintiff**

**Charles T Bruff**                                    represented by   **Charles T Bruff**
                                                                      Pro Se
                                                                      4835 Medical Dr #29643
                                                                      San Antonio, TX 78229
                                                                      318-452-8978
                                                                      Email: cbruff13@outlook.com
                                                                      PRO SE

V.

**Defendant**

**USAA Educational Assistance Plan**                   represented by   **Brian Addison Aslin**
                                                                      Texas
                                                                      91 Red River St.
                                                                      Suite 1150
                                                                      Austin, TX 78701
                                                                      512-362-7403
                                                                      Fax: 512-362-5574
                                                                      Email: Brian.Aslin@jacksonlewis.com
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Lincoln National Life Insurance
Company**                                              represented by   **Iwana Rademaekers**
                                                                      Law Offices of Iwana Rademaekers, P.C.
                                                                      17304 Preston Road, Suite 800
                                                                      Dallas, TX 75252
                                                                      214-579-9319
                                                                      Fax: 469-444-6456
                                                                      Email: iwana@rademaekerslaw.com
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**USAA Health and Welfare Benefits Plan**              represented by   **Brian Addison Aslin**
                                                                      (See above for address)

**26-50345.1**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Automobile Association**          represented by   **Brian Addison Aslin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/16/2026 | | THIS CASE HAS BEEN RANDOMLY ASSIGNED TO JUDGE XAVIER RODRIGUEZ. (tt) (Entered: 03/30/2026) |
| 03/16/2026 | | If ordered by the court, all referrals will be assigned to Magistrate Judge Farrer. (tt) (Entered: 03/30/2026) |
| 03/16/2026 | 1 (p.8) | COMPLAINT ( Filing fee $ 405 receipt number 10329), filed by Charles T. Bruff. (Attachments: # 1 (p.8) Civil Cover Sheet, # 2 (p.85) Receipt).(tt) (Entered: 03/30/2026) |
| 03/16/2026 | 2 (p.85) | MOTION to Appoint Counsel or Referral to Pro Bono Program by Charles T. Bruff. (tt) (Entered: 03/30/2026) |
| 03/16/2026 | 3 (p.94) | Pro Se MOTION for Permission to file Electronically by Charles T. Bruff. (tt) (Entered: 03/30/2026) |
| 03/16/2026 | 4 (p.97) | MOTION for Leave to File Exhibits Electronically by Charles T. Bruff. (tt) (Entered: 03/30/2026) |
| 03/16/2026 | 5 (p.99) | NOTICE of Use of Artificial Intelligence in Preparation of Pro Se Filings by Charles T. Bruff. (tt) (Entered: 03/30/2026) |
| 03/18/2026 | 8 (p.108) | Notice of Constitutional Challenge to Federal Statutes by Charles T. Bruff (mgr) (Entered: 04/02/2026) |
| 03/18/2026 | 9 (p.114) | Notice of Constitutional Challenge to Federal Statutes (possible duplicate) by Charles T. Bruff (mgr) (Entered: 04/02/2026) |
| 03/19/2026 | 7 (p.106) | NOTICE of Change of Address by Charles T. Bruff (mgr) (Entered: 04/02/2026) |
| 03/23/2026 | 10 (p.120) | Certificate of Service by Charles T. Bruff (mgr) (Main Document 10 replaced on 4/2/2026) (mgr). (Entered: 04/02/2026) |
| 03/23/2026 | 11 (p.126) | PLAINTIFF'S MOTION FOR PROTECTIVE ORDER GOVERNING CLAIMS FILE ACCESS AND SEPARATION OF LINCOLN FINANCIAL'S CLAIMS ADMINISTRATION AND LITIGATION FUNCTIONS by Charles T. Bruff. (mgr) (Entered: 04/02/2026) |
| 03/30/2026 | 6 (p.105) | Case Opening Letter to Charles T. Bruff. (tt) (Entered: 03/30/2026) |
| 03/31/2026 | | Text Order GRANTING 3 (p.94) Pro Se Motion for Permission to file Electronically entered by Judge Xavier Rodriguez. Plaintiff shall submit the E-Filing and E-Noticing Registration Form available on the Court's website. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TMlc) (Entered: 03/31/2026) |

| | | |
|---|---|---|
| 03/31/2026 | | Text Order GRANTING 4 (p.97) Motion to File Exhibits Electronically entered by Judge Xavier Rodriguez. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TMlc) (Entered: 03/31/2026) |
| 04/02/2026 | | Text Order DENYING 11 (p.126) Motion for Protective Order entered by Judge Xavier Rodriguez. Plaintiff's motion is premature. Defendants have not yet appeared. See Local Rule CV-7G (requiring that parties confer before filing a nondispositive motion). Plaintiff has leave to refile this motion after the parties have conferred. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TMlc) (Entered: 04/02/2026) |
| 04/06/2026 | 12 (p.136) | NOTICE of Filing Notice of Filling and Exhibits *1-32* by Charles T Bruff (Attachments: # 1 (p.8) Exhibit APIP1, # 2 (p.85) Exhibit APIP2, # 3 (p.94) Exhibit A, # 4 (p.97) Exhibit B, # 5 (p.99) Exhibit Brown1, # 6 (p.105) Exhibit C, # 7 (p.106) Exhibit E, # 8 (p.108) Exhibit EDU1, # 9 (p.114) Exhibit F, # 10 (p.120) Exhibit G, # 11 (p.126) Exhibit H, # 12 (p.136) Exhibit HCPLAN, # 13 (p.461) Exhibit I, # 14 (p.463) Exhibit J, # 15 (p.478) Exhibit K, # 16 (p.542) Exhibit L, # 17 (p.567) Exhibit LTDPOL, # 18 (p.582) Exhibit M, # 19 (p.593) Exhibit N, # 20 (p.599) Exhibit O, # 21 (p.601) Exhibit P, # 22 (p.603) Exhibit R, # 23 (p.606) Exhibit RETIRE, # 24 (p.624) Exhibit S, # 25 (p.637) Exhibit SS1, # 26 (p.655) Exhibit TDI, # 27 (p.658) Exhibit TIMELINE, # 28 (p.734) Exhibit USAA1, # 29 (p.746) Exhibit USAA2, # 30 (p.748) Exhibit APIP3, # 31 (p.784) Exhibit APIP4, # 32 (p.869) Exhibit DOC_REQ)(Bruff, Charles) (Entered: 04/06/2026) |
| 04/07/2026 | 13 (p.461) | NOTICE of Attorney Appearance by Iwana Rademaekers on behalf of Lincoln National Life Insurance Company. Attorney Iwana Rademaekers added to party Lincoln National Life Insurance Company(pty:dft) (Rademaekers, Iwana) (Entered: 04/07/2026) |
| 04/08/2026 | 14 (p.463) | Second MOTION for Confidentiality/Protective Order *refilled after appearance of counsel* by Charles T Bruff. (Attachments: # 1 (p.8) Proposed Order Order)(Bruff, Charles) (Entered: 04/08/2026) |
| 04/08/2026 | 15 (p.478) | NOTICE of Filing Notice of LTDREPORT *Exhibit 33* by Charles T Bruff (Attachments: # 1 (p.8) Exhibit LTDREPORT)(Bruff, Charles) (Entered: 04/08/2026) |
| 04/08/2026 | | Text Order DENYING 14 (p.463) Motion for Protective Order entered by Judge Xavier Rodriguez. Local Rule CV-7G requires that the parties confer before filing of a nondispositive motion. Plaintiff did not confer with Defendants prior to filing this motion. ECF No. 14 at 4. Plaintiff has leave to refile this motion after the parties have conferred. Additionally, the Court uses form protective orders located in Appendix H to the Local Rules. Parties requesting a protective order must use a form order or file a motion explaining why a different protective order is requested. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TMlc) (Entered: 04/08/2026) |
| 04/09/2026 | 16 (p.542) | Third MOTION for Confidentiality/Protective Order *refilled after Conference* by Charles T Bruff. (Attachments: # 1 (p.8) Proposed Order Order, # 2 (p.85) Exhibit CONFER1)(Bruff, Charles) (Entered: 04/09/2026) |
| 04/10/2026 | 17 (p.567) | NOTICE *of Development Affecting Pending Motions* by Charles T Bruff (Attachments: # 1 (p.8) Exhibit CONFER1, # 2 (p.85) Exhibit CONFLICT1)(Bruff, Charles) (Entered: 04/10/2026) |
| 04/13/2026 | | |

| | | |
|---|---|---|
| | | Text Order DENYING 2 (p.85) Motion to Appoint Counsel entered by Judge Xavier Rodriguez. Plaintiff has not demonstrated the necessity of appointed counsel in this case. The Court will reassess Plaintiff's arguments in favor of an appointment if and when a necessity arises. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TMlc) (Entered: 04/13/2026) |
| 04/14/2026 | 18 (p.582) | NOTICE *to the Court Regarding Defendant Lincoln's Initial Disclosures and Rule 26(g) Certification* by Charles T Bruff (Attachments: # 1 (p.8) Exhibit DISCLOSURE)(Bruff, Charles) (Entered: 04/14/2026) |
| 04/15/2026 | 19 (p.593) | Response in Opposition to Motion, filed by Lincoln National Life Insurance Company, re 16 (p.542) Third MOTION for Confidentiality/Protective Order *refiled after Conference* filed by Plaintiff Charles T Bruff (Rademaekers, Iwana) (Entered: 04/15/2026) |
| 04/16/2026 | 20 (p.599) | REQUEST FOR ISSUANCE OF SUMMONS by Charles T Bruff. *For USAA Casualty Insurance Company, Subsidiary of USAA and the USAA plans* (Bruff, Charles) (Entered: 04/16/2026) |
| 04/16/2026 | | Text Order DENYING 16 (p.542) Motion for Protective Order entered by Judge Xavier Rodriguez. Plaintiff seeks an order prohibiting Defendant Lincoln's claims-administration personnel from communicating with Lincoln's counsel. He also asks the Court to prohibit Lincoln from accessing the records it has pertaining to Plaintiff "unless produced through formal discovery." ECF No. 16 at 14. "An injunctive order is an extraordinary writ, enforceable by the power of contempt." Gunn v. Univ. Comm. to End War, 399 U.S. 383, 389 (1970). Plaintiff has established neither the necessity of such extraordinary relief here nor the Court's authority to impose it in this form. Besides, it is unclear how Lincoln can produce records through formal discovery if Lincoln is unable to access them. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TMlc) (Entered: 04/16/2026) |
| 04/17/2026 | 21 (p.601) | Summons Issued as to USAA Educational Assistance Plan, USAA Health and Welfare Benefits Plan. (mgr) (Entered: 04/17/2026) |
| 04/17/2026 | 22 (p.603) | MOTION for Leave to Exceed Page Limitation *on Protective Order Reply (ECF 16)* by Charles T Bruff. (Bruff, Charles) (Entered: 04/17/2026) |
| 04/17/2026 | 23 (p.606) | REPLY to Response to Motion, filed by Charles T Bruff, re 16 (p.542) Third MOTION for Confidentiality/Protective Order *refiled after Conference* filed by Plaintiff Charles T Bruff *NOTE: Additional motion filed to exceed page limit.* (Attachments: # 1 (p.8) Exhibit Disclosure referenced in reply)(Bruff, Charles) (Entered: 04/17/2026) |
| 04/18/2026 | 24 (p.624) | NOTICE *of Waiver of Service Attempt* by Charles T Bruff (Attachments: # 1 (p.8) Exhibit A-1 USAA General Counsel., # 2 (p.85) Exhibit A-2 USAA CIC (Member Side), # 3 (p.94) Exhibit A-3 Lincoln National (Has Appeared))(Bruff, Charles) (Entered: 04/18/2026) |
| 04/20/2026 | | Text Order MOOTING 22 (p.603) Motion for Leave to File Excess Pages entered by Judge Xavier Rodriguez. Plaintiff's motion for a protective order was denied. See Text Order Dated April 16, 2026. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TMlc) (Entered: 04/20/2026) |
| 04/20/2026 | 25 (p.637) | MOTION for Preliminary Injunction *to maintain the Status Quo* by Charles T Bruff. (Attachments: # 1 (p.8) Exhibit CONFER2, # 2 (p.85) Exhibit SSATXT)(Bruff, |

