No. 26-50345

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

CHARLES TERRENCE BRUFF,
Plaintiff-Appellant,

v.

LINCOLN NATIONAL LIFE INSURANCE COMPANY;
USAA EDUCATIONAL ASSISTANCE PLAN,
Defendants-Appellees.

---

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division
Case No. 5:26-CV-01720-XR
Honorable Xavier Rodriguez, District Judge

---

# PLAINTIFF-APPELLANT'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO SUBMIT EXHIBITS SSDI-CONDUCT AND DISCR-PATTERN FOR JUDICIAL NOTICE UNDER FEDERAL RULE OF EVIDENCE 201(b)(2)

## INTRODUCTION

This motion asks only whether two exhibits satisfy F.R.E. 201(b)(2). It is not a vehicle for relitigating the appeal itself. Nothing in this reply narrows, waives, or alters the arguments the Opening Brief already made. Since Lincoln's Response spent more than half its length recapping district court orders rather than engaging the exhibits, Plaintiff addresses these orders because he fears silence may be read as a concession.

Before proceeding to the merits, this is the third time Lincoln has filed nearly the same sentence. Lincoln's Response now states: "Although it is somewhat unclear what relief Bruff seeks from Lincoln in the District Court case, the allegations against Lincoln in the Complaint appear to stem from Bruff's communications with Lincoln's claims department regarding access to his claim file." Resp. 2 (Doc. 57). The same sentence appeared on May 2nd, Doc. 30 at 1–2, ROA.748–749, and on May 19th, in Lincoln's MTD, Doc. 35 at 4, ROA.888 ("it is unclear what relief Plaintiff seeks from Lincoln").

That characterization is incompatible with the pleading it purports to describe. The complaint states eight claims for relief. At least four — the First, Second, Third, and Seventh — are pled directly against Lincoln, and none is a simple dispute over "access to his claim file": the First seeks production of thirteen categories of withheld documents, Compl. ¶43 (ROA.22–24); the Second seeks a declaration that Lincoln's Mental Illness/Non-Verifiable Symptoms Limitation was

applied without required disclosures, Compl. ¶¶46–52 (ROA.25, 28); the Third is separately itemized, Compl. WHEREFORE cl., Third Claim (ROA.34–35); and the Seventh seeks to enjoin Lincoln's SSDI-collection practices, Compl. ¶111 (ROA.59–60). Lincoln's own MTD elsewhere in this litigation catalogs several of these same claims by number and paragraph range, Doc. 35 at 5 n.10, ROA.889. A characterization that reduces an eight-claim complaint to a dispute over claim-file access is difficult to reconcile with having read it.

## BACKGROUND

**The Document-Production Dispute.**

The same categorical labels — unclear, unfounded, irrelevant, not a benefit — recur across every filing, regardless of what is actually before the Court. Here: despite repeated gestures at a supposed lack of clarity in Plaintiff's filings, none of Lincoln's filings identify what is unclear. Plaintiff's First Claim itemizes thirteen categories of withheld documents. Compl. ¶43 (Doc. 1 at 15–17; ROA.22–24). The Response's claim that producing "a full copy of the claim file" on April 12th "effectively moots this claim" does not address any other category. Resp. 4 (Doc. 57).

Consistent with the pattern addressed below, the Response does not engage with what was actually pled, filed, or admitted. It repeats a characterization instead.

FRCP 12(e) permits a motion for a more definite statement where a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Despite this procedural device, Lincoln filed no such motion.

**The Recap.**

Lincoln's Response forecloses its premise. At page 5, Lincoln characterizes Plaintiff's district court motions — several of which are the subject of this appeal — as "a series of unfounded and irrelevant motions," Resp. 5 (Doc. 57). Lincoln offers that as settled fact, though deciding it is the appeal's purpose.

What follows confirms it. Rather than turning to the judicial-notice question presented, Lincoln spends the next two-plus pages on a five-item, order-by-order recap of the entire appeal, Resp. 5–7 (Doc. 57) — none of it concerning Exhibits SSDI-CONDUCT or DISCR-PATTERN, Rule 25.2.7 germaneness, or Rule 201(b)(2). Lincoln's actual argument does not begin until page 7. Resp. 7 (Doc. 57) ("ARGUMENT"). A response to a two-exhibit motion that spends its first seven pages relitigating the appeal is doing something other than opposing judicial notice.

