No. 26-50345

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

CHARLES BRUFF,

Plaintiff-Appellant,

v.

USAA HEALTH AND WELFARE BENEFITS PLAN,
USAA EDUCATIONAL ASSISTANCE PLAN,
UNITED STATES AUTOMOBILE ASSOCIATION,
and LINCOLN NATIONAL LIFE INSURANCE COMPANY,

Defendants-Appellees.

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division
Civil Action No. 5:26-CV-01720-XR

**REPLY BRIEF FOR PLAINTIFF-APPELLANT**

Charles Terrence Bruff
4835 Medical Dr. #29643
San Antonio, Texas 78229
(318) 452-8978
cbruff13@outlook.com
Plaintiff-Appellant, Pro Se

# TABLE OF CONTENTS

STATEMENT REGARDING USAA'S PENDING MOTION TO JOIN ................1

INTRODUCTION ..........................................................................................2

ARGUMENT ...............................................................................................4

I. THIS COURT HAS JURISDICTION OVER ALL FIVE ORDERS ON APPEAL, NOT ONLY THE CONCEDED PRELIMINARY-INJUNCTION DENIAL ..........................................................................................4

II. WHAT EACH MOTION SOUGHT, AND WHAT ACTUALLY HAPPENED ....................................................................................18

III. LINCOLN'S REQUEST FOR ATTORNEYS' FEES UNDER 29 U.S.C. § 1132(g) SHOULD BE DENIED .....................................................23

IV. THE RECORD INDEPENDENTLY CORROBORATES APPELLANT'S FIDUCIARY-BREACH AND BAD-FAITH ARGUMENTS............................27

CONCLUSION ..........................................................................................29

CERTIFICATE OF COMPLIANCE ............................................................30

CERTIFICATE OF SERVICE.....................................................................31

# TABLE OF AUTHORITIES

Cases

*Adult Film Ass'n v. Thetford*, 776 F.2d 113 (5th Cir. 1985)…………………6
*Ariana M. v. Humana*, 884 F.3d 246 (5th Cir. 2018) (en banc)……………29
*Canal Auth. of Fla. v. Callaway*, 489 F.2d 567 (5th Cir. 1974)……………21
*Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)……………..20
*Escobar v. Montee*, 895 F.3d 387 (5th Cir. 2018)…………………………..5
*Gunn v. Univ. Comm. to End the War in Viet Nam*, 399 U.S. 383 (1970)…19
*Haines v. Kerner*, 404 U.S. 519 (1972)……………………………………...3
*Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010)…………...23
*Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir. 1980)……24
*Jackson v. City of Houston*, 143 F.4th 640 (5th Cir. 2025)…………………7
*Lacy v. Sitel Corp.*, 227 F.3d 290 (5th Cir. 2000)…………………………..7
*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)…………………19
*Rollins v. Home Depot USA, Inc.*, 8 F.4th 393 (5th Cir. 2021)……………14
*Tennessee v. Lane*, 541 U.S. 509 (2004)…………………………………….5

Statutes

28 U.S.C. § 1292(a)(1)……………………………………………………4
29 U.S.C. § 1024(b)(4) …………………………………………………14
29 U.S.C. § 1104(a)(1) (ERISA § 404(a)(1)) ……………………………..20
29 U.S.C. § 1132(g) ……………………………………………………..4
29 U.S.C. § 1140 (ERISA § 510) ………………………………………….20
29 U.S.C. § 794 (Section 504 of the Rehabilitation Act)…………………..10
42 U.S.C. § 407(a) ……………………………………………………15

Rules

Fed. R. App. P. 27(a)(3) ……………………………………………………2
Fed. R. App. P. 32(a)(7)(B) ………………………………………………..30

5th Cir. R. 25.2.7....................................................................17
Fed. R. Civ. P. 12(h)(1) .............................................................22
Fed. R. Civ. P. 26(g) .................................................................22
Fed. R. Civ. P. 52(a)(2) ...............................................................3
Fed. R. Civ. P. 55(a), (b), (c) .......................................................6
Fed. R. Evid. 201(b)(2), (d), (f) ...................................................16

## STATEMENT REGARDING USAA'S PENDING MOTION TO JOIN

Appellant files this reply without knowing whether USAA is validly a party to the brief it answers. Appellant's Opposition (Doc. 69) placed on the record that Appellant prepared his opening brief treating Lincoln as the only party present, having reasonably assumed — based on USAA's silence through the opening brief and the motions practice that followed — that USAA would take no position. That assumption proved wrong only at the eleventh hour, when USAA appeared for the first time on the day Lincoln's response brief was due and moved to adopt it. Doc. 69 asked this Court to resolve that motion, and the prejudice it describes, before Appellant was required to reply to whatever brief is properly before it.