| | | |
|---|---|---|
| | | Charles) (Entered: 04/20/2026) |
| 04/22/2026 | | Text Order DENYING 25 (p.637) Motion for a Preliminary Injunction entered by Judge Xavier Rodriguez. A movant seeking a preliminary injunction must demonstrate a substantial likelihood of success on the merits. Clark v. Prichard, 812 F.2d 991, 993 (5th Cir. 1987). Plaintiff's motion objects to the fact that Lincoln directs Plaintiff to communicate through Lincoln's counsel. Plaintiff also complains that Lincoln has not yet provided a complete claim file as part of its initial discovery disclosures. It is unclear how these allegations bear on the merits of Plaintiff's claims. He accordingly failed to demonstrate a substantial likelihood of success on the merits. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TMlc) (Entered: 04/22/2026) |
| 04/23/2026 | 26 (p.655) | Appeal of Order entered by District Judge by Charles T Bruff.*Interlocutory Notice of Appeal to the Fifth Circuit includes notice of Rule 52(a) procedural errors and unaddressed Section 504 accommodation requests.* ( Filing fee $ 605 receipt number BTXWDC-21816410) (Bruff, Charles) (Entered: 04/23/2026) |
| 04/23/2026 | | NOTICE OF INTERLOCUTORY APPEAL as to Order on Motion for Preliminary Injunction,,, Order on Motion for Protective Order,,, by Charles T Bruff. Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (vl) (Entered: 04/27/2026) |
| 04/24/2026 | 27 (p.658) | MOTION for Preliminary Injunction *Pending Appeal Pursuant to Fed. R. App. P. 8(a)(1) and Fed. R. Civ. P. 62(d) (EXPEDITED RULING REQUESTED)* by Charles T Bruff. (Attachments: # 1 (p.8) Exhibit CONFER4, # 2 (p.85) Exhibit Declaration of Charles Bruff, # 3 (p.94) Exhibit CONFLICT2, # 4 (p.97) Exhibit CONFLICT3, # 5 (p.99) Exhibit SSDI1, # 6 (p.105) Proposed Order Order)(Bruff, Charles) (Entered: 04/24/2026) |
| 05/01/2026 | 28 (p.734) | MOTION *for Corrective Action Regarding Unauthorized Disclosure of Third-Party Protected Health Information* by Charles T Bruff. (Attachments: # 1 (p.8) Exhibit A)(Bruff, Charles) (Entered: 05/01/2026) |
| 05/01/2026 | 29 (p.746) | TRANSCRIPT REQUEST by Charles T Bruff. (Bruff, Charles) (Entered: 05/01/2026) |
| 05/02/2026 | 30 (p.748) | Response in Opposition to Motion, filed by Lincoln National Life Insurance Company, re 27 (p.658) MOTION for Preliminary Injunction *Pending Appeal Pursuant to Fed. R. App. P. 8(a)(1) and Fed. R. Civ. P. 62(d) (EXPEDITED RULING REQUESTED)* filed by Plaintiff Charles T Bruff (Attachments: # 1 (p.8) Exhibit A, # 2 (p.85) Exhibit B)(Rademaekers, Iwana) (Entered: 05/02/2026) |
| 05/03/2026 | 31 (p.784) | REPLY to Response to Motion, filed by Charles T Bruff, re 27 (p.658) MOTION for Preliminary Injunction *Pending Appeal Pursuant to Fed. R. App. P. 8(a)(1) and Fed. R. Civ. P. 62(d) (EXPEDITED RULING REQUESTED)* filed by Plaintiff Charles T Bruff *May 3, 2026* (Attachments: # 1 (p.8) Exhibit Regulatory Background (REG), # 2 (p.85) Exhibit MYCHART, # 3 (p.94) Exhibit COVERSHEET, # 4 (p.97) Exhibit CONFLICTDEADLINE, # 5 (p.99) Exhibit MAR24PACKET, # 6 (p.105) Exhibit MAR31PACKET)(Bruff, Charles) (Entered: 05/03/2026) |
| 05/04/2026 | | Text Order DENYING 28 (p.734) Motion for Corrective Action entered by Judge Xavier Rodriguez. Plaintiff asks the Court to take corrective action on behalf of a third party whose personal information was allegedly disclosed. Plaintiff has not |

| | | |
|---|---|---|
| | | established the "irreducible constitutional minimum of standing" to seek relief on behalf of the third party. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). <br><br> (This is a text-only entry generated by the court. There is no document associated with this entry.) (TMlc) (Entered: 05/04/2026) |
| 05/04/2026 | 32 (p.869) | MOTION for Leave to File Lincoln/Bruff Bates 394 - 401 *Under Seal or In the Alternative In Camera Review to Support Motion for Corrective Action* by Charles T Bruff. (Bruff, Charles) (Entered: 05/04/2026) |
| 05/12/2026 | 33 (p.876) | Unopposed MOTION for Extension of Time to File Answer re 1 (p.8) Complaint by USAA Educational Assistance Plan, USAA Health and Welfare Benefits Plan. (Attachments: # 1 (p.8) Proposed Order)(Aslin, Brian) (Entered: 05/12/2026) |
| 05/13/2026 | | Text Order GRANTING 33 (p.876) Motion for Extension of Time to Answer entered by Judge Xavier Rodriguez. The deadline for the USAA Defendants to answer or otherwise plead to Plaintiff's Complaint is hereby extended to June 22, 2026. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TMlc) (Entered: 05/13/2026) |
| 05/13/2026 | | Reset Deadlines: USAA Educational Assistance Plan answer due 6/22/2026; USAA Health and Welfare Benefits Plan answer due 6/22/2026; United States Automobile Association answer due 6/22/2026. (bt) (Entered: 05/13/2026) |
| 05/19/2026 | 34 (p.881) | MOTION for Clerk's Entry of Default *Pursuant to Fed. R. Civ. P. 55(a)* against Lincoln National Life Insurance Company by Charles T Bruff. (Bruff, Charles) (Entered: 05/19/2026) |
| 05/19/2026 | 35 (p.885) | Motion to Dismiss for Failure to State a Claim by Lincoln National Life Insurance Company. (Attachments: # 1 (p.8) Exhibit A, Group Disability Income Policy, # 2 (p.85) Exhibit B, Benefit Decision Letter, # 3 (p.94) Unpublished Opinion, # 4 (p.97) Proposed Order)(Rademaekers, Iwana) (Entered: 05/19/2026) |
| 05/19/2026 | 36 (p.956) | Response in Opposition to Motion, filed by Lincoln National Life Insurance Company, re 34 (p.881) MOTION for Clerk's Entry of Default *Pursuant to Fed. R. Civ. P. 55(a)* against Lincoln National Life Insurance Company filed by Plaintiff Charles T Bruff (Rademaekers, Iwana) (Entered: 05/19/2026) |
| 05/19/2026 | 37 (p.959) | REPLY to Response to Motion, filed by Charles T Bruff, re 34 (p.881) MOTION for Clerk's Entry of Default *Pursuant to Fed. R. Civ. P. 55(a)* against Lincoln National Life Insurance Company filed by Plaintiff Charles T Bruff (Bruff, Charles) (Entered: 05/19/2026) |
| 05/19/2026 | | Text Order MOOTING 34 (p.881) Motion for Clerk's Entry of Default entered by Judge Xavier Rodriguez. Defendant Lincoln National Life Ins. Co. filed a Motion to Dismiss Plaintiff's Complaint (ECF No. 35 (p.885) ). (This is a text-only entry generated by the court. There is no document associated with this entry.) (TMlc) (Entered: 05/19/2026) |
| 05/19/2026 | 38 (p.964) | NOTICE *of non-opposition due to failure to respond to motion within 14 days (Lincoln)* by Charles T Bruff re 32 (p.869) MOTION for Leave to File Lincoln/Bruff Bates 394 - 401 *Under Seal or In the Alternative In Camera Review to Support Motion for Corrective Action* (Bruff, Charles) (Entered: 05/19/2026) |
| 05/19/2026 | 39 (p.969) | MOTION for Reconsideration re Order on Motion for Clerk's Entry of Default, *due to lack of findings and lack of precedent for mooting a default* by Charles T Bruff. |

| | | |
|---|---|---|
| | | (Attachments: # 1 (p.8) Exhibit FJC)(Bruff, Charles) (Entered: 05/19/2026) |
| 05/20/2026 | | Text Order DENYING 39 (p.969) Motion for Reconsideration entered by Judge Xavier Rodriguez. Defendant Lincoln National has appeared. Plaintiff is not prejudiced by having to prosecute his case. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TMlc) (Entered: 05/20/2026) |
| 05/20/2026 | 40 (p.983) | Supplemental Appeal of Order entered by District Judge by Charles T Bruff. *re text orders Doc # 28, 34, and 39* No filing fee submitted (Bruff, Charles) (Entered: 05/20/2026) |
| 05/20/2026 | | NOTICE OF INTERLOCUTORY APPEAL as to Order on Motion for Miscellaneous Relief,, Order on Motion for Extension of Time to Answer, Order on Motion for Clerk's Entry of Default, Order on Motion for Reconsideration, by Charles T Bruff. Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (vl) (Entered: 06/02/2026) |
| 05/21/2026 | 42 (p.1041) | NOTICE REGARDING STATUS OF APPELLATE RECORD TRANSMISSION AND REQUEST FOR PROMPT CERTIFICATION by Charles T Bruff (vl) (Entered: 05/26/2026) |
| 05/23/2026 | 41 (p.990) | MOTION to Stay *Pending Appeal* by Charles T Bruff. (Attachments: # 1 (p.8) Exhibit S504, # 2 (p.85) Proposed Order Order, # 3 (p.94) Exhibit Lincoln Counsel, # 4 (p.97) Exhibit Deficiency)(Bruff, Charles) (Entered: 05/23/2026) |
| 05/27/2026 | 43 (p.1046) | RESPONSE to Motion, filed by Lincoln National Life Insurance Company, re 41 (p.990) MOTION to Stay *Pending Appeal* filed by Plaintiff Charles T Bruff (Rademaekers, Iwana) (Entered: 05/27/2026) |
| 05/28/2026 | 44 (p.1048) | REPLY to Response to Motion, filed by Charles T Bruff, re 41 (p.990) MOTION to Stay *Pending Appeal* filed by Plaintiff Charles T Bruff (Bruff, Charles) (Entered: 05/28/2026) |
| 06/02/2026 | 45 (p.1051) | ORDER -- The remaining factors weigh against an injunction. This injunction would order Lincoln to pay Plaintiff, and Plaintiff fails to persuade the Court that the injunction is in the publics interest. Plaintiffs motion (ECF No. 27) is DENIED. Plaintiffs motion to file documents under seal (ECF No. 32) is DENIED. Plaintiffs motion for a stay (ECF No. 41) is GRANTED. The Clerks office is therefore DIRECTED to ADMINISTRATIVELY CLOSE this case pending further order of the Court. Signed by Judge Xavier Rodriguez. (cih) (Entered: 06/03/2026) |

Charles Bruff

4835 Medical Dr. #29643

San Antonio, TX 78229

318-452-8978

Plaintiff in Pro Se

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**SAN ANTONIO DIVISION**

**CHARLES BRUFF,**

    Plaintiff,

v.