Nor is that recap neutral: its third entry — the May 4th order denying Plaintiff's Motion for Corrective Action — was contradicted by evidence already in the record. Lincoln's counsel Rademaekers knew the district court's characterization of the third party's medical records as merely "allegedly" disclosed, Resp. 6–7 (Doc. 57), was false: she had confirmed the disclosure in

writing three days earlier — "Those documents were erroneously placed in your STD claim file and will be removed," Doc. 53 at 21 (filed 08/10/2026) — without disclosing that admission to either court. Each of the five orders recapped will be squarely before this Court when Lincoln responds to the Opening Brief.

**The Broader Pattern.**

Taken together, these are not isolated lapses. Lincoln referred Plaintiff to its vocational rehabilitation program, then closed that referral the next day with a no ERISA § 503 denial. (Exhibit F, ROA.232–239). Only once litigation began did Lincoln argue that vocational rehabilitation "is not a benefit under the Policy," Doc. 35 at 4 (ROA.888) — a position Rademaekers has repeated since, on appeal, Doc. 37 at 4–5, and to the EBSA, Doc. 53 at 49, without ever engaging Exhibit F. Lincoln pressed a standard of review foreclosed by state law and this Circuit's Ariana M. decision, across nine cases in five circuits. Finally, she did not disclose to the district court that a third party's medical records were exposed in a certified claims file, which led to the court's "alleged" characterization. Individually, these can be seen as ethical lapses. Together, they form a pattern that calls into question candor to the tribunal.

## ARGUMENT

### I. Lincoln's Germaneness Objection Misdescribes the Motion and Ignores Non-Opposition to the Research.

Lincoln's germaneness argument treats the exhibits as though their relevance must be established from the exhibits alone, ignoring what this Court authorized in granting Plaintiff's PACER fee-exemption motion — and what that motion told Lincoln, in writing, the research would investigate. Resp. 6–7 (Doc. 57). The motion did not describe a general interest in comparative case law; it stated that Plaintiff "anticipates arguing... that Lincoln National's counsel has systematically cited Cusson v. Liberty Life Assurance Co. of Boston, 592 F.3d 215 (1st Cir. 2010) — a pre-2016 First Circuit decision superseded in this jurisdiction by Ariana M. v. Humana Health Plan of Tex., Inc., 884 F.3d 246 (5th Cir. 2018) (en banc) — across multiple filings after being notified of the governing framework . . . , and that this constitutes bad-faith litigation conduct warranting attorney fees under ERISA § 502(g)(1)." Doc. 15 at 3. That is not a request to survey the law generally; it asks whether Lincoln's counsel has a practice of arguing a standard of review she knows is inapplicable.

The same strategic non-disclosure runs through the entire Response. Lincoln did not oppose the research motion. Exhibit DISCR-PATTERN is the product of that inquiry: it documents Lincoln's counsel repeatedly asserting the arbitrary-and-capricious standard in jurisdictions with a state discretionary-clause ban, without pleading ERISA § 514 preemption, and, in this Circuit, without citing Ariana M. — the same pattern across nine cases in five federal circuits.

Exhibit SSDI-CONDUCT was not what Plaintiff originally sought. It surfaced incidentally in the authorized research. It documents a related pattern in Lincoln's SSDI-lien practice bearing on Plaintiff's 42 U.S.C. § 407 argument at II.E. Lincoln argues the exhibits are germane only if tied to the five recapped orders, Resp. 5–7 — but that misdescribes what Lincoln knew this research was for when it chose non-opposition.