This reply is filed under those same unresolved conditions. Nothing here concedes USAA is validly joined to Lincoln's brief, or waives the relief requested in Doc. 69. Appellant responds to Lincoln's brief as filed because a reply deadline exists regardless of the joinder motion's outcome, not because Doc. 69's procedural uncertainty has been resolved. USAA's motion (Doc. 67, filed September 2, 2026) remains pending and has not been granted as of this filing; Lincoln's reply in support (Doc. 70, filed September 11, 2026) does not resolve it. Given USAA's absence as a represented party through the opening brief and all pre-reply motions practice, Appellant treats this reply as answering Lincoln alone; that should not be held against Appellant. Should the Court later grant Doc. 67, Appellant

respectfully requests leave to file a short supplemental reply addressing the now combined brief.

## INTRODUCTION

Lincoln's Response Brief, like its briefs below, repeatedly substitutes characterization for engagement. It describes Appellant's motions as "a series of unfounded and irrelevant motions" (Br. at 13), asks this Court to award Lincoln its attorneys' fees for "defending against this meritless appeal" under 29 U.S.C. § 1132(g) (Br. at 29), and — in its most recent filing on USAA's motion to join — repeats the same characterization rather than engaging the specific procedural defects Appellant identified. None pairs the label with an explanation of what the motion actually sought or why it lacked merit — the label stands in for the analysis.

The most recent filing illustrates the same pattern outside the merits altogether. Appellant's opposition to USAA's motion to join or adopt Lincoln's response (Doc. 69) requested five distinct rulings: denial for failure to confer under Federal Rule of Appellate Procedure 27(a)(3); a finding that USAA waived its right to respond by not timely seeking leave to file; striking the combined response brief as prejudicial; barring USAA and Lincoln from filing separate responses in its place; and tolling the reply deadline until the motion is resolved. Defendants reply (Doc. 70) addresses only two of those five — the request to strike Lincoln's

brief and the request to toll the reply deadline — and never mentions the conferral, waiver, or no-separate-filing requests at all. That is silence, not mischaracterization. Three of the five rulings Appellant requested go entirely unanswered, in a filing whose only response to the rest is to call Appellant's motions "unfounded and irrelevant" (Doc. 70 at 3) rather than address them.

This is not incidental to the questions already before this Court. Appellant's opening brief demonstrates that the district court resolved contested motion after contested motion the same way — by label rather than substance, without the findings Rule 52(a)(2) requires. The clearest example is already part of the record: the April 22, 2026 order denying preliminary injunctive relief mischaracterized Appellant's motion as objecting to a "communication protocol" and an "incomplete claims file" — phrases appearing nowhere in the motion — and addressed none of the three independent grounds actually raised. Lincoln's brief continues that practice one level up, asking this Court to affirm the same by characterizing the motions themselves as unfounded, without addressing what any of them actually sought.

*Haines v. Kerner*, 404 U.S. 519, 520 (1972), requires courts to look past the form of a pro se litigant's filings to their substance rather than resolving them on surface characterization. Lincoln's brief asks this Court to do the opposite — to accept, on Lincoln's characterization alone, that five motions and the underlying

appeal are without merit, without engaging what any actually sought or why. Appellant accordingly sets forth below, motion by motion, what each sought and what the record shows actually happened, so this Court may evaluate the substance Lincoln's brief does not address.

Independently, Lincoln's request for attorneys' fees under 29 U.S.C. § 1132(g) is not simply an aggressive litigation posture. It is directed at an individual to whom Lincoln is currently paying long-term disability benefits, and whom Lincoln itself directed to apply for SSDI. Any fee award would functionally be paid out of, or alongside, the same disability income Lincoln is presently administering — in tension with Lincoln's own fiduciary role as claims administrator over the benefits it is simultaneously paying. That tension, and Lincoln's own notice that the SSDI-recovery mechanism it deploys is legally exposed, are addressed in full in Part III below.

## ARGUMENT

### I. THIS COURT HAS JURISDICTION OVER ALL FIVE ORDERS ON APPEAL, NOT ONLY THE CONCEDED PRELIMINARY-INJUNCTION DENIAL

Lincoln's Response Brief concedes only the April 22 PI denial (ROA.637) is properly before this Court under 28 U.S.C. § 1292(a)(1), and argues the other four orders (ROA.542, 734, 881, and 969) are not independently appealable. This

Court's jurisdiction over those four orders rests on three independent pillars, so that rejecting any one does not collapse the others.

**A. Three independent jurisdictional pillars.**

*First*, the denial of Appellant's accommodation request (ROA.85) is independently reviewable under the collateral order doctrine, and independently constitutes direct grounds for reversing the April 22 preliminary injunction denial under § 1292(a)(1), as argued in Part I.E below. Whether the Judicial Conference's accommodation framework satisfies the constitutional minimum recognized in *Tennessee v. Lane*, 541 U.S. 509 (2004), is a question of first impression Lincoln's Response Brief does not address.

*Second*, the order setting aside Lincoln's default (ROA.881, 969) is independently reviewable because it is inextricably intertwined with, and a logical precondition to, the properly-conceded PI denial: if Lincoln was in default as of May 18, 2026, it had no standing to oppose preliminary relief — a defaulted party may appear only to contest the default itself, not to litigate the merits — and the propriety of the PI ruling cannot be assessed without first resolving that question. This Court therefore has pendent appellate jurisdiction over the default ruling. *Escobar v. Montee*, 895 F.3d 387, 391 (5th Cir. 2018).