**USAA HEALTH AND WELFARE BENEFITS PLAN,**

**USAA EDUCATIONAL ASSISTANCE PLAN,**

**UNITED STATES AUTOMOBILE ASSOCIATION,**

**AND LINCOLN NATIONAL LIFE INSURANCE COMPANY,**

    **Defendants.**

**Case No. 5:26-CV-01720**

**PLANTIFF'S NOTICE OF APPEAL OF PRELIMIARNY INJUNCTION**

Notice is hereby given that Plaintiff Charles Bruff, appearing pro se, appeals to the United States Court of Appeals for the Fifth Circuit from the following interlocutory orders entered by the Honorable Xavier Rodriguez:

1. The Text Order (ECF No. 73) entered on April 16, 2026, denying Plaintiff's Motion for Protective Order (ECF No. 16). In its denial, the Court treated the motion as a request for an injunctive order by applying the "extraordinary" standard set forth in Gunn v. Univ. Comm. to End War, 399 U.S. 383, 389 (1970);

26-50345.655

2.  The Text Order (ECF No. 86) entered on April 22, 2026, denying Plaintiff's Motion for Preliminary Injunction (ECF No. 25);

3.  The Court's failure to comply with Federal Rule of Civil Procedure, 52(a)(2), which mandates that a court state findings and conclusions when refusing an interlocutory injunction. The Court's reliance on summary text-only orders constitutes a procedural error that deprives Plaintiff of the explicit guidance necessary to navigate the litigation; and

4.  The Court's failure to address or provide a neutral mechanism for Plaintiff's requested accommodations under Section 504 of the Rehabilitation Act. Plaintiff appeals the Court's decision to proceed to a merits-based denial of injunctive relief while Plaintiff's documented functional limitations related to Autism Spectrum Disorder remain unaccommodated, creating a barrier to meaningful participation.

This appeal is taken as of right pursuant to 28 U.S.C. § 1292(a)(1). Plaintiff requests grace under Haines v. Kerner, 404 U.S. 519 (1972). Plaintiff further provides notice that a Motion for Preliminary Injunction Pending Appeal, pursuant to Fed. R. Civ. P. 62(d), will be filed with this Court immediately upon completion of the meet-and-confer process.

Respectfully submitted,

/s/ **Charles Bruff**

Charles Bruff

4835 Medical Dr. #29643

San Antonio, TX 78229

318-452-8978

Plaintiff in Pro Se

Dated: **April 23, 2026**

26-50345.656

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth above, a true and correct copy of the foregoing motion was served upon counsel for Defendant Lincoln National Life Insurance Company through the Court's CM/ECF electronic filing system, which will automatically generate electronic notice to all counsel of record.


**/s/ Charles T Bruff**

Charles T. Bruff

Plaintiff in Pro Se

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION


CHARLES TERRENCE BRUFF,


Plaintiff-Appellant,


v.


USAA EDUCATIONAL ASSISTANCE PLAN, et al.,


Defendants-Appellees.


Civil Action No. 5:26-CV-01720-XR


**PLAINTIFF'S SUPPLEMENTAL NOTICE OF INTERLOCUTORY APPEAL**


**I. INTRODUCTION**

Plaintiff Charles Terrence Bruff hereby supplements his Interlocutory Notice of Appeal filed April 23, 2026 (Doc. 26) to include orders entered by the district court after that date. These orders are part of the same pattern of text-order dispositions without findings of fact, conclusions of law, or citation to authority that is the subject of the pending interlocutory appeal. They are presented here to provide the Fifth Circuit with a complete and current record of that pattern as it has developed during the pendency of the appeal.

The original Notice of Appeal (Doc. 26) challenged orders entered through April 23, 2026, including the denial of Plaintiff's preliminary injunction motion (Doc. 25) and the denial of Plaintiff's motion for a protective order (Doc. 16), both entered by text order without findings or citation to authority, bearing the law clerk notation TMlc. Since the filing of that notice, the district court has entered five additional orders. Four of those orders continue the documented pattern. One — the granting of the USAA defendants' unopposed motion for an extension of time to answer — is noted for completeness but does not reflect the pattern at issue.

26-50345.983

## II. THE POST-APPEAL ORDERS

### A. Text Order Denying Doc. 28 — May 4, 2026 (TMlc)

On May 4, 2026, the district court denied Plaintiff's Motion for Corrective Action (Doc. 28) by text order, three days after filing and before Lincoln filed any opposition. The order applied the wrong legal standard. It characterized Plaintiff's motion as seeking relief on behalf of a third party and denied it on standing grounds under Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). Doc. 28 explicitly identified three concrete injuries running directly to Plaintiff — contamination of Plaintiff's own administrative record, a false production certification directed at this Court, and Plaintiff's involuntary possession of another individual's protected health information — none of which required third-party standing. The order did not address any of those three injuries. No findings were issued. No authority was cited for the standing analysis beyond the threshold Lujan standard. (TMlc)

### B. Text Order Granting Doc. 33 — May 13, 2026 (TMlc)

On May 13, 2026, the district court granted the USAA defendants' unopposed motion for an extension of time to answer (Doc. 33), extending their answer deadline to June 22, 2026. This order is noted for completeness. It is not an instance of the pattern at issue — it resolved an unopposed ministerial request without contest. It is included here because the TMlc notation appears on this order as well, demonstrating that the notation reflects the entry mechanism rather than the absence of judicial involvement on contested matters.

### C. Text Order Mooting Doc. 34 — May 19, 2026 (TMlc)

On May 19, 2026, the district court mooted Plaintiff's Application for Clerk's Entry of Default (Doc. 34) by text order entered the same day. The order's reasoning in its entirety: "Defendant Lincoln National Life Ins. Co. filed a Motion to Dismiss Plaintiff's Complaint (ECF No. 35)."

The order contains no legal analysis, cites no authority, and does not address: (1) whether Doc. 35 was timely filed; (2) whether leave of court was required and obtained; (3) whether a motion to dismiss filed after a default has already arisen by operation of law can cure that default; or (4) the distinction between Rule 55(a) entry and Rule 55(c) set-aside as the only two recognized mechanisms for resolving a default. Plaintiff's Application was filed at 1:54 a.m. on May 19. Lincoln's Motion to Dismiss was filed at approximately 6:00 a.m. on May 19 — after the default existed, after Plaintiff's application was on the docket, and without leave of court. The order does not acknowledge this sequence.

Comprehensive research of published federal case law and the Federal Judicial Center's February 2024 study of default practices across all ninety-four federal district courts has not identified any precedent — in any circuit or any district — for mooting a default application on the ground that the defaulting party subsequently filed a motion to dismiss. The procedural outcome created by this order does not exist in the Federal Rules, in Fifth Circuit authority, or in documented district court practice nationwide. (TMlc)

### D. Text Order Denying Doc. 39 — May 20, 2026 (TMlc)

On May 20, 2026, the district court denied Plaintiff's Motion for Reconsideration of the Mootness Order (Doc. 39) by text order entered less than twenty-four hours after the motion was filed. The order's reasoning in its entirety: "Defendant Lincoln National has appeared. Plaintiff is not prejudiced by having to prosecute his case."

Doc. 39 raised eight distinct legal arguments across twelve pages, supported by the Federal Judicial Center's February 2024 study, Rule 55(a), Rule 55(c), Rule 52(a)(2), Lacy v. Sitel Corp., 227 F.3d 290 (5th Cir. 2000), CJC Holdings, Inc. v. Wright & Lato, Inc., 979 F.2d 60 (5th Cir. 1992), and the complete absence of any published authority supporting the mootness procedure employed. The order does not address any of those arguments. It does not address the chronology

establishing that the default arose before Doc. 35 was filed. It does not address Rule 55(c)'s good cause requirement. It does not address the FJC report. It does not address the Rule 52(a)(2) problem created by the absence of findings. It does not address the four specific forms of prejudice Plaintiff identified — the impossible position created by the mootness order, the stay-without-PI dilemma, the USAA cascade problem, and the June 2 MTD response deadline conflict.

The order's prejudice finding — "Plaintiff is not prejudiced by having to prosecute his case" — does not engage with the prejudice Plaintiff actually identified. Plaintiff did not claim prejudice from prosecuting his case. Plaintiff identified prejudice from being required to prosecute his case against a defendant whose default was dissolved through a procedural mechanism that does not exist in the rules, creating a cascade of consequences that a stay would prevent. The order substitutes a generic characterization for any engagement with the actual prejudice arguments. (TMlc)

### III. THE PATTERN OF SELECTIVE SPEED

The post-appeal orders reveal a pattern that extends beyond the absence of findings. The timing of adverse dispositions, compared to the timing of rulings on motions requiring substantive engagement, demonstrates a consistent asymmetry that the Fifth Circuit should have before it as part of the complete record.

The following table summarizes the disposition timeline for contested motions filed by Plaintiff since the case was initiated:

| Motion | Filed | Briefing Complete | Ruled | Turnaround |
|---|---|---|---|---|
| Doc. 2 — Attorney Appt. | Mar 16 | Not complete | Apr. 13 (denied) | < 1 week |
| Doc. 16 — Protective Order | Apr. 9 | Apr. 17 (reply) | Apr. 16 (denied) | Before reply filed |

| Doc. 25 — PI (Status Quo) | Apr. 20 | Never (no opposition) | Apr. 22 (denied) | 2 days |
| Doc. 28 — Corrective Action | May 1 | Never (no opposition) | May 4 (denied) | 3 days |
| Doc. 34 — Default Application | May 19 (1:54 AM) | May 19 (reply filed) | May 19 (mooted) | Same day |
| Doc. 39 — Reconsideration | May 19 (evening) | Not complete | May 20 (denied) | < 24 hours |

The following table summarizes the disposition timeline for motions that remain unruled:

| Motion | Filed | Briefing Complete | Days Pending | Status |
|---|---|---|---|---|
| Doc. 27 — PI Pending Appeal | Apr. 24 | May 3 | 17+ days | No ruling |
| Doc. 32 — Motion to Seal | May 4 | May 18 (unopposed) | 16+ days | No ruling |

The pattern is precise. Every motion Plaintiff filed that was susceptible to quick adverse disposition was disposed of within hours or days — in two instances before the briefing cycle was complete, and in one instance before any opposition was filed. The two motions that remain pending are the two motions that would require substantive engagement to resolve: the PI pending appeal, which has been fully briefed for seventeen days, and the motion to file under seal, which has been unopposed since May 18.

A busy docket produces slow rulings across the board. The pattern here is not slowness. It is selective speed in one direction — rapid adverse dispositions without findings, and silence on

26-50345.987

motions requiring analysis. This asymmetry is itself part of the pattern the original interlocutory appeal presents to this Court.