Lincoln argues Exhibit SSDI-CONDUCT's discussion of its MTD is not germane because of the district court stay and no issued rulings. Resp. 3–4 (Doc. 57). The stay exists only because Plaintiff appealed the orders themselves, including denial of the preliminary injunction. Absent that appeal, the MTD would have proceeded naturally. Neither exhibit requests a ruling on the motion's merits; both cite it as evidence of the same pattern this appeal is about: a Lincoln filing that, as argued elsewhere in this litigation, "maps no argument to any specific claim and cites no plaintiff exhibit across a 75-page, 8-claim complaint." Doc. 31 at 17 (filed 07/08/2026); infra Section II. Lincoln's litigation style is relevant. If anything, the MTD is an additional instance of the pattern, only unresolved for reasons of Plaintiff's own making, not Lincoln's.

Lincoln's non-opposition of the fee waiver matters beyond germaneness. The waiver motion explained that Plaintiff's resources do not "replicate PACER's function for purposes of reviewing actual litigation conduct in comparable cases,"

Doc. 15 at 4. Research into Lincoln's conduct across multiple proceedings was the purpose. Having let the waiver go forward unopposed, Lincoln cannot object to its findings. FRAP 27(b) gave Lincoln a specific vehicle to challenge the order — a motion to reconsider, vacate, or modify it — and "[t]imely opposition filed after the motion is granted... does not constitute a request" for that relief; a separate motion is required. Lincoln never filed one. That makes this an objection to form, not to the information itself. Denying notice of exactly the research this Court authorized would leave that authorization without practical effect on the record it was meant to inform.

Lincoln did not dispute that the filings described in the exhibits exist, are public, or say what Plaintiff represented. If Lincoln believed that research should not reach this record, the motion naming the inquiry — not the motion offering its results — was the place to say so.

This pattern is not tangential to the orders under review — it explains why they exist in the form they do. Each order recapped above accepted Lincoln's characterization — unclear, unfounded, irrelevant, moot, merely "alleged" — without requiring Lincoln to engage the contradicting record. Exhibit DISCR-PATTERN establishes that this is not incidental to Plaintiff's case. It is Lincoln's litigation style across nine cases in five circuits. That evidence bears on whether

the district court's acceptance of Lincoln's unrebutted characterizations was itself an abuse of discretion.

It also bears on what remand should require. An escalating pattern of non-engagement with uncorrected contrary evidence risks disposing of claims without testing them against the record — the same dynamic that produced the orders on appeal. Should this Court remand any portion of this case, the exhibits are directly relevant to what safeguards that remand should include, such as requiring findings that address specific record evidence rather than accepting conclusory characterizations.

Finally, the pattern bears on this Court's assessment of Lincoln's representations in the orders under review. Rademaekers' assertion of a superseded standard of review across multiple jurisdictions, despite notice of the governing framework, her failure to correct the district court's characterization of the record contamination as merely "alleged," and her failure to withdraw the certification of her initial disclosures while confirming the contamination was "erroneously placed" in Plaintiff's claim file, Doc. 53 at 21, are not neutral advocacy choices. They affect whether this Court can rely on Lincoln's characterizations of the orders on appeal — precisely the kind of adjudicative fact Rule 201(b)(2) exists to place before a court for its evaluation.

Lincoln grounds "germane" in 5th Cir. R. 25.2.7, Resp. 6 (Doc. 57), but that rule states the term without defining it, and Lincoln cites no case construing it. Germaneness under Rule 201(b)(2) tracks the ordinary relevance standard of Rule 401: evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence," and that fact "is of consequence in determining the action." Fed. R. Evid. 401. Both exhibits meet that standard directly. Whether Lincoln's counsel follows a documented practice — DISCR-PATTERN's nine cases across five circuits asserting a superseded standard of review while omitting known contrary authority, and SSDI-CONDUCT's parallel record of SSDI-lien conduct bearing on Plaintiff's § 407 argument — makes it more probable, not merely plausible, that the district court's unquestioning acceptance of Lincoln's characterizations was itself error, that any remand should require findings tied to specific record evidence, and that this Court should weigh Lincoln's representations in the orders on appeal accordingly. That is precisely the kind of evidence Rule 401 treats as probative of a fact of consequence; it is not, as Lincoln's Response treats it, an unrelated sideshow excluded because no single instance is independently dispositive.