*Third*, the PI denial itself is conceded as properly before this Court under § 1292(a)(1), and was issued within 48 hours, before Lincoln had responded, with no findings under Rule 52(a)(2).

Together, these three pillars pull in the full pattern from which they are drawn — including the protective-order denial (ROA.542) and the corrective-action denial (ROA.734) — not as separately-anchored appeals, but as evidence bearing on the due process pattern the three pillars independently raise: the accommodation denial came first, foreclosing the interactive process that might have addressed the communication differences arising from Appellant's Autism Spectrum Disorder; the default was then set aside through a service objection the Federal Rules foreclose; and the preliminary injunction was denied without briefing days later. With three independent pillars already supporting review, examining that pattern in full is necessary to resolve the claims properly before this Court.

**B. ROA.881; ROA.969: this is not a denial of default judgment.**

*Adult Film Ass'n v. Thetford*, 776 F.2d 113 (5th Cir. 1985), holds that an order denying *default judgment* is not subject to interlocutory appeal. That is not what is on appeal. Appellant never moved for default judgment under Rule 55(b) — no such motion was ever filed. What is on appeal is the order mooting Appellant's Application for Clerk's Entry of Default under Rule 55(a), a purely

ministerial act: "[t]he clerk's function is ministerial. The clerk does not exercise discretion about whether a default should be entered." *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000). *Thetford*'s discretionary-denial holding has no application to an order that intercepted the ministerial Rule 55(a) step before any default-judgment motion could even be filed.

Rule 55(a)'s ministerial character is precisely why Rule 55(c) exists as a separate, mandatory checkpoint: once a default has arisen, the only mechanism for a defaulting party to escape it is a motion showing good cause. Lincoln filed no Rule 55(c) motion and made no such showing — at the district court or on appeal. The mootness order let Lincoln skip that one safeguard, on the theory that filing any motion to dismiss, at any time, without leave, automatically cures an existing default. That result has no precedent because it eliminates Rule 55(c) as a functional protection — a due process failure, not a discretionary call this Court lacks jurisdiction to review.

**C. ROA.734: the district court denied a motion Appellant did not file.**

Lincoln's jurisdictional argument for ROA.734 rests on *Jackson v. City of Houston*, 143 F.4th 640 (5th Cir. 2025), and its rule that standing-based dismissals are not interlocutorily appealable. That rule has no purchase here because the order it defends did not actually resolve a standing question. Appellant's Motion for Corrective Action sought correction of the administrative record used to decide

*Appellant's own* claim — confirmation Lincoln had not scattered Appellant's information the way it scattered a third party's into his file, and correction of a record Lincoln's own counsel admitted in writing was contaminated. That is Appellant's own particularized injury: an unreliable record deciding his own benefits.

Some of the motion's language, read in isolation, could be understood as requesting that the Court act to protect the third party directly. That was not the motion's primary point. Appellant raised the third party's exposure because he believed the third party was entitled to know their information had been disclosed into his file, just as he would want to be told if his own information were sitting, unknown to him, in someone else's claims file. Appellant understood the request as an exercise of the Court's inherent authority to address a HIPAA violation that had occurred within Appellant's own claims file, not as a claim brought on the third party's behalf. The district court improperly characterized the ***entire*** motion as seeking relief "on behalf of" the third party and denied it on that basis — addressing a characterization instead of the relief actually sought. That is the same non-engagement defect running through every other order on appeal, not an independent jurisdictional bar; *Jackson* has nothing to say about an order that mischaracterized what was asked of it.

**D. Lincoln does not engage the escalating-pattern argument at all.**

Lincoln's brief treats each of the four disputed orders as an isolated jurisdictional silo and never engages the throughline connecting them. Nowhere does Lincoln argue that these procedural departures fail to form a pattern, or offer any account of why five orders across five months would not amount to one continuing failure to engage Appellant's filings. Lincoln has neither objected to nor rebutted Appellant's characterization of these departures as an escalating pattern of non-engagement — notable given how much analytical weight Lincoln's order-by-order jurisdictional argument otherwise carries.

**E. Root cause: everything flows from the denied accommodation request.**

The sequencing matters. The accommodation denial came first — before the protective order motion, before the preliminary injunction motion, before any of the orders that followed. Autism Spectrum Disorder produces documented differences in writing style and information presentation that may have contributed to how the district court engaged, or failed to engage, with Appellant's filings. Appellant sought to address that risk by requesting accommodation; the request was denied under a Judicial Conference policy this record establishes provides no interactive process for his disability profile. Had accommodation been granted, at least some of the procedural errors that followed likely would not have occurred in the same form. Whether Appellant was entitled to that accommodation under

Section 504, consistent with the constitutional minimum recognized in *Tennessee v. Lane*, is a question of first impression in this Circuit that Lincoln's Response Brief does not address at all. Judicial economy favors resolving that question now, rather than unwinding and relitigating large portions of the proceedings below after a future appeal.