## IV. BASIS FOR SUPPLEMENTAL NOTICE

Under Federal Rule of Appellate Procedure 3 and 28 U.S.C. § 1291, a notice of appeal encompasses orders entered after the original notice that are sufficiently related to the issues on appeal. The orders identified in this supplemental notice are directly related to the issues presented in the original interlocutory appeal: the district court's pattern of resolving contested motions by text order without findings of fact, conclusions of law, or citation to authority, in violation of Federal Rule of Civil Procedure 52(a)(2).

Each post-appeal order identified above — the Doc. 28 denial, the Doc. 34 mootness order, and the Doc. 39 reconsideration denial — is a text-only entry bearing the TMlc notation, entered without findings, without cited authority, and in two instances without engagement with the legal arguments presented. Together they extend and complete the pattern the original notice placed before this Court.

Plaintiff files this supplemental notice to ensure the Fifth Circuit has a complete and current record. Plaintiff will address the legal significance of these orders and their relationship to the issues on appeal in his appellate brief.

Respectfully submitted,

/s/ Charles T. Bruff
Charles Terrence Bruff
Pro Se Plaintiff-Appellant
4835 Medical Drive #29643 San Antonio, Texas 78229
cbruff13@outlook.com
(318) 452-8978

Date: May 20, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2026, a true and correct copy of the foregoing Supplemental Notice was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:


Iwana Rademaekers, Esq. | iwana@rademaekerslaw.com

James Goodfellow, Esq. | james.goodfellow@jacksonlewis.com


/s/ Charles T. Bruff

Charles Terrence Bruff

**OPTIONAL RECORD EXCERPT**

**OPTIONAL CONTENTS**

5th Cir. R. 30.1.5 - relevant excerpts, per R. 30.1.5(f)

*Items 4-13 below reproduce only the portions of each exhibit directly cited*
*in the opening brief. Full exhibits remain part of the district court record*
*at the ROA citations shown in the Table of Contents.*

# OPTIONAL RECORD EXCERPT 4

## Exhibit E excerpt

Vocational Rehabilitation Correspondence, Dec. 2025-Jan. 2026 (ECF No. 12, Att.7) - ROA.217, 221

# Exhibit E

## Lincoln Financial's Initiation of Vocational Rehabilitation Process and Failure to Produce Any Written Program Documentation

This exhibit documents the full sequence of correspondence surrounding Lincoln Financial's initiation of the vocational rehabilitation process, spanning December 17, 2025 through January 9, 2026. It establishes two related points: (1) that Lincoln referred Plaintiff to its vocational rehabilitation program, as alleged in complaint paragraph 19; and (2) that despite Plaintiff's explicit written requests for any packets, written materials, or documentation describing the program and the Rehabilitation Incentive Benefit — beginning December 17, 2025 and repeated across three further communications — Lincoln produced nothing beyond three bullet points and a statement that no further information was available. Only the portions of the December 17 email relevant to vocational rehabilitation and the Rehabilitation Incentive Benefit are quoted; the full email chain is available upon request.

> Complaint paragraph 19 cites this exhibit to establish that Plaintiff was referred to Lincoln Financial Vocational Rehabilitation on or around January 9, 2026. This exhibit also supports the broader argument at paragraph 19 that vocational rehabilitation is not defined in the policy — Lincoln's own communications confirm it could not produce any written program documentation when asked directly.
>
> Cross-reference: The formal written referral letter and subsequent closure correspondence are in Exhibit F (January 27–28, 2026).

> **Pattern — No Producible Internal Standards (See Also Exhibits H and J)**
>
> This exhibit establishes a third instance of the pattern documented in Exhibits H and J: Lincoln Financial was unable or unwilling to produce any written internal standard governing a consequential claims-handling program when Plaintiff specifically requested it.
>
> Exhibit H: Lincoln refused to produce a written policy governing claims file withholding from claimants on approved claims.
>
> Exhibit J: Lincoln refused to produce any written framework governing its review frequency or methodology.
>
> Exhibit E (this exhibit) — Vocational Rehabilitation Program: Lincoln referred Plaintiff to a vocational rehabilitation program that is not defined in the policy (see Exhibit LTDPOL). When Plaintiff requested written documentation of the program, Lincoln produced only three bullet points and a closing statement that no further information was available.
>
> Exhibit E (this exhibit) — Rehabilitation Incentive Benefit: The Rehabilitation Incentive Benefit is also not defined in the policy. Plaintiff first requested information about it on December 17, 2025. Across four separate written requests spanning three weeks, Lincoln's total written output on the benefit was one sentence — "An additional payment (often a percentage of your monthly benefit) for participating in approved rehab activities" — with no percentage specified, no definition of "approved," no eligibility criteria, and no written documentation of any kind produced.

## Document 1 — Plaintiff's LTD Interview Response Containing First Request for Rehabilitation Incentive Benefit Information — December 17, 2025, 4:56 PM

| | |
|---|---|
| **From:** | Terrence Bruff (tbruff15@gmail.com) |
| **Date:** | Wednesday, December 17, 2025, 4:56 PM |
| **To:** | Corporan, Kristianne (Kristianne.Corporan@lfg.com) |
| **Subject:** | RE: LTD claim # 17729133 |
| **Claim No.:** | 17729133 |

**Rehabilitation Incentive Benefit:** An additional payment (often a percentage of your monthly benefit) for participating in approved rehab activities.

**Qualifying Activities:** Typically include vocational counseling, job training, and sometimes education if it directly supports return-to-work goals. Taking one class may not qualify, since we do not know if this is something to assist you with necessary skills or when you will be able to pursue employment.

I have explained that I will ask for updates based on the when it's determined that updates are needed and you will be notified ahead of time. While I understand your need for predictability, private LTD policies do not publish detailed review schedules like SSDI.

You will continue to receive LTD benefits as long as you continue to meet the contractual requirements of the Policy, which you have been provided a copy.

The Policy outlines the 24 month limitation for psychiatric conditions. The vocational rehabilitation and partial disability provisions are outlined in the Policy.

Social Security and private insurers operate under different regulations. SSDI is a federal program with statutory rules. Lincoln Financial, as a private insurer, follows the terms of your policy.

There is no other explanations or information I can provide to you.

Kristianne Corporan Kristianne C. | LTD Technical Specialist | Lincoln Financial Disability and Life Claims | P.O. Box 2578, Omaha, NE 68103-2578 888-437-7611 Office, Extension 65597 | Fax: 603-334-0401

Note: Document 5 is the entirety of the written documentation Lincoln produced in response to Plaintiff's requests beginning December 17, 2025. Across four written communications spanning three weeks, Lincoln's total output was three bullet points and a closing statement that "there is no other explanations or information I can provide." The Rehabilitation Incentive Benefit definition — "an additional payment (often a percentage of your monthly benefit) for participating in approved rehab activities" — specifies no percentage, no definition of "approved," and no eligibility criteria. No packets, written program descriptions, or progress standards were ever produced.

This email also serves as the source for Exhibit J (Document 2) for Lincoln's admission that private LTD policies do not publish review schedules. Those exhibits use this document for different legal propositions than this exhibit.

26-50345.221

# OPTIONAL RECORD EXCERPT 5

## Exhibit F excerpt

Referral & Closure Correspondence, Voc. Rehab. Consultant A. Chambers (ECF No. 12, Att.9) - ROA.232, 234-236

# Exhibit F

## Lincoln Financial Vocational Rehabilitation Referral and Closure Correspondence

The following is the complete email correspondence regarding Plaintiff's vocational rehabilitation referral, spanning January 27–28, 2026.

### Document 1 — Lincoln Financial Referral Letter — January 27, 2026

| | |
|---|---|
| **Date:** | January 27, 2026 |
| **To:** | Charles T. Bruff, 98 McLennan Oak, San Antonio, TX 78240 |
| **RE:** | Long Term Disability (LTD) Benefits, USAA Claim #: 17729133 |
| **From:** | Aleysia C., Consultant, Voc-Rehab & Accom, Lincoln National Life Insurance Company |

Dear Charles: The Lincoln National Life Insurance Company is responsible for managing claims for Long Term Disability (LTD) benefits under USAA's Group Disability Policy.

You have been referred by your Disability Case Manager, Kristianne C., to receive vocational rehabilitation services. As a rehabilitation counselor, my role is to conduct an assessment, evaluate your employability, and when appropriate, develop an individualized vocational plan to achieve reasonable goals.

Sincerely, Aleysia C. Consultant, Voc-Rehab & Accom

### Document 2 — Plaintiff's Email Response — January 27, 2026, 6:09 PM

| | |
|---|---|
| **From:** | Terrence Bruff |
| **Sent:** | Tuesday, January 27, 2026, 6:09 PM |
| **To:** | Chambers, Aleysia |
| **Subject:** | RE: Vocational Rehab |

Let me ask you the most important question: Did you have any intention of covering my educational needs when you called me? I had already told Miss Christine what I needed and I had emailed you multiple times before you called me. It was in my file that I was in school and that I was needing help with funding in order to be retrained away from mainframe development.

### Document 3 — Lincoln Financial Response — January 28, 2026, 11:35 AM

| | |
|---|---|
| **From:** | Chambers, Aleysia |
| **Sent:** | Wednesday, January 28, 2026, 11:35 AM |
| **To:** | Terrence Bruff |
| **Subject:** | RE: Vocational Rehab |

Training is considered only when a claimant does not have transferable skills for other occupations and when such a plan is supported by the specific facts of the claim. Based on our review, we will not be

26-50345.232



The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68103-2578
Phone No.: (800) 210-0268
Secure Fax No.: (603) 422-0119

January 27, 2026

Charles T. Bruff
98 MCLENNAN OAK
SAN ANTONIO, TX 78240

RE:    Long Term Disability (LTD) Benefits
       USAA
       Claim #: 17729133

Dear Charles:

The Lincoln National Life Insurance Company is responsible for managing claims for Long Term Disability (LTD) benefits under USAA's Group Disability Policy. We are writing in reference to your claim for LTD benefits under the Policy.

### Professional Disclosure Form

You have been referred by your Disability Case Manager, Kristianne C., to receive vocational rehabilitation services. As a rehabilitation counselor, my role is to conduct an assessment, evaluate your employability, and when appropriate, develop an individualized vocational plan to achieve reasonable goals. This process may involve other professionals to assist in achieving the vocational goals. These professionals may conduct testing, job search, or market research. Discussions regarding your case will be held with such individuals and The Lincoln National Life Insurance Company claim professionals. The duration of these services vary and is based upon several factors such as your abilities and your progress. Fees for our services are paid by The Lincoln National Life Insurance Company.

The Lincoln National Life Insurance Company has a formal records retention and release policy that conforms to state and federal requirements. The Lincoln National Life Insurance Company uses secure messaging in outgoing e-mail communication. Should you wish to communicate or send us information using e-mail, please contact us so that we can assist you in protecting your privacy through our secure messaging system.

Communication and documentation generated by me for your file protects your privacy to the extent that it is possible and includes only relevant or appropriate counseling information.

Please contact me if you have any questions regarding this correspondence.

26-50345.234

Sincerely,

Aleysia C.
Consultant, Voc-Rehab & Accom
Phone No.: (531) 375-4370 Ext.
Secure Fax No.: (484) 583-1955

26-50345.235

## Re: Charles Bruff (secure)

| | |
|---|---|
| **From:** | Chambers, Aleysia  Aleysia.Chambers@lfg.com |
| **To:** | Terrence Bruff  tbruff15@gmail.com |
| **Date:** | Tue, Jan 27, 2026, 1:40 PM |

Good afternoon Mr. Bruff,

Apologies for the quick end to our call, but I understand the need to contact maintenance regarding your heater!