## II. Lincoln Identified Nothing to Redact, So Plaintiff Undertook That Review Himself

Lincoln is correct that the exhibits include Plaintiff's characterization of the research, which reflects opinion rather than an adjudicative fact "not subject to

reasonable dispute" under Rule 201(b)(2). Resp. 8 (Doc. 57); however, calling something "highly disputed" and "questionable," Resp. 8 (Doc. 57), is not actually disputing it: Rule 201(b)(2) asks only whether a fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The underlying material, filed by Lincoln's own counsel, is readily available on PACER. The Motion itself asked, in the alternative, that the Court "identify the appropriate mechanism for doing so, rather than leave the results of research this Court's own order authorized with no means of reaching the panel." Doc. 54-1 at 13. Lincoln's Response does not address that request, and identifies nothing that would need to be corrected or struck — leaving Plaintiff as the only party positioned to make that determination, which is why Plaintiff undertook that review himself and drafted alternative exhibits stripped of analysis Lincoln may find objectionable.

The opening brief already noted Lincoln's failure to cite specific evidence: "Not one of those [Plaintiff's] exhibits has been cited by the district court in any order. Not one has been cited by Lincoln in its motion to dismiss. That shared non-engagement is the central fact from which this appeal proceeds." Doc. 53 at 17 (filed 08/10/2026). The non-citation pattern continues to a filing whose sole purpose is opposing the admission of these exhibits — where citing the specific objectionable language would have been the entire point. Lincoln's Response cites

the record six times, Resp. 3–5 (Doc. 57), and every citation is to the Complaint or its policy exhibit—none to SSDI-CONDUCT or DISCR-PATTERN.

Lincoln's own MTD displays the same defect — a filing that maps no argument to any claim and cites no Plaintiff exhibit. Supra Section I (citing Doc. 31 at 17). The Response does the same to a smaller record, more than twenty pages of documented material, with no mapped objection to a single piece. A broad gesture at an entire filing is not a colorable opposition to any part of it.

**III. Without Conceding an Unsubstantiated Objection, Plaintiff Proceeds on the Revised Exhibits.**

On that review, some framing could be read as argument rather than adjudicative fact. Independent of whether Lincoln's objection has merit, Plaintiff prefers the Court proceed on the revised exhibits attached. This would tie each entry more closely to the source citations while leaving the underlying case docket entries and public records unchanged. This preference does not concede that the originals were inadmissible or that Lincoln's characterization was accurate. Plaintiff simply sees no reason to leave narrative framing in the record when this approach would honor the original purpose of the Court's order authorizing research. If Lincoln believes the revised exhibits warrant a response, the proper vehicle is a motion to file a sur-reply.

The Court has at least four options: accept the revised exhibits (Plaintiff's preference); accept the originals, for the reasons argued in Section II; reject them

outright, on an objection identifying no specific passage as improper; or permit Lincoln to file a sur-reply. Plaintiff asks the Court to combine the first and fourth — review the revised exhibits, on documents Lincoln did not dispute are accurate, Resp. 9 (Doc. 57), identify anything that still crosses into characterization, and leave Lincoln free to move for a sur-reply — resolving the objection actually raised without treating Plaintiff's voluntary tightening of the record as agreement with an unsubstantiated premise.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant requests that this Court grant his motion to submit the revised exhibits attached for judicial notice under F.R.E. 201(b)(2), or, in the alternative, accept exhibits as originally filed.

Respectfully submitted,

Charles Terrence Bruff
4835 Medical Dr. #29643
San Antonio, Texas 78229
(318) 452-8978
cbruff13@outlook.com
Plaintiff-Appellant, Pro Se

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f), it contains 2,594 words. It has been prepared in Times New Roman, 14-point proportionally spaced typeface, in compliance with Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6).

Charles Terrence Bruff
/s/ Charles T Bruff

## CERTIFICATE OF SERVICE

I certify that on August 23, 2026, a copy of this motion was served on all counsel of record through the Court's CM/ECF electronic filing system, and by first-class mail to any counsel not registered for electronic service.

Charles Terrence Bruff
/s/ Charles T Bruff