**F. What this Court is, and is not, being asked to decide.**

Appellant is not asking this Court to rule on the merits of his underlying ERISA claims. What Appellant asks this Court to protect is narrower: the due process right to have those arguments actually considered, on a complete briefing cycle, with the findings Rule 52(a)(2) requires, before they are decided against him. That distinction matters because the violation Appellant identifies is not reducible to any single order being wrong on its own terms. The five orders on appeal — including a default resolved without the good-cause showing Rule 55(c) requires — are each individually significant, but the due process problem lies in their combination: a sustained pattern in which contested motions were decided before Lincoln was required to respond, before Appellant's reply was due, or on a characterization of the motion rather than its substance — repeated closely enough in time and consistently enough in method that no single instance can be dismissed as an isolated error.

Appellant does not know why the district court has repeatedly declined to engage his filings on their substance. But the record contains a pattern worth naming and counting: where the district court and Lincoln have offered any explanation for declining to engage Appellant's arguments, that explanation has tended to characterize Appellant's own state of mind — as confused, as misunderstanding the record, as raising claims that do not mean what they say — rather than engage what he actually argued.

The pattern recurs six times across nearly five months, in three forums, on two distinct claims. Opposing the Motion for Protective Order on April 15, 2026, Lincoln wrote that Appellant "appears to be confused about how discovery in a lawsuit works" and "has the mistaken idea" about the relief sought (ROA.596) — a characterization false on its own terms, which Appellant corrected in writing four days later (ROA.598-599). The district court's own orders denying that motion, and the preliminary injunction a week later, both adopted variations of the same "unclear what relief Plaintiff seeks" framing Lincoln had introduced. The pattern then recurs five more times on a second, unrelated claim: Lincoln argued Appellant "never submitted a Rehabilitation Program" in its Motion to Dismiss (ROA.885, May 19, 2026); repeated the argument to a federal regulator, stating Appellant "appears to have confused" the benefit with vocational services (Exhibit EBSA-1, July 9, 2026); and repeated it again on July 20, 2026 (Doc. 37 at 4), August 19,

2026 (Doc. 57 at 4), and September 2, 2026 (Doc. 68). None of those five iterations engaged the document that answers the argument: Lincoln's own Vocational Rehabilitation Consultant closed Appellant's rehabilitation referral by email on January 28, 2026 (ROA.223–230, Exhibit F). A referral opened and closed by Lincoln's own personnel is a claim Lincoln decided without the notice ERISA requires, not the absence of a claim.

Lincoln's next filing did not withdraw that characterization or explain why it remained accurate; it moved to a different claim and repeated the same move five more times over the following four months, including once to a federal regulator with no occasion to see Appellant's correction at all. A characterization that survives being directly corrected, unchanged, across six separate filings does not need to be accurate to keep working.

That is the mechanism *Haines v. Kerner* exists to interrupt. Beyond a general canon of liberal construction, *Haines* is a due process protection against a pro se litigant's filings being read through what a court expects a confused, untrained litigant to have meant, rather than through what the filing actually says. This matters because "confused" is doing more work here than a neutral description of a discrete misunderstanding. Appellant is autistic, and difficulty being understood in complex, adversarial communication exchanges is a documented feature of that disability, not evidence that Appellant is wrong. That

difficulty is a substantial part of why Appellant requested a communication accommodation in the first instance — a request the district court denied without an interactive process. It is also, by Lincoln's own position in this litigation, not a matter of dispute: autism is among the conditions on the basis of which Lincoln itself pays Appellant long-term disability benefits under the Policy, and the Social Security Administration has considered Appellant disabled since birth. Having an intense, detail-oriented communication style does not make Appellant confused or incorrect, and neither does being pro se. A party may certainly argue that a pro se, disabled litigant has misunderstood something specific; what a party may not do, consistent with *Haines*, is invoke the characterization as a substitute for showing what was misunderstood and why. If Lincoln intends to keep relying on "confused" or "misunderstood," the burden that label carries should run the other way: Lincoln should have to state its own position clearly enough that the asserted confusion actually resolves, rather than simply repeating the label.

The April 22 PI order does something structurally similar at the district court level, treating Appellant's three statutory grounds as a misunderstanding about "communication protocol" rather than engaging any of them — the same framing Lincoln introduced in ROA.593 a week earlier. Appellant does not contend this establishes deliberate bias, and does not need to: whether or not intentional, a pattern of resolving a disabled pro se litigant's filings by characterizing what he

must have meant, rather than engaging what he actually wrote, is exactly the risk Appellant's denied accommodation request sought to address, and exactly what *Haines* exists to prevent.

That risk was not hypothetical for Appellant: the first claim in his original Complaint rested on 29 U.S.C. § 1024(b)(4), a document-disclosure theory litigated in only a small fraction of even this specialty's case law. Iwana Rademaekers personally appears in a new LTD-ERISA filing roughly every five days nationwide, with at least 40 such cases pending simultaneously — an extraordinary volume for a single-attorney firm, and one at which a district court is far more likely to have seen one templated fact pattern than a claim like § 1024(b)(4), making unfamiliarity, not merit, the more probable explanation for how it was treated below.