Thank you for taking the time to speak with me today.

As we discussed, I have submit your general information to the Start My VR portal for Texas Workforce Solutions Vocational Rehabilitation Services (TWS-VRS, previously DARS). As I understand you have received advocate services from AACOG (Alamo Area Council of Governments), please include them when speaking with a state-level vocational rehabilitation counselor if you feel it is appropriate.

> ⓘ Thank you for your interest in Texas Workforce Solutions-Vocational Rehabilitation (VR) Services.
>
> You have successfully submitted a contact request.
>
> A member of our team will be contacting you to discuss VR services, which may be available to assist you in overcoming barriers to employment related to your disability. If you decide that the VR program may be a good fit for you, we will gather additional information to schedule an appointment for you to discuss opening a case with a counselor.
>
> If you have any questions, you may reach Vocational Rehabilitation Services by calling 512-936-6400 or by email at vr.office.locator@twc.texas.gov. .
>
> You can find the closest Vocational Rehabilitation office by using our VR Office Lookup page .
>
> Sincerely,
> Vocational Rehabilitation Services

As we do understand that TWS-VRS is the "payor of last resort," I would encourage you to take the steps to apply for federal, state, and college specific financial aid to have that in the works as you have been paying for your training out of pocket and this may provide you some financial relief in that area.

Free Application for Federal Student Aid (FAFSA)
Texas Application for State Financial Aid (TASFA)
UTSA Financial Aid

Regarding anything official in writing from our department regarding funding, once you have applied for and are in the state-vocational rehabilitation process with an assigned counselor – sign a release of information for them to contact Lincoln Financial Group and we can review any requests they have to assist on your journey.

Thank you again for your time and hoping that this has been helpful,



**Aleysia Chambers**
Vocational Rehabilitation Consultant
GP CLM LTD Clinical
531-375-4370 Office
484-583-1955 Fax

**Lincoln Financial**
*120 years of building tomorrows*
LincolnFinancial.com

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates. Affiliates are separately responsible for their own financial and contractual obligations. This email and its attachments may collect your personal information to improve Lincoln's products or to provide you with services related to its products. For more information, please see our privacy policy.

*Notice of Confidentiality: **This email and its attachments may contain information that is privileged, confidential, proprietary, or subject to copyright belonging to the Lincoln National Corporation or its companies. This email is intended solely for the individual or entity to which it is addressed. If you are not the intended recipient, you are hereby notified that any distribution, copying, or action taken in relation to the contents of and attachments to this email is strictly prohibited and may be unlawful. Additionally, please notify the sender immediately and permanently delete any copies of this email and destroy any printouts.***

| | |
|---|---|
| **From:** | Terrence Bruff  tbruff15@gmail.com |
| **To:** | Chambers, Aleysia  Aleysia.Chambers@lfg.com |
| **Date:** | Tue, Jan 27, 2026, 6:09 PM |

You told me during our conversation that we had reviewed by file. Let me ask you the most important question? Did you have any intention of covering my educational needs when you called me?

**OPTIONAL RECORD EXCERPT 6**

**Exhibit H excerpt**

Jan. 11, 2026 Written Document Request (ECF No. 12, Att.11) - ROA.247-248

# Exhibit H

## Lincoln Financial's Refusal to Provide Claims File on Approved Claims and Failure to Produce Written Policy Supporting That Refusal

This exhibit establishes that Lincoln Financial maintained a policy of withholding claims files from claimants on approved claims, confirmed that policy in both a recorded phone call and a written email, and subsequently failed to produce any written documentation of that policy when Plaintiff specifically requested it in writing. The absence of a written policy, combined with the refusal to disclose, made it structurally impossible for Plaintiff to understand or exhaust his administrative remedies.

Authentication note: Document 1 is derived from a recorded phone call between Plaintiff and Lincoln Financial on January 9, 2026. A declaration from Plaintiff authenticating the transcript, or a copy of the recording, should accompany this exhibit at filing.

Cross-reference: The full transcript of the January 9, 2026 phone call is reproduced in Attachment H-1. Exhibit J, Documents 1 and 3 cite additional excerpts from the same transcript and email chain; no separate transcript attachment is included in Exhibit J.

### Document 1 — Phone Call Excerpt — January 9, 2026

| | |
|---|---|
| **Date:** | January 9, 2026 |
| **Participants:** | Charles Bruff (Plaintiff); Kristianne Corporan (Lincoln Financial, LTD Technical Specialist) |
| **Source:** | Transcript of recorded call (Charles_Christine_Transcript_With_Note January 9, 2026.docx); full transcript in Attachment H-1 |

**Charles:** How do I get copies of all of my previous reviews?

**Kristianne:** If we had a medical review done on an approved claim, that's not shared with a claimant.

**Charles:** So I would only get a copy of my file if you made an adverse determination?

**Kristianne:** Correct.

**Charles:** So you're not going to provide me the results of the reviews you've done so far unless you decide against me? I can't include those in my disability claim, even though they were favorable decisions.

**Kristianne:** That is correct.

**Charles:** But because you haven't denied me, you won't give me that information.

**Kristianne:** That's right. We don't share reviews on approved claims.

### Document 2 — Email from Kristianne Corporan — February 12, 2026

| | |
|---|---|
| **From:** | Corporan, Kristianne (Kristianne.Corporan@lfg.com) |
| **Sent:** | Thursday, February 12, 2026 |
| **To:** | Terrence Bruff (tbruff15@gmail.com) |
| **Subject:** | RE: Recall: Charles Bruff — LTD/STD Claim file from 2021 |

Terrence, I inadvertently hit forward instead of reply and recalled since there was no message. At this time, we have fully reviewed and responded to your request for a copy of your claim file. As previously explained, we are not able to provide the file to you.

Kristianne C. | LTD Technical Specialist | Lincoln Financial

---

## Document 3 — Plaintiff's Written Request for Internal Policy Supporting Withholding and Lincoln's Non-Response — January 11, 2026, 10:31 PM

| | |
|---|---|
| **From:** | Terrence Bruff (tbruff15@gmail.com) |
| **Date:** | Sunday, January 11, 2026, 10:31 PM |
| **To:** | Corporan, Kristianne; Thornton, Sasha; Wilkerson, Shericka (Lincoln Financial) |
| **Subject:** | Charles Bruff — follow up on conversation/claims file |
| **Source:** | January_13_Email.pdf (Gmail export), pages 8–10; YAML_5 (January 11, 2026 entry) |

The following is an excerpt from Plaintiff's January 11, 2026 email to Lincoln Financial, under the section titled "What I still need," item 2:

On Friday, I had my intake call with brown and brown. I need to start gathering information and My case manager told me that Lincoln will provide some medical information, but they won't provide my claims file to me or Brown. For the reasons I've already outlined I need to start some sort of process to actually get my claims file so that my Social Security application doesn't drag on. Is there an appeal process? Can you give me something in writing that says you won't provide me a copy of my claims file? If you can't provide it to me, can you provide it to Social Security directly? We have the same goal. I'm sure we can figure this out together.

> Lincoln Financial's response: No written policy was produced in response to this request. Kristianne Corporan's January 13, 2026, 4:33 PM response stated only that withholding the claims file was "standard practice" — with no documentary basis provided.
>
> Deemed exhaustion relevance: Lincoln denied Plaintiff access to his claims file (Documents 1 and 2), refused to produce any written policy justifying that denial (Document 3, non-response), and thereby deprived Plaintiff of the information necessary to understand and challenge the decision. A claimant cannot be required to exhaust a process whose rules he is not permitted to see.

---

## Attachment H-1 — Full Transcript — January 9, 2026 Recorded Phone Call

| | |
|---|---|
| **Source:** | Charles_Christine_Transcript_With_Note January 9, 2026.docx |
| **Note:** | Automated transcription. Speaker identified as "Kristianne" throughout; automated system initially misidentified speaker as "Christine." Speaker is Kristianne Corporan, LTD Technical Specialist, Lincoln Financial. |

# OPTIONAL RECORD EXCERPT 7

## Exhibit B excerpt

LTD Benefits Approval Letter, Sept. 12, 2025 (ECF No. 12, Att.4) - ROA.191

<u>X</u>   W-4S 2025 (optional)

___   Other

Please be aware that the condition for which you are approved disability benefits is subject to the following limitation:

> ***Mental Illness, Substance Abuse and/or Non-Verifiable Symptoms Limitation***
>
> *The benefit for Disability due to Mental Illness, Substance Abuse and/or Non-Verifiable Symptoms will not exceed a combined period of 24 months of Monthly Benefit payments while the Covered Person is insured under this policy.*
>
> *If the Covered Person is in a Hospital or Institution for Mental Illness and/or Substance Abuse at the end of the combined period of 24 months, the Monthly Benefit will be paid during the confinement.*
>
> *If the Covered Person is not confined in a Hospital or Institution for Mental Illness and/or Substance Abuse, but is fully participating in an Extended Treatment Plan for the condition that caused Disability, the Monthly Benefit will be payable to a Covered Person for up to a combined period of 36 months.*
>
> *In no event will the Monthly Benefit be payable beyond the Maximum Benefit Period shown in the Schedule of Benefits.*

If your condition no longer meets the criteria of the above limitation but remains disabling as supported by medical documentation, your claim will be evaluated for continued benefits beyond this limitation.

We will continue to review your claim and request medical documentation to evaluate your continued eligibility for benefits. Please note that approval at this time does not guarantee payments through the maximum benefit duration. It is imperative that you assist with the management of your claim going forward by providing prompt responses to our requests for information. Please notify our office immediately if your condition changes or your physicians alter your treatment plan.

If your benefit is overpaid Lincoln Life Assurance Company of Boston has the right to recover the amount overpaid in full. To avoid an overpayment, please notify our office immediately if you begin receiving other income for this same time period as outlined in your LTD Policy.

You may email the completed forms to disabilitydocuments@LFG.com or fax to the number below.

If you have any questions regarding this matter, please contact me.

Sincerely,

Shawn M.
Associate, Ltd Claims
On Behalf Of: Kristianne C.
Phone No.: (800) 989-7842 Ext. 14688
Secure Fax No.: (603) 334-0401

Attachments:   Direct Deposit Application
              W-4S 2025

26-50345.191

# OPTIONAL RECORD EXCERPT 8

## Exhibit L

Four Written Requests for Limitation Definition, Jan.-Mar. 2026 (ECF No. 12, Att.16) - ROA.313-316

# Exhibit L

## Plaintiff's Repeated Written Requests for Definition of the Mental Illness, Substance Abuse and/or Non-Verifiable Symptoms Limitation and Lincoln Financial's Refusal to Provide Specific Answers

This exhibit documents Plaintiff's repeated written requests for Lincoln Financial to define the Mental Illness, Substance Abuse and/or Non-Verifiable Symptoms Limitation applied to his LTD claim at approval — specifically requesting identification of which prong was applied, which conditions triggered it, and what causation analysis Lincoln performed. The exhibit spans January 4, 2026 through March 23, 2026. Document 4 records Lincoln's only written statement regarding the Non-Verifiable Symptoms prong, made informally and without a formal determination or ERISA § 503 notice, and its significance is addressed in the closing note.

> Cross-reference: Exhibit J documents Lincoln's acknowledgment that it has no published review schedule and can provide no further explanation of its review methodology. Exhibit L is the parallel exhibit for the limitation definition — a different subject matter but the same pattern of Lincoln being unable to articulate the basis for a consequential claims decision.