**G. Lincoln's forfeiture argument does not reach any of the material it targets.**

Lincoln's Response Brief declines to address "Section 504 of the Rehabilitation Act, alleged record contamination, alleged cross-case litigation patterns, [and] SSDI reimbursement practices," characterizing all four as forfeited under *Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397-98 (5th Cir. 2021), for having been raised for the first time on appeal or inadequately briefed. None of the four fits that description.

*Rollins* forfeits an argument a party asks this Court to decide on the merits without having preserved it below. Appellant asks for no such decision. Each of these four categories bears on a single due process question: whether the district court's pattern of declining to engage Appellant's filings — already established through the five orders on appeal — would, if it continues, deprive Appellant of a fair opportunity to be heard on these same issues once the case returns to that court. That is not a request that this Court decide Section 504, record contamination, the cross-case pattern, or the underlying §407/§404(a)(1) theories on the merits; it is a question about whether remand should come with instructions ensuring these issues actually get decided, rather than characterized away again. There is accordingly nothing for *Rollins*'s forfeiture rule to reach: forfeiture bars presenting an unpreserved theory for this Court to resolve, and Appellant asks this Court to resolve none of these four on the merits at all.

Each category independently defeats *Rollins* even without this broader framing. Section 504 is not a collateral allegation — it is the order on appeal. The denial of Appellant's accommodation request under Section 504 is the subject matter of Motion 1 (ROA.85), one of the five orders squarely before this Court, briefed below and in the opening brief. *Rollins* has no application to an issue that is the order being appealed.

The record contamination was raised below, in the same proceeding, months before this appeal's briefing began — in the Motion for Corrective Action (ROA.734) and the Motion for Reconsideration (ROA.969), both squarely in the district court record this Court is reviewing. A party cannot forfeit an issue by raising it below, having the district court decline to engage it, and then raising it again on appeal.

The cross-case litigation pattern and SSDI reimbursement practices are judicially noticeable public court records, not evidence subject to forfeiture for late introduction. Facts "not subject to reasonable dispute" because they can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned" may be judicially noticed "at any stage of the proceeding," including on appeal. Fed. R. Evid. 201(b)(2), (d), (f). *Rollins*'s forfeiture rule governs legal theories and factual assertions a party failed to preserve; it does not override Rule 201's express instruction that judicial notice may be taken at any stage. Nor is the underlying legal theory new: the § 407 anti-alienation theory and the § 404(a)(1) fiduciary-breach theory were both pled in Appellant's original Complaint below, argued again in the opening brief (Defect Five; Claim Seven), and never engaged by either Lincoln or the district court at any point — the same non-engagement pattern running through every other order on appeal, not a gap in preservation.

Lincoln has already had, and taken, the opportunity to be heard on this exact material — and chose to contest it on the merits, not preservation. Appellant moved for leave to submit Exhibits SSDI-CONDUCT and DISCR-PATTERN for judicial notice under FRE 201(b)(2) on August 9, 2026 (Doc. 54). Lincoln opposed that motion (Doc. 57) on relevance under 5th Cir. R. 25.2.7 and as "tantamount to a brief in and of themselves" under FRE 201(b)(2) — never suggesting forfeiture. Having elected to contest this material's admissibility, Lincoln cannot now recast that same objection as a *Rollins* forfeiture argument it never made. Appellant's reply in support (Doc. 59) attempted to address Lincoln's objection directly — despite Lincoln never identifying what, specifically, was wrong — by filing revised exhibits the same day that removed argument/opinion content Lincoln's objection may have targeted; Lincoln never responded to the revised exhibits. The motion remains pending, undecided, as of this reply. Equally important, Lincoln's opposition never identified a single case, docket entry, date, or other specific fact within either exhibit as inaccurate — an objection to characterization, not to accuracy, from a party that was, as defense counsel of record in many of the cases the exhibits cite, in the best position of any party to identify an actual error if one existed.

## II. WHAT EACH MOTION SOUGHT, AND WHAT ACTUALLY HAPPENED

The pattern is not limited to the preliminary-injunction order already before this Court. Five orders are on appeal, and each followed the same course: Appellant identified specific, independent grounds for relief; the district court's order addressed a characterization of the motion instead of those grounds.

**1. Motion to Appoint Counsel / Section 504 Accommodation (filed March 16, 2026; order April 13, 2026, ROA.85).**

*Sought:* Appointment of counsel under the court's equitable authority and Section 504 of the Rehabilitation Act, or in the alternative, referral to the Western District's pro bono program — and, regardless of which was granted, findings under the *Ulmer* framework on the apparent merit of Plaintiff's claims, particularly the § 502(c) document-penalty claim. The motion frames accommodation itself as the operative request: "This Court's referral to a pro bono program or appointment of counsel is the minimum accommodation necessary to ensure Plaintiff's meaningful access to these proceedings."

*What happened:* The order did not acknowledge the Section 504 argument at all. The court confirmed the Western District of Texas has no standard motion or procedure for requesting Section 504 accommodations in a civil case, and never reached the independent request for merits findings.