### Document 1 — Plaintiff's First Written Request for Limitation Definition — January 4, 2026, 7:52 PM

| | |
|---|---|
| **From:** | Terrence Bruff (tbruff15@gmail.com) |
| **Date:** | Sunday, January 4, 2026, 7:52 PM |
| **To:** | Corporan, Kristianne (Kristianne.Corporan@lfg.com) |
| **Subject:** | RE: Charles Bruff — LTD claim # 17729133 |
| **Claim No.:** | 17729133 |
| **Source:** | YAML_2B_2, Object_2b_2_Lincoln_Correspondence_Nov_2025_to_Jan_2026 |

Also,

I think I forgot to ask this question but I have Botox tomorrow and it reminded me.

My neurologist and both of my doctors from Menninger have asked me and so I'm gonna ask a question.

When you approved me for disability, I was put on a two-year limitation. Do you have a list of all of the conditions that Limitation applies to? Different Lincoln people have told me different things.

I'm hoping I can tell my neurologist when I have my appointment tomorrow because she was one of the doctors that asked me when she saw the letter.

Note: This request was sent the evening before Plaintiff's January 5, 2026 Botox appointment. It reflects that Plaintiff's own treating physicians — his neurologist and his Menninger doctors — had independently asked Plaintiff to clarify which conditions triggered the limitation. Lincoln did not provide a substantive response to this question.

## Document 2 — Lincoln Financial's Blanket Refusal — February 6, 2026, 2:31 PM

| | |
|---|---|
| **From:** | Corporan, Kristianne (Kristianne.Corporan@lfg.com) |
| **Date:** | Friday, February 6, 2026, 2:31 PM |
| **To:** | Terrence Bruff (tbruff15@gmail.com) |
| **Subject:** | RE: Charles Bruff — Claim Questions |
| **Source:** | YAML_2B_3, Object_2b_3_Lincoln_and_USAA_Correspondence_Feb_Mar_2026 |

Terrence,

We have already provided answers to your questions and there is no other information that will be provided to you.

Note: This blanket refusal was sent at 2:31 PM on February 6, 2026 — before Plaintiff's 4:05 PM email specifically identifying the limitation definition question as still unanswered (Document 3 below). Lincoln's position was that all questions had been answered before Plaintiff had the opportunity to enumerate which ones had not.

## Document 3 — Plaintiff's Second Written Request for Limitation Definition — February 6, 2026, 4:05 PM

| | |
|---|---|
| **From:** | Terrence Bruff (tbruff15@gmail.com) |
| **Date:** | Friday, February 6, 2026, 4:05 PM |
| **To:** | Corporan, Kristianne (Kristianne.Corporan@lfg.com); Wilkerson, Shericka (Shericka.Wilkerson@lfg.com) |
| **Subject:** | Charles Bruff — Limitation Definition and Policy Clarification |
| **Source:** | YAML_2B_3, Object_2b_3_Lincoln_and_USAA_Correspondence_Feb_Mar_2026 |

The following is the relevant excerpt from Plaintiff's February 6, 2026, 4:05 PM email. This email itemized multiple outstanding questions; only item 4, which bears on the limitation definition, is reproduced here. The full email is available upon request.

And just for evidence you know for if I do have to file a federal lawsuit.

**Item 4:** You have not answered my questions in regards to how you define psychiatric mental illness and subjective symptoms exclusion with enough specifics.

Note: This email was sent 94 minutes after Lincoln's blanket refusal (Document 2). Plaintiff specifically identified item 4 — the limitation definition — as a question that had not been answered. No substantive response to this specific question was received.

The limitation applied at Plaintiff's LTD approval (Exhibit B) is captioned "Mental Illness, Substance Abuse and/or Non-Verifiable Symptoms Limitation." The "and/or" construction means the 24-month cap is activated by any one prong independently. Lincoln never identified which prong was applied, which specific conditions triggered it, or what causation analysis was performed.

## Document 4 — Plaintiff's Written Request for Non-Verifiable Symptoms Criteria — March 21, 2026, 9:36 PM

| | |
|---|---|
| **From:** | Terrence Bruff (tbruff15@gmail.com) |
| **Date:** | Saturday, March 21, 2026, 9:36 PM |
| **To:** | Corporan, Kristianne (Kristianne.Corporan@lfg.com) |
| **Subject:** | RE: Charles Bruff — LTD claim # 17729133 |
| **Claim No.:** | 17729133 |

This is item 29 of Plaintiff's 33-item written document request submitted March 21, 2026. Plaintiff requested Lincoln's written criteria for what conditions or symptoms fall under the Non-Verifiable Symptoms definition beyond the examples listed in the policy. The policy defines Non-Verifiable Symptoms as "subjective complaints to a Physician which cannot be diagnosed using tests, procedures or clinical examinations typically accepted in the practice of medicine" and gives a non-exhaustive list including pain, fatigue, dizziness, numbness, and stiffness. Plaintiff asked Lincoln to identify the full operative standard it actually applies.

## Document 5 — Corporan Written Response to Item 29 — March 23, 2026, 5:24 PM

| | |
|---|---|
| **From:** | Corporan, Kristianne (Kristianne.Corporan@lfg.com) |
| **Date:** | Monday, March 23, 2026, 5:24 PM |
| **To:** | Terrence Bruff (tbruff15@gmail.com) |
| **Subject:** | RE: Charles Bruff — LTD claim # 17729133 |
| **Claim No.:** | 17729133 |

Corporan's verbatim response to item 29:

> *"Non-verifiable symptoms are not applicable for your claim."*

Note: Corporan's statement that Non-Verifiable Symptoms are "not applicable" to Plaintiff's claim is NOT treated as a formal determination or binding admission. Lincoln never produced a written definition of "Non-Verifiable Symptoms" at any point in this correspondence. Corporan cannot credibly assert that a term does not apply without first having defined it. The statement was made informally via email, without letterhead, without citation to any policy provision or internal standard, and without any accompanying ERISA § 503 notice of determination or appeal rights. It carries no procedural weight and could be disavowed by any future Lincoln representative as a mistake or non-binding communication.

The significance of Document 5 is not that it resolves the limitation question, but that it illustrates the same pattern documented throughout this exhibit: Lincoln applies and declines to apply contractual limitations without producing definitions, criteria, or formal determinations, leaving Plaintiff with no meaningful basis to verify, challenge, or rely on Lincoln's representations. Lincoln's blanket refusal to define the Non-Verifiable Symptoms term across Documents 1–3 preceded Plaintiff's specific itemization in Document 4 — meaning Lincoln's position

that the prong does not apply comes only after repeated written requests exposed that no definition had ever been produced.

26-50345.316

# OPTIONAL RECORD EXCERPT 9

## Exhibit DOC-REQ excerpt

Consolidated Timeline of Document Requests (ECF No. 12, Att.32) - ROA.448-449, 458

# Exhibit DOC-REQ

## Chronological Timeline of Plaintiff's Written Document Requests and Responses

This exhibit presents a chronological timeline of every written document request made by Plaintiff to Defendants and their vendors, spanning August 2025 through April 2026. Each entry identifies the date of the request, the document requested, the party to whom the request was directed, and the response received. Each entry references the exhibit or source document where the request is reproduced in full.

> This exhibit identifies every written document request made by Plaintiff to Defendants and their vendors from August 2025 through April 2026, together with the written responses received. Each entry identifies the date of a distinct written request, the document requested, the party to whom it was directed, and the response received. The January 9, 2026 oral requests are included solely to document Lincoln's written responses, which constitute independent written refusals to produce documents. The 30-day period under ERISA § 502(c)(1) and 29 C.F.R. § 2575.502c-1 runs separately from the date of each written request. Requests that were refused outright rather than simply not responded to evidence willful non-compliance.

## Category 1 — USAA Educational Assistance Plan

| Date | Document Requested | Directed To | Exhibit / Source |
|---|---|---|---|
| Aug 11, 2025 | Request for educational assistance eligibility determination while on STD/LOA<br>↳ *Guild deferred to USAA; USAA HR did not provide formal determination* | *Guild Education (USAA vendor)* | *Exhibit C (SPD at issue); email: "Re: Next steps: Transfer to Enterprise Resolution," Aug 11, 2025* |
| Aug 12, 2025 | Request that USAA resolve ambiguity in SPD eligibility language for disabled employees<br>↳ *No formal written determination issued* | *Guild / Kelli Gowan (USAA HR)* | *Exhibit C; emails: "Re: Next steps: Transfer to Enterprise Resolution," Aug 12, 2025 (multiple)* |
| Feb 5, 2026 | Request for formal denial letter for educational assistance (Fall 2025 and Spring 2026)<br>↳ *Case closed; no formal denial letter provided* | *USAA Health & Welfare Benefits Center (BenefitConnect Case 133005)* | *Exhibit EDU1* |
| Feb 9, 2026 | Renewed request for formal denial letter on letterhead; explicit request for denial letter to provide to state vocational rehab<br>↳ *No formal denial letter provided* | *USAA Health & Welfare Benefits Center (BenefitConnect Case 133123)* | *Exhibit EDU1* |
| Feb 9, 2026 3:13 PM | Standalone written request for confirmation that no denial letter on letterhead would be provided<br>↳ *No direct written response to this specific question* | *USAA Health & Welfare Benefits Center (BenefitConnect Case 133123)* | *BenefitConnect message: "Insurance Carrier/Claim Issue Case ID: 133123," Feb 9, 2026, 3:13 PM* |
| Feb 9, 2026 3:16 PM | Request for specific contact name and documentation sufficient for Texas | *USAA Health & Welfare Benefits Center* | *BenefitConnect message: "Insurance Carrier/Claim Issue* |

| | Vocational Rehabilitation program, beyond the general HR number ↳ *No substantive response; general HR number only previously provided* | *(BenefitConnect Case 133123)* | *Case ID: 133123," Feb 9, 2026, 3:16 PM* |
|---|---|---|---|
| Mar 2, 2026 | Documented verbal confirmation from USAA Benefits Center (Chris) that no formal denial letter would be issued for either semester; written request for written confirmation of that refusal from the Benefits Center ↳ *No written response confirming the refusal received* | *USAA Health & Welfare Benefits Center (BenefitConnect Case 134012)* | *Exhibit EDU1 (March 2 documentation email, Case ID 134012)* |
| Mar 25, 2026 1:02 AM | Resubmission: APIP SPD 2025 (item 22); educational assistance denial Fall semester (item 23); educational assistance denial Spring semester (item 24). Flagged as urgent for March 26 state VR appointment — state financial review requires formal denial documentation; omitting would constitute fraud ↳ *No response received prior to appointment* | *USAA HR (humanresources@usaa.com)* | *Email: "Charles Bruff (Current LTD claim) — Weekly Document Request Summary — Week 2," Mar 25, 2026, 1:02 AM (items 22–24)* |
| Apr 4, 2026 | Week 3 renewed request: APIP SPD 2025; formal written denial of educational assistance (Fall); formal written denial of educational assistance (Spring) — flagged as needed for state VR financial audit; employee handbook in effect March 22, 2025; written documentation of denial of active employee benefits during STD phase (medical, dental, life, wellness) ↳ *No response received* | *USAA HR (humanresources@usaa.com)* | *Email: "Charles Bruff (Current LTD Claim) — Weekly Document Request Summary — Week 3 (USAA Items)," Apr 4, 2026* |