**2. Motion for Protective Order (ROA.542; denied April 16, 2026, text order, ROA.1-7).**

*Sought:* A structural separation between Lincoln's claims function and litigation function for the duration of the case, modeled on the remedy approved in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). Appellant's reply (Entry_23) specifically warned against reading the request as ordinary discovery-confidentiality relief: "The relief Plaintiff requests is structurally different from confidentiality protection. It concerns the process by which Lincoln's litigation defense team obtains access to claims materials in the first place."

*What happened:* The order denied the motion on exactly the confidentiality/discovery-access framing Appellant had flagged as a mischaracterization, citing *Gunn v. Univ. Comm. to End War*, 399 U.S. 383, 389 (1970) — an injunctive-relief/extraordinary-writ case with no relation to ERISA structural remedies — and never mentioning *Glenn* or the structural-separation theory the reply specifically invoked. The separation the motion sought to prevent has since been destroyed in fact: Rademaekers' notice of appearance reached Appellant through his Clinical Case Manager, and Rademaekers has responded directly to emails from claims-side personnel. There is accordingly nothing for this Court to reverse on ROA.542: Lincoln itself destroyed the separation the motion sought, and that is a matter for the district court to address.

**3. Motion for Preliminary Injunction (ROA.637; denied April 22, 2026; text order at ROA.5).**

*Sought:* An order prohibiting Lincoln from taking any adverse action on Appellant's claim without leave of court, on three independent grounds: (1) violation of ERISA § 510 (29 U.S.C. § 1140) — Lincoln's April 10, 2026 redirection of clinical correspondence to litigation counsel eliminated the only lawful pathway for submitting medical records against a Lincoln-imposed deadline; (2) breach of fiduciary duty under § 404(a)(1) (29 U.S.C. § 1104(a)(1)) — Lincoln directed Appellant to apply for SSDI while controlling and withholding a claims file Lincoln's own counsel admitted in writing was incomplete; and (3) equitable estoppel under *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 288-89 (1940) — Lincoln created the very conditions it then sought to enforce against Appellant. All three grounds were tied to documentary evidence already on the docket, and the motion briefed all four *Winter* factors.

*What happened:* Denied within 48 hours — before Lincoln's response was even due and before any reply — mischaracterizing the motion as objecting to a "communication protocol" and an "incomplete claims file... as part of initial discovery disclosures." Neither characterization appears in the motion. The order cited one case for the general likelihood-of-success standard, addressed no other *Winter* factor, never cited § 510, § 404(a)(1), or *Deckert*, and contains no findings

of fact or conclusions of law — a Rule 52(a)(2) violation this Court reviews de novo and treats as reversible per se. *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).

*Reversal or remand is independently warranted in light of pattern evidence developed since the denial.* The § 407 counterclaim pattern and the discretionary-review pattern described in Part IV below were not before the district court when it denied ROA.637. They corroborate, from outside Appellant's own case, the same fiduciary-breach theory ROA.637 already pled: that Lincoln directs claimants toward SSDI, then treats the resulting funds and the governing standard of review as things it can extract or misstate regardless of what the law permits. That corroboration supports remand — not a re-decision of the PI on the merits — so the district court can decide the § 404(a)(1) and *Deckert* theories it never reached, informed by material properly subject to judicial notice.

**4. Motion for Corrective Action (ROA.734; denied May 4, 2026; text order at ROA.5–6).**

*Sought:* Correction of the administrative record used to decide Appellant's own claim, and confirmation Lincoln had not scattered Appellant's own information into another claimant's file the way it scattered a third party's into his. Lincoln's own counsel had represented in writing, on April 27, 2026, that the

contaminated production contained "everything that Lincoln reviewed to issue its decision" on Appellant's claim.

*What happened:* The court characterized the motion as an attempt to seek relief on behalf of a third party and denied it on standing grounds — a framing Appellant's subsequent filing (Entry_32) directly rejected. The order also characterized the contamination as merely "alleged"—despite Appellant's pending request for in-camera review—three days after Rademaekers had already admitted it in writing. Lincoln has never withdrawn or corrected its Rule 26(g) certification despite that admission.

**5. Motion for Clerk's Entry of Default (ROA.881; mooted May 19, 2026) and Motion for Reconsideration (ROA.969; denied May 20, 2026).**

*Sought:* Enforcement of Rule 55(a)'s mandatory duty to enter default once the record showed Lincoln missed its answer deadline — service was confirmed by return receipt on the docket a full month earlier (ROA.624), and Lincoln's first filing never raised a service defect, forfeiting it under Rule 12(h)(1).

*What happened:* Lincoln's opposition (ROA.956) asserted "no signed waiver on the docket" despite the return receipt having been on the docket for a month, and its simultaneously-filed Motion to Dismiss (ROA.885) presupposed it *was* properly before the court — contradicting its own non-service argument. The mooting order's entire reasoning: "Defendant Lincoln National has appeared.

Plaintiff is not prejudiced by having to prosecute his case." — again without engaging the forfeiture argument or the contradiction.