### Category 2 — LTD Claims File

| Date | Document Requested | Directed To | Exhibit / Source |
|---|---|---|---|
| Jan 9, 2026 Phone call (oral — see note) | Request for copies of all previous medical reviews [ORAL REQUEST — included to document written refusal] ↳ *"reviews on approved claims are not shared with claimants"* | *Kristianne Corporan / Lincoln Financial (phone call)* | *Exhibit H, Document 1; Exhibit J, Document 1* |
| Jan 11, 2026 | Written request for appeal process and written confirmation that claims file will not be provided; asked if file can be sent directly to Social Security ↳ *No appeal process provided; no written policy produced; Corporan responded Jan 13: "standard practice"* | *Corporan, Thornton, Wilkerson (Lincoln)* | *Email: "Charles Bruff — follow up on conversation/claims file," Jan 11, 2026, 10:31 PM; Exhibit H, Document 3; Exhibit J, Document 3* |

26-50345.449

| Category 6 — SSDI-Related Document Requests | | | |
|---|---|---|---|
| **Date** | **Document Requested** | **Directed To** | **Exhibit / Source** |
| Jan 25, 2026 5:19 PM | Written notice to Lincoln of SSA no-omissions obligation; request that claims file be provided to Social Security directly<br>↳ *Deflected to Brown & Brown vendor* | *Kristianne Corporan (Lincoln)* | *Exhibit K, Document 1* |
| Jan 27, 2026 | Request for SSDI application deadline information and extension if needed<br>↳ *Deadline confirmed as 45 days after Feb 2, 2026; no extension offered* | *Kristianne Corporan (Lincoln)* | *Email: "RE: Charles Bruff — LTD/STD Claim file from 2021," Jan 27, 2026, 7:50 PM* |
| Feb 12, 2026 10:25 AM | Request for formal denial letter confirming refusal to provide claims file, for inclusion in SSA expedited reinstatement application<br>↳ *Refused* | *Kristianne Corporan (Lincoln)* | *Email: "RE: Charles Bruff — LTD/STD Claim file from 2021," Feb 12, 2026, 10:25 AM* |
| Mar 20, 2026 7:02–7:04 PM | Written follow-up asserting SSA no-omissions obligation; request for documentation of basis for claims file withholding; noted SSA cannot request information it does not know exists<br>↳ *Corporan Mar 20, 4:13 PM: "We will not provide you with a copy of the LTD or STD claim file unless an adverse claim determination is made" and "You may share the email response with Social Security if they require such documentation"* | *Kristianne Corporan (Lincoln)* | *Emails: Bruff to Corporan, "RE: Charles Bruff — LTD claim # 17729133," Mar 20, 2026, 7:02 PM and 7:04 PM; Corporan response Mar 20, 2026, 4:13 PM* |
| Mar 21, 2026 9:36 PM | Request for Lincoln's written SSDI coordination standards: criteria used to determine SSDI candidacy; policy on what Lincoln provides to SSA through Brown & Brown; policy on how Lincoln reconciles frequent review schedule with requiring SSDI application (33-item request, items 31–33)<br>↳ *Mar 23: "31–33 There are no guidelines or additional information to provide."* | *Kristianne Corporan (Lincoln)* | *Email: Bruff to Corporan, "RE: Charles Bruff — LTD claim # 17729133," Mar 21, 2026, 9:36 PM (items 31–33); Corporan response Mar 23, 2026, 5:24 PM* |
| Mar 25, 2026 8:52 AM | Follow-up challenging Lincoln's claim that it makes disability determinations independently of Social Security; requested written explanation of how Lincoln reconciles SSDI application requirement with its own review schedule<br>↳ *Corporan: "We make ongoing disability determinations independently of Social Security. Applying for or being approved for Social Security does not change how* | *Kristianne Corporan (Lincoln)* | *Email: Corporan to Bruff, "RE: Charles Bruff — LTD claim # 17729133," Mar 25, 2026, 8:52 AM; Exhibit SS1, Document 2* |

26-50345.458

**OPTIONAL RECORD EXCERPT 10**

**Notice of Production Deficiency excerpt**

(ECF No. 28, Att.1) - ROA.739-740

Charles T. Bruff
4835 Medical Dr. #29643
San Antonio, Texas 78229
318-452-8978
Plaintiff in Pro Se

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**CHARLES T. BRUFF,**
    Plaintiff,
v.
**USAA HEALTH AND WELFARE BENEFITS PLAN,**
**USAA EDUCATIONAL ASSISTANCE PLAN,**
**UNITED STATES AUTOMOBILE ASSOCIATION,**
**AND LINCOLN NATIONAL LIFE INSURANCE**
**COMPANY,**
    Defendants.

Case No. SA26CA1720

**PLAINTIFF'S NOTICE OF PRODUCTION DEFICIENCY:**

**THIRD-PARTY PROTECTED HEALTH INFORMATION**

**COMMINGLED IN STD CLAIMS FILE PRODUCTION**

Plaintiff Charles T. Bruff, appearing pro se, respectfully submits this Notice of Production Deficiency to inform the Court of a specific and serious defect discovered in Defendant Lincoln National Life Insurance Company's ("Lincoln") April 12, 2026 claims file production. The production contains the protected health information ("PHI") of a third party — a different USAA employee who is not a party to this litigation — commingled within Plaintiff's Short-Term Disability claims file. Plaintiff files this Notice to create a record of the defect, to document Plaintiff's identification and reporting of the issue, and to notify the Court that a corrected production and regulatory response are required.

**I. BACKGROUND**

26-50345.739

On April 12, 2026, counsel for Lincoln, Iwana Rademaekers of the Law Offices of Iwana Rademaekers, P.C., delivered Lincoln's claims file production to Plaintiff via an OneDrive link. The production was represented to include the complete claims file for LTD Claim No. 17729133 and STD Claim No. 17118669. The production totaled approximately 2,500 pages across both files.

On April 13, 2026, Plaintiff sent defense counsel a written inquiry identifying five specific categories of documents and asking whether the production was complete with respect to each. On April 14, 2026, defense counsel responded that everything was included but that she would need to confirm one category. On April 27, 2026 — after an additional review — defense counsel confirmed in writing: "I have confirmed that the link we sent to you includes everything that Lincoln reviewed to issue its decision regarding your claim for benefits." Plaintiff notified defense counsel that same day that AI tools would be used to analyze the production. Plaintiff waited to begin full analysis pending this confirmation of completeness.

Plaintiff has been processing the production using AI tools to assist with case analysis, a practice Plaintiff disclosed to the Court in a prior AI disclosure filing. During review of the STD 2021 claims file, the AI identified a discrepancy: eight pages bearing Bates numbers Lincoln/Bruff 2021 394 through Lincoln/Bruff 2021 401 do not belong to Plaintiff. This discrepancy was not identified by defense counsel during her initial review of the file, nor during the second review that preceded her April 27 completeness confirmation, nor at any prior point in Lincoln's internal claims administration process. It was identified by AI tools.

## II. THE DEFECT

Pages Lincoln/Bruff 2021 394 through Lincoln/Bruff 2021 401 contain the medical records of a different USAA employee (the "Third-Party Claimant"). Specifically, these eight pages contain:

1. A completed FMLA certification belonging to the Third-Party Claimant, including her date of birth and FMLA claim number;

2. An Attending Physician Statement signed by the Third-Party Claimant's treating physician; and

**OPTIONAL RECORD EXCERPT 11**

**Exhibit REG excerpt**

Regulatory Background re 29 C.F.R. Sec. 2560.503-1, cover and closing pages of 13 (ECF No. 31, Att.1) - ROA.796, 806

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

**CHARLES T. BRUFF,**

Plaintiff,

v.

**USAA HEALTH AND WELFARE BENEFITS PLAN, et al.,**

Defendants.

Case No. SA26CA1720

**EXHIBIT REG — NOTICE OF REGULATORY BACKGROUND**

**Department of Labor Rulemaking History:**

**29 C.F.R. § 2560.503-1 and the Disability Claims Procedure Final Rule**

and

**DOL Interpretive Guidance on ERISA § 104(b)(4)**

## I. THE 1977 FRAMEWORK AND ITS ORIGINS

The Department of Labor first promulgated claims procedure regulations under the Employee Retirement Income Security Act of 1974 at 29 C.F.R. § 2560.503-1 in 1977. That framework established baseline procedural requirements for benefit claims under ERISA-covered plans, including notice of adverse determinations and the right to a full and fair review. The 1977 rule was designed primarily around health benefit claims and applied to disability benefit claims without modification or distinction.

The original framework imposed general disclosure obligations on all plan administrators. It required that adverse benefit determination notices state the specific reasons for denial and the plan provisions relied upon. It did not, however, require disclosure of internal guidelines, protocols, or criteria used to evaluate claims. It imposed no independence requirements on the reviewers making benefit determinations. And it did not address the relationship between plan determinations and findings by the Social Security Administration.

For health benefit claims, these gaps were largely addressed through industry practice: health insurers voluntarily developed and published coverage policies and clinical criteria that governed their benefit determinations. Participants and their treating providers could access these standards. Disputes could be framed with reference to disclosed criteria. The disclosure baseline the 1977 rule established proved workable in the health context.

cbruff13@outlook.com
Plaintiff in Pro Se

Dated: May 3, 2026

26-50345.806

# OPTIONAL RECORD EXCERPT 12

## Exhibit FJC

FJC Feb. 2024 Default-Practices Survey (ECF No. 39, Att.1) - ROA.981-982

**EXHIBIT FJC**

**Cover Sheet and Summary of Relevant Findings**

Federal Judicial Center
Default and Default Judgment Practices in the District Courts
February 2024
Available at:
https://www.fjc.gov/sites/default/files/materials/26/FJC_report_Rule_55_February_2024.pdf

### PURPOSE OF THIS EXHIBIT

This exhibit is submitted in support of Plaintiff's Motion for Reconsideration of Text Order Mooting Plaintiff's Application for Clerk's Entry of Default (Doc. 34). It provides the source citation and relevant findings from the Federal Judicial Center's February 2024 comprehensive study of default and default judgment practices across all ninety-four federal district courts.

Plaintiff submits this exhibit to support the argument that mooting a default application on the ground that the defaulting party filed a post-deadline, post-default, unauthorized motion to dismiss has no precedent in the Federal Rules, in published case law, or in the documented practice of any federal district court.

### RELEVANT FINDINGS FROM THE FJC REPORT

The FJC report surveyed default procedures across all ninety-four federal district courts. Its findings relevant to this motion are as follows:

1. Two-Step Structure Is Universal. The report documents the two-step structure of Rule 55 — entry of default under Rule 55(a), followed by entry of default judgment under Rule 55(b) — as the universal framework across all district courts. The report identifies no third procedural category.

2. Mootness of Default Applications Not Documented. The report surveyed the actual practices of all ninety-four district courts in handling default applications, including

26-50345.981

variations in local rules, clerk practices, and judicial involvement. It does not document, in any district, the practice of mooting a default application on the ground that the defaulting party subsequently filed a motion to dismiss.

3. Clerk-Chambers Consultation Documented. The report notes that consultation between the clerk's office and chambers is common prior to entry of default, and that in at least one district, internal procedures require the courtroom deputy to check with the judge's law clerk. The report documents this as a practice that sometimes delays entry but does not eliminate it. It does not document consultation resulting in a mootness disposition.

4. Recognized Alternatives to Entry Are Denial and Set-Aside. The report identifies the following recognized alternatives to entry of default: denial of the application where service was defective, denial where the defendant has otherwise defended, and set-aside under Rule 55(c) upon a showing of good cause. Mootness is not among the recognized alternatives documented in the report.