Five orders, five motions, one pattern: each identified specific, independent grounds for relief, and each was resolved by addressing something other than those grounds. Lincoln's Response Brief now asks this Court to treat that same pattern as proof the underlying motions were frivolous, and to award Lincoln its fees under § 1132(g) for having to defend against them. The request has the sequence backward. A motion is not unfounded merely because the district court declined to engage it. Five consecutive instances of non-engagement instead show the grounds raised were substantial enough to require the analysis Lincoln's counsel and the district court both avoided providing.

## III. LINCOLN'S REQUEST FOR ATTORNEYS' FEES UNDER 29 U.S.C. § 1132(g) SHOULD BE DENIED

### A. Threshold: Lincoln has not shown "some degree of success on the merits."

Before any discretionary factor is reached, a party seeking fees under § 1132(g)(1) must show "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). Lincoln has not made that showing. Nothing in this appeal resolves Appellant's underlying ERISA claims. Lincoln's motion to dismiss never addressed Claim One and was mooted by this

appeal before the district court ruled; Appellant's benefits remain in payment status; and the five orders on appeal are all procedural — denials of motions to appoint counsel, for a protective order, for preliminary injunctive relief, and default-related relief. None adjudicated the merits of any claim for benefits, breach of fiduciary duty, or the § 407 question of first impression Appellant has raised. A defendant with a string of procedural rulings, and every substantive claim still pending, has simply avoided losing so far — a different thing entirely from success on the merits, and fees under § 1132(g)(1) are not available on that basis alone.

**B. Even if the threshold were met, every discretionary factor cuts against an award.**

Courts weigh five factors in exercising § 1132(g)(1) discretion: (1) the opposing party's culpability or bad faith; (2) its ability to satisfy an award; (3) whether an award would deter others from acting similarly; (4) whether the party requesting fees sought to benefit all plan participants or resolve a significant legal question; and (5) the relative merits of the parties' positions. *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980); *Hardt*, 560 U.S. at 255 n.1. Every factor here favors denial.

*Culpability/bad faith.* This is more than aggressive litigation: Lincoln has actual notice that a specific recovery mechanism it uses is legally exposed, and continues to deploy it anyway. Rademakers litigated the § 407 defense to a

settlement in *Crapps* (2021), withdrew rather than relitigate it in *Evans* (2024), and never raised it in the motion to dismiss filed in this case despite Appellant pleading it directly. That the same three-count SSDI-recovery template was independently used by a different firm in *Locke* (2020) shows the underlying practice belongs to Lincoln, not to one attorney's litigation style. Separately, Lincoln's own conduct in this case shows the same culpability directly: Rademaekers's firm transmitted an administrative record it had not reviewed, certified it complete, admitted in writing five days later that it was contaminated with a third party's protected health information, never withdrew that certification or disclosed the admission to the district court, and then filed a motion to dismiss eighteen days later relying on the same uncorrected record.

*Relative ability to satisfy an award.* Lincoln National Life Insurance Company is a wholly-owned subsidiary of Lincoln National Corporation, publicly traded on the NYSE (ticker LNC). Appellant is an individual currently receiving the long-term disability benefits Lincoln administers — the same benefits Lincoln directed him to offset against a Social Security award. Any fee award here would come from the same administrator presently controlling the income Appellant depends on, collected from a claimant Lincoln concedes remains disabled and in payment status — using its fiduciary administration of Appellant's claim as leverage against him in the same litigation over that claim.

*Deterrent effect.* An award of fees against a pro se ERISA claimant for raising procedural defects the district court itself failed to address would deter future claimants from raising exactly the kind of structural non-engagement this appeal identifies. Denying the request does not deter Lincoln from anything it is entitled to do. It simply declines to penalize Appellant for the district court's own failure to engage his motions on their merits.

*Resolution of a significant legal question.* Appellant's § 407 claim — whether Lincoln's SSDI-coordination and reimbursement mechanism functions as a prohibited "other legal process" against federally protected disability benefits — is, on this record, a question of first impression in this Circuit. A claimant litigating an unresolved question of this kind is not the target Congress had in mind when it authorized fee-shifting against unsuccessful ERISA claimants.

*Relative merits of the parties' positions.* This factor folds back into the Introduction's central point: Lincoln's fee request rests entirely on characterizing Appellant's motions as "unfounded and irrelevant" (Br. at 13), not on any engagement with what they actually sought. Part II above shows the opposite — each motion raised specific, independent, statutorily-grounded arguments that were never substantively addressed, by either the district court or Lincoln. A request for fees premised on the losing party's motions having been meritless cannot be

sustained by a record in which those motions were never evaluated on their merits at all.

## IV. THE RECORD INDEPENDENTLY CORROBORATES APPELLANT'S FIDUCIARY-BREACH AND BAD-FAITH ARGUMENTS

Two further findings, developed through public court records obtained after this Court granted Appellant's PACER fee exemption, corroborate arguments already pled below rather than introduce new claims. Both are judicially noticeable at any stage under Fed. R. Evid. 201(b)(2), (d), (f), and both are the subject of Appellant's pending motion for judicial notice (Doc. 54, filed August 9, 2026, still undecided); they are offered here independently of that motion's outcome.