### NOTE ON AVAILABILITY

The complete FJC report is publicly available at the URL listed above and is published by the Federal Judicial Center, an agency of the United States Courts. Plaintiff will provide a printed copy of the complete report to the Court upon request. The URL resolves to a PDF document of approximately 100 pages. The findings summarized above appear throughout the report in the sections addressing Rule 55(a) entry of default procedures and clerk practices.

Respectfully submitted,

/s/ Charles T. Bruff
Charles Terrence Bruff
Pro Se Plaintiff
May 19, 2026

26-50345.982

**OPTIONAL RECORD EXCERPT 13**

**Exhibit S-504 excerpt**

Section 504/Article III Legislative History and Empirical Record (ECF No. 41, Att.1) - ROA.1005-1019

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

CHARLES TERRENCE BRUFF,

Plaintiff,

v.

USAA EDUCATIONAL ASSISTANCE PLAN, et al.,

Defendants.

Case No. 5:26-CV-01720-XR

## EXHIBIT S-504
### SECTION 504 OF THE REHABILITATION ACT OF 1973:
### HISTORICAL DEVELOPMENT, JUDICIAL BRANCH APPLICABILITY,
### AND THE STRUCTURAL PROCESS GAP

Filed in Support of Plaintiff's Motion for Stay and Appellate Brief

No. 26-50345 (5th Cir.)

## PREFATORY NOTE

This exhibit documents the legislative and regulatory history of Section 504 of the Rehabilitation Act of 1973, the federal judiciary's self-declared exemption from Section 504 and the Americans with Disabilities Act, the Judicial Conference's September 1995 accommodation policy and its structural limitations, and the constitutional and statutory arguments that the exemption claim cannot survive scrutiny under the Civil Rights Restoration Act of 1988 and Tennessee v. Lane, 541 U.S. 509 (2004). This exhibit is submitted in support of Plaintiff's motion for stay, which cites lack of accommodation as an irreparable harm. This exhibit presents the Section 504 and Due Process accommodation arguments as a question of first impression in the Fifth Circuit.

1

26-50345.1005

## SECTION 1 — THE STATUTE AND ITS ORIGINAL SCOPE (1973)

Section 504 of the Rehabilitation Act of 1973 states: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794.

Section 504 was the first federal civil rights law in the United States to explicitly address the rights of disabled people, shifting disability from a medical classification to a civil rights framework. The provision first appeared as Section 503 of the Vocational Rehabilitation Act of 1972, which was pocket-vetoed by President Nixon. Congress re-enacted it as Section 504 of the Rehabilitation Act of 1973, Pub. L. 93-112, 87 Stat. 355 (Sept. 26, 1973).

The statute's promise was not immediately realized. After Section 504 was signed into law, the federal regulations needed to enforce it were delayed for four years. This delay prompted disability advocates to organize the historic 28-day sit-in at the Federal Building in San Francisco in 1977, demanding implementation. The Department of Health, Education, and Welfare issued the first implementing regulations in 1977. 45 C.F.R. Part 84 (1977). Those regulations established the foundational requirement that covered entities provide reasonable accommodations and engage in an interactive process to identify appropriate modifications for disabled individuals.

The Supreme Court interpreted Section 504 in Southeastern Community College v. Davis, 442 U.S. 397 (1979), holding that Section 504 requires covered entities to make "reasonable accommodations" when necessary to provide disabled individuals with "meaningful access" to their programs — not merely formal or theoretical access. The meaningful access standard has governed Section 504 analysis ever since.

26-50345.1006

(process modification) cannot be unavailable where the greater power (abolition) is established. A court whose very existence depends on a congressional grant cannot claim immunity from the process requirements Congress attaches to that grant.

The congressional governance of the court process is comprehensive and longstanding. The Federal Rules of Civil Procedure are promulgated by the Supreme Court but authorized and governed by Congress under the Rules Enabling Act, 28 U.S.C. §§ 2071-2077. Section 2072 explicitly gives Congress power to supersede any rule by statute. The Federal Rules of Appellate Procedure operate under the same framework. The Declaratory Judgment Act, 28 U.S.C. § 2201, creates an entire category of relief by congressional statute. The right to proceed in forma pauperis under 28 U.S.C. § 1915 is a congressional creation. Federal subject matter jurisdiction is defined by Congress. None of these required a specific Article III grant. None has been held to violate judicial independence. The Article III argument, if accepted, would invalidate not only Section 504 but the Federal Rules of Civil Procedure, Section 1915, and the Declaratory Judgment Act — results no court has reached or suggested.

Section 504 asks courts to modify the process by which litigants access the court — the same function the FRCP performs. Section 504 does not ask courts to decide cases differently. It asks courts to ensure that disabled litigants can participate in the process. That is structural accommodation, not judicial interference. The Article III independence argument was never designed to insulate courts from process requirements that facilitate equal access. It was designed to protect judicial decision-making from political pressure. Section 504 touches neither.

The judiciary's exemption claim is further undermined by the DOJ Office of Legal Counsel's authoritative 1983 opinion on Section 504's scope. The OLC concluded that "Executive agency" as used in Section 504 "must be construed broadly to include all government entities which are not within either the legislative or judicial branches." DOJ OLC, Applicability of Section 504 of the Rehabilitation Act to Certain Governmental Entities (May 3, 1983), 7 Op. O.L.C. 110. The OLC applied this principle to conclude that the Federal Reserve System and the Federal Deposit Insurance Corporation — neither of which is a traditional executive agency in

5

## SECTION 6 — TENNESSEE v. LANE AND THE DUE PROCESS FOUNDATION

Tennessee v. Lane, 541 U.S. 509 (2004), established that access to courts is a fundamental right protected by the Due Process Clause of the Fourteenth Amendment. The Court held that Congress validly exercised its Section 5 enforcement authority when it required states to make their courthouses and court proceedings accessible to disabled persons. The Court's reasoning was constitutional, not merely statutory: the ADA was the legislative vehicle; the Due Process Clause was the constitutional source.

The Due Process dimension of Tennessee v. Lane has implications beyond ADA Title II. If access to courts is a fundamental right protected by the Due Process Clause, and if a disabled litigant's disability specifically impairs meaningful access to that right in documented ways, then the Due Process Clause independently requires accommodation — regardless of whether Section 504 or the ADA formally applies. The Judicial Conference's self-declared statutory exemption does not address the constitutional question. A court may be exempt from a statute's reach while still being bound by the constitutional requirement that the statute was designed to implement.

As the Supreme Court observed in Tennessee v. Lane, "failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion." 541 U.S. at 531-32. The Judicial Conference's 1995 policy predates Tennessee v. Lane by nearly a decade. It has never been subjected to constitutional scrutiny under the due process framework that decision established. The question of whether the Judicial Conference's accommodation framework — which provides nothing for Plaintiff's documented disability profile — satisfies the constitutional minimum recognized in Tennessee v. Lane is a question of first impression.

Section 504 in the ERISA disability context carries a dimension that makes the due process argument particularly acute. Every plaintiff in an ERISA long-term disability case is disabled by definition. A person cannot have an LTD claim without a qualifying disability. The accommodation failures documented in this case therefore do not fall on a random subset of ERISA litigants. They fall predictably and structurally on every plaintiff in the entire category of cases. Section 504 is Congress's specific statutory implementation of what due process requires

9

26-50345.1013

efforts are needed to foster greater trust among people with disabilities and ensure equal justice for all." Pew Charitable Trusts, *People With Disabilities Are More Likely Than Those Without to Have Court Experience* (Jan. 2026).

These disadvantages compound. A disabled pro se litigant in ERISA disability litigation — which is itself one of the most complex areas of federal statutory law — faces every layer simultaneously: the ERISA complexity disadvantage, the pro se outcome gap, the disability-specific barriers to accessing the accommodation process, and the stigma that attaches to disabled litigants' credibility. These are not independent risks that can be evaluated separately. They interact and multiply.

## SECTION 9 — THE UNIVERSAL DIMENSION

Disability is not a fixed characteristic of a defined population. Anyone can become disabled at any time — through illness, injury, aging, or the progression of conditions that may have been present but not yet disabling. The accommodation framework that protects disabled litigants today protects everyone who might need it tomorrow. A court system that provides meaningful access to disabled litigants benefits the legitimacy and integrity of the entire system for everyone who uses it.

Disability also cuts across every demographic, ideological, socioeconomic, and political line. It is not a partisan issue. It is not a special interest. It is the human condition that any litigant, any juror, any witness, any attorney, or any judge may encounter at any point in their lives. The accommodation framework that exists at the time a person needs it is the one they will encounter. The argument that federal courts should provide meaningful accommodation for disabled litigants is not an argument for special treatment. It is an argument for equal treatment — the same treatment that Congress required of employers, schools, healthcare providers, public accommodations, and state courts decades ago, and that those institutions have provided without the process collapsing.

Federal courts enforce Section 504 and the ADA against every other category of covered entity. They issue injunctions requiring employers to engage in interactive processes. They find

13

defendants liable when the accommodation framework functions as a barrier rather than a solution. The courthouse where those judgments are entered should not apply a lesser standard to itself than the standard it imposes on every other institution whose practices come before it.

## SECTION 10 — QUESTIONS OF FIRST IMPRESSION PRESENTED FOR APPELLATE REVIEW

This exhibit supports the following questions of first impression in the Fifth Circuit:

1. Whether the federal judiciary's self-declared exemption from Section 504 of the Rehabilitation Act survives scrutiny under the Civil Rights Restoration Act of 1988, which Congress enacted specifically to override the program-specific reading of Section 504 on which the exemption appears to rest, and which the Judicial Conference never engaged with when it adopted its September 1995 accommodation policy.

2. Whether the Article III independence argument supporting the judiciary's exemption claim is consistent with Congress's established broad power to structure the lower courts, make procedural rules for them, regulate their jurisdiction, and — as confirmed in Stuart v. Laird, 5 U.S. (1 Cr.) 299 (1803) — abolish them entirely.

3. Whether the Judicial Conference's 1995 accommodation policy, which is limited to sign language interpreters and auxiliary aids for sensory impairments at in-person hearings and provides no interactive process for any other disability in any other litigation context, satisfies the constitutional minimum recognized in Tennessee v. Lane, 541 U.S. 509 (2004), for meaningful access to courts by disabled litigants.

4. Whether, in the ERISA long-term disability context specifically — where every plaintiff is disabled by definition — the absence of a meaningful accommodation process for neurodevelopmental disabilities constitutes a violation of the Due Process Clause's guarantee of meaningful access to the courts, independently of whether Section 504 formally applies.

26-50345.1018

**5.** Whether a court that enforces Section 504's interactive process requirement against employers, schools, healthcare providers, and state courts may apply a lesser standard to its own accommodation framework than it imposes on those covered entities.

Respectfully submitted,

Charles Terrence Bruff
4835 Medical Dr. #29643
San Antonio, Texas 78229
(318) 452-8978
cbruff13@outlook.com
Plaintiff-Appellant, Pro Se

26-50345.1019

# CERTIFICATE OF SERVICE

I certify that on August 10, 2026, a copy of these Record Excerpts was served on all counsel of record through the Court's CM/ECF electronic filing system, and by first-class mail to any counsel not registered for electronic service.

Dated: August 10, 2026

Charles Terrence Bruff

/s/ Charles T Bruff