First, since April 1st 2018, Lincoln has filed formal litigation counterclaims — not merely affirmative defenses — seeking to recover claimants' SSDI awards in at least 30 individually pin-cited cases nationwide, six with express § 407(a)/*Sereboff*/*Montanile* briefing. *E.g.*, *Crapps v. Lincoln Life*, No. 2:21-cv-01165 (N.D. Ala.) (Lincoln's own counsel litigated and lost this exact theory in 2021); *Evans v. The Lincoln*, No. 5:24-cv-01152 (N.D. Ala.) (counterclaim withdrawn rather than relitigated in 2024 after the same theory was challenged again); *Locke v. The Lincoln*, No. 4:19-cv-04246 (S.D. Tex.) (identical three-count template filed by different outside counsel in 2020, confirming the practice is Lincoln's, not one attorney's). Lincoln's own motion to dismiss in this case never

mentions § 407 at all — consistent with a considered practice of pressing the theory for settlement value while avoiding the merits once actually challenged.

Second, since April 1st 2018, Lincoln has separately mandated that claimants apply for SSDI — in at least 47 individually pin-cited cases nationwide, 23 of them through one of six identified paid third-party vendors — while simultaneously arguing, in the same claim, that the claimant was capable of full-time work. *E.g.*, *Wofford v. Lincoln*, No. 2:23-cv-04533 (E.D. La.) (formal vendor referral, then denial of disability); *Berg v. Lincoln* (mandatory SSDI application and a $28,852.85 retroactive offset collected from the same claimant Lincoln argued was capable of full-time work); *Wenninger v. The Lincoln* (Lincoln collected a $22,785.31 retroactive SSDI offset in February 2025 and, that same year, opened an "Any Occupation" review asserting Wenninger was capable of full-time sedentary work, then terminated his benefits on that basis — never addressing the SSA award in the termination or appeal-denial letters). Between these two patterns, Appellant has individually verified 77 cases in which Lincoln pursued a claimant's SSDI award, mandated an application, or both, while arguing the claimant could work full-time in the same claim file. Exhibits SSDI-CONDUCT and DISCR-PATTERN set out a representative sample of both patterns; the full corpus will be available to the district court on remand.

The same public court records show Lincoln arguing for abuse-of-discretion review — the standard *Ariana M. v. Humana*, 884 F.3d 246 (5th Cir. 2018) (en banc), foreclosed in this Circuit as of March 1, 2018 — in at least 70 confirmed Fifth Circuit-venued cases in which Iwana Rademaekers personally signed the Answer asserting that standard, filed after that date and continuing through May 2026, with countless more belonging to Lincoln as an institution — including several additional cases in the same sample where other Lincoln defense counsel asserted the identical standard — across dozens of additional cases and courts nationwide. The full case list is available to this Court or to Lincoln upon request.

## CONCLUSION

This Court has jurisdiction over all five orders on appeal, not only the one Lincoln concedes. Each order followed the same pattern Lincoln's Response Brief never rebuts: a specific, independently-grounded motion, resolved by addressing a characterization of it rather than what it actually sought. That pattern begins with the denial of Appellant's accommodation request and runs through the preliminary injunction denied without findings, the default set aside without a good-cause showing, and the corrective-action motion answered on a standing theory it never presented.

Appellant respectfully requests that this Court (1) reverse the orders denying the Section 504 accommodation request (ROA.85) and corrective action

(ROA.734), and the order mooting entry of default (ROA.881, 969), and remand each for fresh briefing and decision on the merits; (2) reverse the preliminary injunction denial (ROA.637) and remand with instructions to permit fresh briefing on a complete record, enter findings under Rule 52(a)(2), and reach the § 404(a)(1) and *Deckert* theories; and (3) deny Lincoln's request for attorneys' fees under 29 U.S.C. § 1132(g). Appellant's Doc. 69 (USAA) and Doc. 54 (judicial notice) motions remain independently pending before this Court.

Respectfully submitted,

/s/ Charles Terrence Bruff
Charles Terrence Bruff
4835 Medical Dr. #29643
San Antonio, Texas 78229
(318) 452-8978
cbruff13@outlook.com
Plaintiff-Appellant, Pro Se

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains **6,450** words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using **Microsoft Word, Times New Roman**, 14-point.

/s/ Charles Terrence Bruff
Charles Terrence Bruff
Plaintiff-Appellant, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on **9/13/2026**, I electronically filed the foregoing Reply Brief for Plaintiff-Appellant with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system, including on:

Counsel for Defendant-Appellee Lincoln National Life Insurance Company:
Iwana Rademaekers, Esq.
Law Offices of Iwana Rademaekers, P.C.
17304 Preston Road, Suite 800
Dallas, Texas 75252
iwana@rademaekerslaw.com

Counsel for Defendants-Appellees USAA Health and Welfare Benefits Plan, USAA Educational Assistance Plan, and United States Automobile Association:
Brian A. Aslin, Esq.
James C. Goodfellow, Jr., Esq.
Sung Cheol Sam Park, Esq.
Jackson Lewis P.C.
/s/ Charles Terrence Bruff
Charles Terrence Bruff
Plaintiff-Appellant, Pro Se